MICV2004-05030

MICHAEL SHERMAN

v.

VISION LAB TELECOMMUNICATIONS, INC, ET AL

****REMOVED TO US DISTRICT COURT****

**Commonwealth of Massachusetts**
**SUPERIOR COURT DEPARTMENT**
**THE TRIAL COURT**
**CAMBRIDGE**

MICV2004-05030

I, Mary E. Rosa, Deputy Assistant Clerk of the Superior Court, within and for said County of Middlesex, do certify that the annexed papers are true copies made by photographic process of pleadings entered in the Superior Court on the 22nd of Dec., in the year of our Lord, Two Thousand Four



In testimony whereof, I hereunto set my hand and affix the seal of said Superior Court, at Cambridge, in said County, this 22nd of July, in the year of our Lord, Two Thousand Five

Deputy Assistant Clerk

COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.                                          Superior Court Department

|  |  |
|---|---|
| MICHAEL SHERMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| VISION LAB TELECOMMUNICATIONS, | ) |
| INC., ON DEMAND MARKETING LLC, | ) |
| RANDY THOMASON, | ) |
| HIGHLAND MARKETING LLC, | ) |
| BELLSOUTH CORPORATION, | ) |
| TELEDATA SOLUTIONS, INC., and | ) |
| THE SUPPORT GROUP IN SWEDEN, AB, | ) |
| | ) |
| Defendants. | ) |

Civ. A. No. MICV2004-05030

## NOTICE OF FILING NOTICE OF REMOVAL

PLEASE TAKE NOTICE THAT Defendant Vision Lab Telecommunications,

Inc. removed this action to the United States District Court for the District of

Massachusetts. A copy of the Notice of Removal is attached hereto as Exhibit 1.

Pursuant to 28 U.S.C. § 1446(d), the filing of the Notice of Removal in this Court

effects the removal, and the Superior Court shall proceed no further unless and until the

case is remanded.

VISION LAB TELECOMMUNICATIONS, INC.,

By its attorneys,

_____
Richard M. Zielinski (BBO #540060)
Ethan A. McKittrick (BBO #655392)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, MA 02110-3333
(617) 482-1776

Of Counsel:
Samuel S. Cohen
Neal Gerber Eisenberg LLC
2 North LaSalle Street
Suite 2200
Chicago, IL 60602

Dated: July 21, 2005

## Certificate of Service

I, Ethan A. McKittrick, hereby certify that on July 21, 2005 I served the foregoing Notice of Filing Notice of Removal, by hand and first class mail, postage prepaid, upon counsel for the Plaintiff, Walter Oney, Esq., 4 Longfellow Place, Boston, MA 02114.

_____
Ethan A. McKittrick

ALL STATE LEGAL 800-222-0410  ©011  RECYCLED

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Michael Sherman | Vision Lab Telecommunications, Inc. et al. |
| **(b)** County of Residence of First Listed Plaintiff  Middlesex, MA<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant  Miami-Dade, Florida<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| **(c)** Attorney's (Firm Name, Address, and Telephone Number)<br>Walter Oney, Esq.<br>4 Longfellow Place, Boston, MA 02114 | Attorneys (If Known)<br>Richard M. Zielinski, Esq., Ethan A. McKittrick, Esq.<br>Goulston & Storrs, P.C., 400 Atlantic Avenue, Boston, MA 02110 |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☒ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding

☒ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §§ 1332, 1441 and 1446

Brief description of cause:  Removal of action, on the basis of diversity, of complaint alleging violations of the Telephone Consumer Protection Act, FCC regulations, and state statutes.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ over $350,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE  07/20/2005

SIGNATURE OF ATTORNEY OF RECORD  Richard M. Zielinski

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) _Sherman v. Vision Labs Telecommunications, Inc._

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

  [ ]  I.  160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

  [✓]  II.  195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,  \*Also complete AO 120 or AO 121
        740, 790, 791, 820\*, 830\*, 840\*, 850, 890, 892-894, 895, 950.  for patent, trademark or copyright cases

  [ ]  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
        315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
        380, 385, 450, 891.

  [ ]  IV.  220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
        690, 810, 861-865, 870, 871, 875, 900.

  [ ]  V.  150, 152, 153.    **05 11545 NG**

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
    YES [ ]    NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
    YES [ ]    NO [✓]

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
    YES [ ]    NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
    YES [ ]    NO [✓]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
    YES [ ]    NO [✓]

    A.  If yes, in which division do all of the non-governmental parties reside?

        Eastern Division [ ]    Central Division [ ]    Western Division [ ]

    B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division [✓]    Central Division [ ]    Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
    YES [ ]    NO [✓]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _Richard M. Zielinski_
ADDRESS _Goulston & Storrs, 400 Atlantic Ave., Boston, MA 02110_
TELEPHONE NO. _617-574-6574_

(CategoryForm.wpd - 5/2/05)



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

MICHAEL SHERMAN,                                )
                                                )
            Plaintiff,                          )
                                                )
VISION LAB TELECOMMUNICATIONS,                  )
 INC., ON DEMAND MARKETING LLC,                 )
RANDY THOMASON, HIGHLAND                        )
MARKETING LLC, BELLSOUTH                        )
CORPORATION, TELEDATA SOLUTIONS,                )    **05  11545  NG**
INC., and THE SUPPORT GROUP IN SWEDEN,          )
AB,                                             )
                                                )
            Defendants.                         )

**NOTICE OF REMOVAL TO FEDERAL COURT**
**PURSUANT TO 28 U.S.C. §§ 1332, 1441 and 1446**

Defendant, VISION LAB TELECOMMUNICATIONS, INC., a Florida Corporation ("Defendant" or "Vision Lab") by its attorneys, Goulston & Storrs P.C., pursuant to 28 U.S.C. §§ 1332, 1441 and 1446 hereby gives notice of removal of proceedings in the Trial Court of Massachusetts, Superior Court Department, Middlesex County between the above-captioned parties bearing Civil No. MICV2004-05030 to the United States District Court for the District of Massachusetts for the reasons set forth below.

1.    Removal is authorized pursuant to 28 U.S.C. § 1441(a) where the District Courts of the United States have original jurisdiction. The District Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 where the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states. As set forth below, these requirements are met.

2.    Plaintiff Michael Sherman ("Sherman") has alleged that he resides at 54 Knowles Road, Watertown, Massachusetts 02472.

3.    Defendant Vision Lab is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 1680 Michigan Avenue, Suite 1106, Miami Beach, Florida 33139.

4.    The Complaint alleges that defendant On Demand Marketing LLC is a Californian limited liability company with its principal place of business in Costa Mesa, California.

5.    The Complaint alleges that defendant Randy Thomason is an individual residing in Costa Mesa, California.

6.    The Complaint alleges that defendant Highland Marketing LLC is an alien limited liability company with its principal place of business in Gibraltar.

7.    The Complaint alleges that defendant Bellsouth Corporation is a Georgia corporation with its principal place of business in Atlanta, Georgia.

8.    The Complaint alleges that defendant Teledata Solutions, Inc. is a Nevada corporation with its principal place of business in Westlake Village, California.

9.    The Complaint alleges that defendant The Support Group of Sweden AB is a Swedish limited liability company with its principal place of business in Stockholm, Sweden.

10.    The only process, pleadings, or order received by defendants in this action is a summons and complaint dated June 20, 2005 ("Summons" and "Complaint"), which was received by defendant Vision Lab on June 22, 2005. A copy of the Summons is annexed hereto as Exhibit A and the Complaint is annexed hereto as Exhibit B.

11.    Accordingly, there is complete diversity of citizenship among the parties to this action.

12.     As of July 20, 2005, only defendants Vision Lab, Bellsouth Corporation and Teledata Solutions, Inc. had been served with summons and complaints. However, both Bellsouth Corporation and Teledata Solutions, Inc. have advised counsel to Vision Lab that they contest personal jurisdiction in Massachusetts and assert that service of process on them has not been properly effected.

13.     Sherman's claims against Bellsouth Corporation and Teledata Solutions, Inc. are exclusively for a bill of discovery. Accordingly, they are not necessary or true parties in interest in this litigation. Further, their claims, standing alone would not be subject to removal. Therefore, their consent to removal is not required pursuant to the Rule of Unanimity. *See Shepard v. Egan*, 767 F. Supp. 1158, 1161 and fn. 3 (D. Mass. 1990).

14.     Nevertheless, Samuel Cohen of Neal Gerber Eisenberg LLP in Chicago, Illinois, acting of counsel to Vision Lab has contacted each of Bellsouth Corporation and Teledata Solutions Inc. directly and obtained their consent to this Notice of Removal.

15.     The Complaint alleges "upon information and belief" that Vision Lab transmitted at least 55 unsolicited facsimile advertisements to Sherman's fax machine in violation of 47 U.S.C. § 227; 47 C.F.R. §§ 64.1200, 64.1601(e), and 68.318(d); Mass. G.L. c. 159C; and Regulations of the Massachusetts Office of Consumer Protection and Business Regulation, including 201 C.M.R. §§ 12.00 *et seq.*

16.     Plaintiff seeks damages from Vision Lab of up to $6,500 for each alleged violating facsimile, or in excess of $350,000. Accordingly, the amount in controversy meets the requirement of 28 U.S.C. § 1332(a).

17.     This Court, therefore, has original jurisdiction of this matter based on the diversity of citizenship of the parties and removal is proper pursuant to 28 U.S.C. §§ 1441 and 1446.

VISION LAB TELECOMMUNICATIONS, INC.,

By its attorneys,

*Richard M. Zielinski*

Richard M. Zielinski (BBO #540060)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, MA 02110-3333
(617) 482-1776

Of Counsel:
Samuel S. Cohen
Neal Gerber Eisenberg LLC
2 North LaSalle Street
Suite 2200
Chicago, IL  60602

Dated: July 20, 2005

NGEDOCS: 1178463.1

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION

....MIDDLESEX......... , ss
[seal]

No. *MICV 2004-05030*

*Michael Sherman* , Plaintiff(s)

v.

*Vision Lab Telecommunications, Inc.,
On Demand Marketing LLC,
Randy Thomason,* , Defendant(s)
*Highland Marketing LLC,
Teledata Solutions, Inc.,
The Support Group in Sweden, AB*

### SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon ....*Walter...Oney, ESe*........................
....................................... plaintiff's attorney, whose address is *4. Long fellow Place.*
*Boston, MA. 02114*..................................., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at *40. Thorndike St,*

*Cambridge, MA. 02141* ..................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse** , ~~L. B. Hawley~~ Esquire, at ......*Cambridge, MA*.......................................

the .....*20th*......................................... day of *June* ...........................................

...................... in the year of our Lord ...*2005*........................... .

*Edward J. Sullivan*
**Clerk**

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

TRIAL COURT OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
MIDDLESEX COUNTY

MIDDLESEX, ss.                                          Civil No. MICV2004-05030

MICHAEL SHERMAN,                        )
    Plaintiff                            )
    v.                                   )
VISIONLAB TELECOMMUNICATIONS, )
    INC.,                                )
ON DEMAND MARKETING LLC,                 )
RANDY THOMASON,                          )
HIGHLAND MARKETING LLC,                  )
BELLSOUTH CORPORATION,                   )
TELEDATA SOLUTIONS, INC.,                )
    and                              )
THE SUPPORT GROUP IN SWEDEN, AB,)
    Defendants

### FIRST AMENDED COMPLAINT

1. The Plaintiff brings this action to obtain statutory damages on account of unsolicited facsimile advertisements he received on the fax machine located in his home during 2004 and in order to learn the identities and locations of unknown persons and entities responsible for sending such unsolicited facsimile advertisements.

### PARTIES

2. The Plaintiff is a natural person residing at 54 Knowles Road, Watertown, MA 02472.

3. On information and belief, Defendant VISIONLAB TELECOMMUNICATIONS, INC., (VISIONLAB) is a corporation duly organized and existing under the laws of the

State of Florida and having its principal place of business at 1680 Michigan Ave., Suite 1106, Miami Beach, FL 33139.

4. On information and belief, Defendant ON DEMAND MARKETING, LLC, (ON DEMAND) is a limited liability company duly organized and existing under the laws of the State of California and having its principal place of business at 426 16th Place, Costa Mesa, CA 92627.

5. On information and belief, Defendant RANDY THOMASON (THOMASON) is an individual residing or having a place of business at 426 16th Place, Costa Mesa, CA 92627.

6. On information and belief, Defendant HIGHLAND MARKETING LLC (HIGHLAND) is a limited liability company duly organized and existing under the laws of the City of Gibraltar and having a place of business in care of Portland House, Glacis Road, Gibraltar.

7. On information and belief, Defendant BELLSOUTH CORPORATION (BELLSOUTH) is a corporation duly organized and existing under the laws of the State of Georgia and having its principal place of business at 1155 Peachtree St., N.E., Atlanta, GA 30309-3510.

8. On information and belief, Defendant TELEDATA SOLUTIONS, INC. (TELEDATA) is a corporation duly organized and existing under the laws of the State of Nevada and having its principal place of business at 200 No. Westlake Blvd., Suite 104, Westlake Village, CA 91362.

9. On information and belief, Defendant THE SUPPORT GROUP IN SWEDEN AB (SUPPORT GROUP) is a limited liability entity duly organized and existing under the

-2-

laws of Sweden and having its principal place of business at Liljeholmsvägen 18, SE-11761 Stockholm, Sweden.

FACTS

10. At all times relevant to this action, the Plaintiff has subscribed for residential telephone service under the number 617-923-1329.

11. At all times relevant to this action, the Plaintiff has connected a facsimile machine to 617-923-1329, which machine is capable of transcribing text and images from an electronic signal received over a regular telephone line onto paper.

12. The Plaintiff placed his telephone number 617-923-1329 on the National Do Not Call Registry on August 6, 2003 and on the Massachusetts do-not-call list effective January 1, 2004.

13. Between April 30, 2004 and December 15, 2004, the Plaintiff received more than 90 unsolicited facsimile advertisements on his facsimile machine connected to 617-923-1329.

14. Some of said advertisements have arrived between 8:00 p.m. and 8:00 a.m., local time.

15. None of said advertisements indicates the identity or location of the sender or the true name and location of the advertiser.

16. The Plaintiff is informed and believes that the senders and advertisers of said advertisements have violated one or more of the federal Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227; regulations of the Federal Communications Commission thereunder including, without limitation, 47 C.F.R. §§ 64.1200, 64.1601(e), and 68.318(d); the Massachusetts Telephone Solicitation Law, G.L. c. 159C; and

-3-

regulations of the Office of Consumer Protection and Business Regulation thereunder, including, without limitation, 201 C.M.R. §§ 12.00 *et seq.,* (collectively referred to herein as "said telemarketing statutes and regulations"). These statutes and regulations provide a private right of action to seek damages up to $6,500 for each violation.

COUNT 1
CLAIMS AGAINST VISIONLAB

17. The Plaintiff repeats the allegations of paragraphs 1, 2, 3, and 10-16.

18. The Plaintiff is informed and believes that at least 55 of the unsolicited facsimile advertisements he received as so alleged were transmitted by VISIONLAB.

19. The Plaintiff is further informed and believes that VISIONLAB had substantial involvement in one or more of the following activities, to wit: designing said advertisements, choosing the telephone numbers to which such advertisements were sent, controlling the information supplied in marginal headings on such advertisements, controlling the caller identification information supplied to common carriers during the transmission of such advertisements, contracting for so-called number removal services furnished by SUPPORT GROUP and other parties, and actually transmitting said advertisements.

WHEREFORE the Plaintiff demands judgment against VISIONLAB for actual and statutory damages, and the reasonable fees of his attorney, pursuant to said telemarketing statutes and regulations.

COUNT 2
CLAIMS AGAINST ON DEMAND AND THOMASON

20. The Plaintiff repeats the allegations of paragraphs 1, 2, 4, 5, and 10-16.

-4-

21. The Plaintiff is informed and believes that at least 3 of the unsolicited facsimile advertisements he received as so alleged were transmitted on behalf of ON DEMAND.

22. The Plaintiff is further informed and believes that THOMASON was at all times relevant to this action in actual charge of the day-to-day operations of ON DEMAND and had substantial involvement in the design of said advertisements, in the decision to transmit them by fax to the Plaintiff, in the selection of telephone numbers to which said advertisements would be transmitted, and in contracting with VISIONLAB and others to transmit such advertisements by fax to the Plaintiff on behalf of ON DEMAND and on his own behalf.

WHEREFORE the Plaintiff demands judgment against ON DEMAND and THOMASON, jointly and severally, for actual and statutory damages, and the reasonable fees of his attorney, pursuant to said telemarketing statutes and regulations.

COUNT 3
## CLAIMS AGAINST HIGHLAND MARKETING

23. The Plaintiff repeats the allegations of paragraphs 1, 2, 6, and 10-16.

24. The Plaintiff is informed and believes that at least 2 of the unsolicited facsimile advertisements he received as so alleged were transmitted on behalf of HIGHLAND MARKETING.

25. The Plaintiff is further informed and believes that HIGHLAND MARKETING had substantial involvement in the design of said advertisements, in the decision to transmit them by fax to the Plaintiff, in the selection of telephone numbers to which said advertisements would be transmitted, and in contracting with VISIONLAB and others to transmit such advertisements by fax to the Plaintiff on behalf of HIGHLAND MARKETING.

-5-

WHEREFORE the Plaintiff demands judgment against HIGHLAND MARKETING for actual and statutory damages, and the reasonable fees of his attorney, pursuant to said telemarketing statutes and regulations.

COUNT 4
CLAIM AGAINST BELLSOUTH FOR BILL OF DISCOVERY

26. The Plaintiff repeats the allegations of paragraphs 1, 2, 7, and 10-16.

27. The Plaintiff has obtained business records, duly authenticated under oath pursuant to G.L. c. 233, § 78, from telephone common carriers tending to show that some of the telephone calls described in paragraph 13 originated from a BELLSOUTH subscriber.

28. BELLSOUTH refused on March 4, 2005, to identify the subscriber or subscribers responsible for said telephone calls except in response to a subpoena issued by a court in Georgia, Florida, South Carolina, North Carolina, Mississippi, Louisiana, Tennessee, Kentucky, or Alabama, or to a subpoena issued by a federal court and domesticated within one of those states.

29. The Plaintiff is informed and believes that federal courts lack subject matter jurisdiction over cases arising under the TCPA and that, in consequence, he cannot file suit in a federal court in order to utilize the third-party discovery mechanisms provided in the Federal Rules of Civil Procedure.

30. The records of the Secretary of the Commonwealth show that many subsidiaries of BELLSOUTH are either incorporated in Massachusetts or have registered as foreign corporations in Massachusetts.

-6-

31. The Plaintiff avers that BELLSOUTH derives substantial revenue from providing telecommunication services to residents of the Commonwealth and from carrying long distance traffic to and from residents of the Commonwealth.

32. The Plaintiff further avers that he cannot know in which state to commence an action on his substantive claims without obtaining information that is presently in the exclusive possession of BELLSOUTH and that, in consequence, the conditions imposed by BELLSOUTH on providing that information are manifestly unreasonable.

33. The Plaintiff therefore avers that this court may exercise personal jurisdiction over BELLSOUTH pursuant to the Massachusetts Long Arm statute, G.L. c. 223A, § 3 and may compel BELLSOUTH to provide to the Plaintiff the information that the Plaintiff needs in order to identify the person or persons responsible for the telephone calls referred to in paragraph 13.

WHEREFORE the Plaintiff prays that the court might allow his bill of discovery against BELLSOUTH for the purpose of more particularly determining who is responsible for transmitting the facsimile advertisements referred to in paragraph 13.

## COUNT 5
### CLAIM AGAINST TELEDATA FOR BILL OF DISCOVERY

34. The Plaintiff repeats the allegations of paragraphs 1, 2, 8, and 10-16.

35. The Plaintiff is informed and believes that at least twenty of the faxes complained of herein carry a toll-free "removal" number assigned to TELEDATA as Responsible Organization.

36. On January 6, 2005, in response to a subpoena issued in this case, TELEDATA provided to the Plaintiff an affidavit to the effect that each of twenty specified toll-free numbers, which the Plaintiff says appear as "removal" numbers on some of the faxes

-7-

complained of herein, were subscribed for by SUPPORT GROUP. TELEDATA supplied on January 14, 2005, a list of several hundred toll-free numbers for which TELEDATA is the Responsible Organization and SUPPORT GROUP is the subscriber.

37. On February 9, 2005, after two follow-up requests by the Plaintiff, TELEDATA provided codes identifying the circuits to which the toll-free numbers assigned to SUPPORT GROUP connect. Qwest Communications, the putative provider of the circuits so identified, has no record of circuits having such codes. TELEDATA has therefore not identified said circuits with sufficient specificity to allow the Plaintiff to determine whether a United States entity receives such calls or to determine the physical terminus of such calls.

38. The Plaintiff avers that he requires the information described in the preceding paragraph in order to more certainly identify the person or persons who placed the telephone calls referred to in paragraph 13.

39. The Plaintiff further avers that TELEDATA derives substantial revenue from wholesaling toll-free numbers, including the so-called "removal" numbers appearing on the faxes complained of in his action, that it should reasonably expect to be dialed by residents of Massachusetts.

40. The Plaintiff therefore avers that this court may exercise personal jurisdiction over TELEDATA pursuant to the Massachusetts Long Arm statute, G.L. c. 223A, § 3.

WHEREFORE the Plaintiff prays that the court might allow his bill of discovery against TELEDATA for the purpose of more particularly determining who is responsible for transmitting the facsimile advertisements referred to in paragraph 13.

### COUNT 6
### CLAIMS AGAINST SUPPORT GROUP

-8-

41. The Plaintiff repeats the allegations of paragraphs 1, 2, 9, and 10-16.

42. The Plaintiff has obtained business records, duly authenticated under oath pursuant to G.L. c. 233, § 78, from TELEDATA tending to show that twenty of the faxes complained of herein carry a toll-free "removal" number subscribed for by SUPPORT GROUP.

43. The Plaintiff is informed and believes that one or more fax broadcasting companies, including the person or persons who placed the telephone calls referred to in paragraph 13. have entered into contracts with SUPPORT GROUP, pursuant to which SUPPORT GROUP provides a toll-free automated response service whereby a consumer may register a request to have the consumer's fax number removed from the database or list of fax numbers used by said fax broadcasting companies.

44. The Plaintiff avers that SUPPORT GROUP derives substantial revenue by providing a toll-free automated response service that it should reasonably expect to be used by residents of Massachusetts.

45. The Plaintiff therefore avers that this court may exercise personal jurisdiction over SUPPORT GROUP pursuant to the Massachusetts Long Arm statute, G.L. c. 223A, § 3.

46. The Plaintiff further avers that SUPPORT GROUP has so entered into contracts, and so derives substantial revenue, in the knowledge that it is thereby aiding and abetting, and for the purpose of aiding and abetting, VISIONLAB in flouting said statutes and regulations on a massive scale.

WHEREFORE the Plaintiff demands judgment against SUPPORT GROUP for actual

and statutory damages, and the reasonable fees of his attorney, pursuant to said

telemarketing statutes and regulations.

Dated: June 16, 2005

MICHAEL SHERMAN, by his attorney,

Walter Oney (BBO # 379795)
4 Longfellow Place
Boston, MA 02114
Tel: 617-227-5620
Fax: 617-227-5760

-10-

MAS-20041213        **Commonwealth of Massachusetts**        07/22/2005

gilmanr        **MIDDLESEX SUPERIOR COURT**        12:07 PM

**Case Summary**

**Civil Docket**

## MICV2004-05030
## Sherman v Visionlab Telecommunications, Inc et al

| File Date | 12/22/2004 | **Status** | Disposed: transfered to other court (dtrans) |
|---|---|---|---|
| **Status Date** | 07/21/2005 | **Session** | D - Cv D (7A Cambridge) |
| **Origin** | 1 | **Case Type** | E99 - Miscellaneous |
| **Lead Case** | | **Track** | X |

| Service | 07/21/2005 | **Answer** | 05/21/2005 | **Rule**12/19/20 | |
|---|---|---|---|---|---|
| **Rule 15** | | **Discovery** | | **Rule 56** | |
| **Final PTC** | 06/20/2005 | **Disposition** | 07/20/2005 | **Jury Trial** | No |

### PARTIES

**Plaintiff**
Michael Sherman
54 Knowles Road
Watertown, MA 02472
Active 12/22/2004

**Private Counsel 379795**
Walter Oney
4 Longfellow Place
Boston, MA 02114
Phone: 617-227-5620
Fax: 617-227-5760
Active 12/22/2004 Notify

**Defendant**
Visionlab Telecommunications, Inc
1680 Michigan Avenue
Suite 1106
Miami, FL 33139
Served: 06/22/2005
Served (answr pending) 06/22/2005

**Private Counsel 540060**
Richard M Zielinski
Goulston & Storrs
400 Atlantic Avenue
Boston, MA 02110-3333
Phone: 617-482-1776
Fax: 617-574-4112
Active 07/21/2005 Notify

**Private Counsel 655392**
Ethan A McKittrick
Goulston & Storrs
400 Atlantic Avenue
Boston, MA 02110-3333
Phone: 617-574-6574
Fax: 617-574-7841
Active 07/21/2005 Notify

**Defendant**
On Demand Marketing, LLC
Served: 06/29/2005
Served (answr pending) 06/29/2005

**Commonwealth of Massachusetts**
**MIDDLESEX SUPERIOR COURT**
**Case Summary**
**Civil Docket**

## MICV2004-05030
## Sherman v Visionlab Telecommunications, Inc et al

**Defendant**
Randy  Thomason
426 16th Place
Costa Mesa, CA 92627
Served: 06/29/2005
Served (answr pending) 06/29/2005

**Defendant**
Highland Marketing LLC
Service pending 06/17/2005

**Defendant**
BellSouth Corp.
Prentice Hall Corporation
40 Technology Pkway. South, #300
Norcross, GA 30092
Served: 06/22/2005
Defaulted by 55a request 07/19/2005 Notify

**Defendant**
Teledata Solutions, Inc.
Served: 06/20/2005
Served (answr pending) 06/20/2005

**Defendant**
The Support Group in Sweden AB
Service pending 06/17/2005

**Defendant**
Comcast Phone of Massachusetts, Inc.
Served: 12/23/2004
Dismissed by agreement of parties 02/28/2005

MAS-20041213                          **Commonwealth of Massachusetts**                          07/22/2005
gilmanr                                  **MIDDLESEX SUPERIOR COURT**                              12:07 PM
                                              **Case Summary**
                                              **Civil Docket**

## MICV2004-05030
## Sherman v Visionlab Telecommunications, Inc et al

| **Defendant** | |
|---|---|
| Unknown Telephone Carriers<br>Served: 12/23/2004<br>Inactive 06/17/2005 | |

**ENTRIES**

| Date | Paper | Text |
|---|---|---|
| 12/22/2004 | 1.0 | Complaint & civil action cover sheet filed |
| 12/22/2004 | | Origin 1, Type E99, Track X. |
| 12/22/2004 | 2.0 | Plaintiff Michael Sherman's ex parte MOTION for temporary restraining order |
| 12/22/2004 | | MOTION (P#2) Order of Notice to issue returnable Dec. 30, 2004 in emergency session. (Neel, J.) |
| 12/22/2004 | 3.0 | Summons and order of notice issued; returnable December 30, 2004 at 2:00 in 8A (emergency Session). |
| 12/23/2004 | 4.0 | Plaintiffs application for preliminary injunctioon. |
| 12/28/2004 | 5.0 | SERVICE RETURNED:  Comcast Phone of Massachusetts, Inc.(Defendant) and Unknown Telephone Carriers on 12/23/04 in hand to Y. Concepciion, Process Clerk at 101 Federal Street, c/o CT Corporation Systems, Boston. |
| 01/03/2005 | 6.0 | Joint Stipulation Concerning Record Retention.  The Plaintiff and Comcast Phone of Massachusetts, inc. (Comcast) hereby stipulate as follows: (1) Comcast agrees that, through December 31, 2005, neither it nor persons or entities under its control will alter or destroy any records now existing, and under its custody or control, tending to show (a) the telephone numbers from which Michael Sherman, of 54 Knowles Road, Watertown, MA 02472, has, since November 12, 2004 through December 31, 2004, received facsimile calls on his residential telephone connected to 617-923-1329; (b) whether such calls were accompanied by caller-id information and, if so, what that information was; and (c) the names and address of any COMCAST subscribers who placed such calls.  The Plaintiff may make further request for records with respect to any specific facsimile calls received after December 31, 2004, or for retention of any records after December 31, 2005.  (2) Comcast further agrees that it will forthwith request from AT&T such records within the scope of this agreement as AT&T has within its custody or control to which comcast is contractually entitled to obtain, so tending, and that it will retain any such records pursuant to this agreement.  (3) The Plaintiff agrees that the foregoing undertakings by Comcast shall be in lieu of any temporary or preliminary injunctive relief to preserve the status quo pending the resolution on the merits of the Plaintiff's complaint for a bill of discovery.  (4) These undertakings are without admission or prejudice with respect to any |

**Commonwealth of Massachusetts**
**MIDDLESEX SUPERIOR COURT**
**Case Summary**
**Civil Docket**

07/22/2005
12:07 PM

## MICV2004-05030
### Sherman v Visionlab Telecommunications, Inc et al

| Date | Paper | Text |
|------|-------|------|
| | 6.0 | defenses to the injunctive relief requested or the merits of the |
| | | Plaintiff's cause of action.  Dated: January 3, 2005.  Filed in Court. |
| 02/28/2005 | 7.0 | Notice of voluntary dismissal (41a.l.i) as to Comcast Phone of |
| | | Massachusetts, Inc. ONLY, with prejudice. |
| 02/28/2005 | 8.0 | MOTION for Enlargement of Time to Serve Process [RULE 4(j)] until |
| | | July 22, 2005. |
| 03/02/2005 | | MOTION (P#8) After review, motion ALLOWED service deadline extended |
| | | to 7/1/2005.  Dated: March 1, 2005  (Kenneth J. Fishman, Justice) |
| | | Notices mailed March 02, 2005 |
| 06/17/2005 | 9.0 | Plff's First Amended complaint making deft Unknown Telephone Carriers |
| | | (Inactive), & adding Visionlab Telecommunications, Inc., On Demand |
| | | Marketing, LLC, Randy Thomason, Highland Marketing LLC, BellSouth |
| | | Corp., Teledata Solutions, Inc. & The Support Group in Sweden AB |
| 06/17/2005 | 10.0 | Plff's MOTION to Approve Service by Federal Express on defts The |
| | | Support Group in Sweden AB & Highland Marketing LLC, memo of law in |
| | | support of |
| 06/28/2005 | 11.0 | SERVICE RETURNED:  BellSouth Corp.(Defendant) 06/22/05 by certified |
| | | mail return receipt attached, c/o Prentice Hall Corporation, 40 |
| | | Technology Pkwy. South, #300, Norcross, GA 30092 |
| 06/29/2005 | 12.0 | SERVICE RETURNED:  Teledata Solutions, Inc.(Defendant) 06/20/05 by |
| | | certified mail return receipt attached, Jeff L. Daniels, 4711 Deseret |
| | | Dr., Woodland Hills, CA 91364 |
| 06/29/2005 | 13.0 | SERVICE RETURNED:  Visionlab Telecommunications, Inc.(Defendant) |
| | | 06/22/05 by certified mail return receipt attached,   c/o American |
| | | Information Services Inc., One S.E. 3d Ave., Third Floor, Miami, FL |
| | | 33131 |
| 07/13/2005 | | MOTION (P#10) After review, the motion is DENIED Dated: July 12, 2005 |
| | | (Haggerty, Justice) Notices mailed July 13, 2005 |
| 07/19/2005 | 14.0 | Request upon clerk to default (55a) re: BellSouth Corp. by Michael |
| | | Sherman |
| 07/19/2005 | 15.0 | Default (55a) as to defendant BellSouth Corp.. Copies mailed July 19, |
| | | 2005 |
| 07/20/2005 | 16.0 | SERVICE RETURNED: Randy Thomason(Defendant) 06/29/05 L&U and by |
| | | first class mail, 426 16th Place, Costa Mesa, CA 92627 |
| 07/20/2005 | 17.0 | SERVICE RETURNED: On Demand Marketing, LLC(Defendant)  06/29/05 L&U |
| | | and by first class mail, 426 16th Place, Costa Mesa, CA 9262 |
| 07/21/2005 | 18.0 | Case REMOVED this date to US District Court of Massachusetts  by deft |
| | | Vision Lab Telecommunications, Inc |
| 07/21/2005 | | ABOVE ACTION THIS DAY REMOVED TO US DISTRICT COURT |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MICHAEL SHERMAN,                                      )
                                                      )
          Plaintiff,                                   )
                                                      )
VISION LAB TELECOMMUNICATIONS,                        )
 INC., ON DEMAND MARKETING LLC,                       )
RANDY THOMASON, HIGHLAND                              )   **05  1(545  NG**
MARKETING LLC, BELLSOUTH                              )
CORPORATION, TELEDATA SOLUTIONS,                      )
INC., and THE SUPPORT GROUP IN SWEDEN,                )
AB,                                                   )
                                                      )
          Defendants.                                  )

      PURSUANT TO RULE 7.1(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE

AND LR 7.3, TO ENABLE JUDGES AND MAGISTRATE JUDGES OF THE COURT TO

EVALUATE POSSIBLE DISQUALIFICATION OR RECUSAL, THE UNDERSIGNED

COUNSEL FOR <u>DEFENDANT VISION LAB TELECOMMUNICATIONS, INC.</u> (A PRIVATE

NON-GOVERNMENTAL PARTY) CERTIFIES THAT THE FOLLOWING ARE CORPORATE

PARENTS, AFFILIATES AND/OR SUBSIDIARIES OF SAID PARTY WHICH ARE

PUBLICLY HELD AND OWN 10% OR MORE OF ITS STOCK:

     None.


DATE: ___7/20/05_____

                                     *Richard M. Zielinski*_____
                                     SIGNATURE OF ATTORNEY

NGEDOCS: 1178472.1

| CIVIL ACTION COVER SHEET | Trial Court of Massachusetts<br>SUPERIOR COURT DEPARTMENT<br>County: _____ | Docket Number<br>04-5030 |
|---|---|---|

| PLAINTIFF(S) *Michael Sherman* | DEFENDANT(S) *Comcast Phone of Mass., Inc* |
|---|---|
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE<br>*Walter Oney*<br>*4 Long Fellow Pl, Boston, MA 02114*<br>Board of Bar Overseers number: *379775* | ATTORNEY (if known) |

### Origin code and track designation

Place an x in one box only:
[ ] 1. F01 Original Complaint
[ ] 2. F02 Removal to Sup.Ct. c. 231, s.104 (Before trial) (F)
[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
[ ] 5. F05 Reactivated after rescript; relief from judgment/ Order (Mass.R.Civ.P. 60) (X)
[ ] 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| *E99* | *Bill of discovery* | X | ( ) Yes    (X) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
**(Attach additional sheets as necessary)**

A. Documented medical expenses to date:
1. Total hospital expenses . . . . . . . . . . . . . . . . . . . $. . . . . .
2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . $. . . . . .
3. Total chiropractic expenses . . . . . . . . . . . . . . . $. . . . . .
4. Total physical therapy expenses . . . . . . . . . . . $. . . . . .
5. Total other expenses (describe) . . . . . . . . . . . Subtotal $. . . . . .
B. Documented lost wages and compensation to date . . . . . $. . . . . .
C. Documented property damages to date . . . . . . . . . . . . . $. . . . . .
D. Reasonably anticipated future medical and hospital expenses . $. . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . $. . . . . .
F. Other documented items of damages (describe)
$. . . . . .
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

*N/A*

$. . . . . .
TOTAL: $. . . . . .

*(stamp: FILED IN THE OFFICE OF THE CLERK OF THE COURTS ... DEC 22 2004 ... CLERK)*

### CONTRACT CLAIMS    *N/A*
**(Attach additional sheets as necessary)**
Provide a detailed description of claim(s):

TOTAL    $. . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."
Signature of Attorney of Record *Walter Oney*                    DATE: *12/22/04*

A.O.S.C. 2003

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — (OTHER)

## COMMONWEALTH OF MASSACHUSETTS

............ MIDDLESEX ............ , ss
[seal]

*1 7*

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. *MICV 2004-05030*

*Michael Sherman*
........................................ , Plaintiff(s)

v.

*Vision Lab Telecommunications, Inc.,*
*— On Demand Marketing LLC,*
*Randy Thomason,* ............... , Defendant(s)
*Highland Marketing LLC,*
*Teledata Solutions, Inc.*
*The Support Group in Sweden, AB*

### SUMMONS

To the above-named Defendant:

    You are hereby summoned and required to serve upon ... *Walter Oney, Esq.* ..........................
...................................................... plaintiff's attorney, whose address is *4 Longfellow Place*
*Boston, MA 02114* ..........................................., an answer to the complaint which is herewith
served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you
fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also
required to file your answer to the complaint in the office of the Clerk of this court at *40 Thorndike St,*
*Cambridge, MA 02141* ..................... either before service upon plaintiff's attorney or within a
reasonable time thereafter.

    Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may
have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's
claim or you will thereafter be barred from making such claim in any other action.

    Witness, **Barbera J. Rouse** ............, Esquire, at ..... *Cambridge, MA* ..................................
the .... *20th* ...................... day of *June* ........................................................
.................... in the year of our Lord *2005* ...................... .

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

JUL 20 2005

*Edward J Sullivan*
**Clerk**

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
   for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

# AFFADAVIT OF DUE DILIGENCE:

Michael Sherman

v.

Visionlab Telecommunications Inc. et al
MICU 2004-05030

I William Cohen declare:

I am a registered California Process Server. My Los Angeles County Registration is #5004 and expires April, 19, 2006. I am not a party to this action. I have personal knowledge of the facts contained in this declaration and if called as a witness could and would competently testify thereto.

Prior to performing the alternate service of the summons and complaint on defendant ON DEMAND MARKETING, LLC in this case I made attempts and service on the following dates and times:

On each of these attempts the agent for service, Randy Thomason was not available.

1. Thursday, June 23, 2005 at 8:54 a.m. at 426 16th Place, Costa Mesa, CA. There was no answer at the residence. I observed a plaque near the front door that said "THOMASON'S PAD".

2. Friday, June 24, 2005 at 3:58 p.m. at the above address: There was no answer at the residence.

3. Sunday June 26, 2005 at 7:40 a.m. at the above address. There was no answer at the residence.

4. Wednesday June 29, 2005 at 11:12 a.m. at the above address. There was no answer at the residence. At that time, I left the documents in a conspicuous place, at eye level, less than 18 inches from the front door.

I certify under the penalties of perjury that I served Randy Thomason by leaving a copy of the complaint and summons at his last and usual place of abode, to wit 426 16th Place, Costa Mesa, CA, 92627; and on June 29th, 2005, by mailing a copy of the complaint and summons to him at said address, postage prepaid by first-class mail in an envelope containing my return address. I further certify that the copies so mailed were not returned to me by the post office within ten days thereafter.

William E. Cohen  Registered Process Server # 5004, Los Angeles County
July 9. 2005

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. *MICV 2004-05030*

............MIDDLESEX............ , ss
[seal]

*16*

*Michael Sherman* , Plaintiff(s)

v.

*Vision Lab Telecommunications, Inc.,*
*On Demand Marketing LLC,*
*Randy Thomason,* , Defendant(s)
*Highland Marketing LLC,*
*Teledata Solutions, Inc.*
*The Support Group in Sweden, AB*

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon ..*Walter Oney, Esp.*............................

............................ plaintiff's attorney, whose address is *4 Longfellow Place*....

*Boston, MA 02114*..........................., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at *40 Thorndike St,*

*Cambridge, MA 02141*...................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse**, Esquire, at ....*Cambridge, MA*..........................

the ...*20th*.......................... day of *June*..................................

....................., in the year of our Lord *2005*.............................. .

*Edward J Sullivan*
**Clerk**

NOTES.

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

# AFFADAVIT OF PROOF OF SERVICE OF PROCESS

Michael Sherman
v.`
Visionlab Telecommunications Inc. et al
MICU 2004-05030

I William Cohen declare:

I am a registered California Process Server. My Los Angeles County Registration is #5004 and expires April, 19, 2006. I am not a party to this action. I have personal knowledge of the facts contained in this declaration and if called as a witness could and would competently testify thereto.

Prior to performing the alternate service of the summons and complaint on defendant **RANDY THOMASON** in this case I made attempts and service on the following dates and times:

On each of these attempts the defendant Randy Thomason was not available.

1. Thursday, June 23, 2005 at 8:54 a.m. at 426 16th Place, Costa Mesa, CA. There was no answer at the residence. I observed a plaque near the front door that said "THOMASON'S PAD".

2. Friday, June 24, 2005 at 3:58 p.m. at the above address: There was no answer at the residence.

3. Sunday June 26, 2005 at 7:40 a.m. at the above address. There was no answer at the residence.

4. Wednesday June 29, 2005 at 11:12 a.m. at the above address. There was no answer at the residence. At that time, I left the documents in a conspicuous place, at eye level, less than 18 inches from the front door.

I certify under the penalties of perjury that I served Randy Thomason by leaving a copy of the complaint and summons at his last and usual place of abode, to wit 426 16th Place, Costa Mesa, CA, 92627; and on June 29th, 2005, by mailing a copy of the complaint and summons to him at said address, postage prepaid by first-class mail in an envelope containing my return address. I further certify that the copies so mailed were not returned to me by the post office within ten days thereafter.

William E. Cohen   Registered Process Server # 5004, Los Angeles County
July 9, 2005

TRIAL COURT OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
MIDDLESEX COUNTY

MIDDLESEX, ss.                                      Civil No.  **04-5030**

MICHAEL SHERMAN,                    )
    Plaintiff                              )
    v.                                     )
COMCAST PHONE OF                     )
    MASSACHUSETTS, INC.,                )
    and                                    )
UNKNOWN TELEPHONE CARRIERS,          )
    Defendants                             )

*FILED*
*IN THE OFFICE OF THE*
*CLERK OF THE COURTS*

DEC 22 2004

CLERK

## VERIFIED COMPLAINT (BILL OF DISCOVERY)

1.  The Plaintiff brings this bill of discovery in order to learn the identities and locations of unknown persons and entities responsible for sending unsolicited facsimile advertisements to his fax machine, for the purpose of prosecuting a civil action against such persons and entities under federal and state telemarketing laws.

2.  The Plaintiff is a natural person residing at 54 Knowles Road, Watertown, MA 02472.

3.  On information and belief, the Defendant COMCAST PHONE OF MASSACHUSETTS (COMCAST) is a Delaware corporation having a principal place of business at 1201 North Market St., Suite 1405, Wilmington, DE 19801, and doing business in Massachusetts as a provider of residential telecommunications services. On information and belief, COMCAST is the provider of telecommunications services to the Plaintiff's residence.

4.  On information and belief, other telephone common carriers exist who have exclusive possession of information needed by the Plaintiff, but the Plaintiff cannot know their names and address unless and until he obtains certain information from COMCAST.

5.  At all times relevant to this action, the Plaintiff has subscribed for residential telephone service under the number 617-923-1329.

6.  At all times relevant to this action, the Plaintiff has connected a facsimile machine to 617-923-1329, which machine is capable of transcribing text and images from an electronic signal received over a regular telephone line onto paper.

7.  The Plaintiff placed his telephone number 617-923-1329 on the National Do Not Call Registry on August 6, 2003 and on the Massachusetts do-not-call list effective January 1, 2004.

8.  At many diverse times since November 12, 2004, the Plaintiff has received the twenty-two unsolicited facsimile advertisements attached to this Complaint as Exhibits 1-22 on his facsimile machine connected to 617-923-1329. The Plaintiff avers that he will continue to receive unsolicited facsimile advertisements until he is able to identify the senders and advertisers and bring action to force them to stop sending the same.

9.  Some of said advertisements have arrived between 8:00 p.m. and 8:00 a.m., local time.

10. The Plaintiff is informed and believes that the senders and advertisers of said advertisements have violated one or more of the federal Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227; regulations of the Federal Communications Commission thereunder including, without limitation, 47 C.F.R. §§ 64.1200, 64.1601(e), and 68.318(d); the Massachusetts Telephone Solicitation Law, G.L. c. 159C; and

-2-

regulations of the Office of Consumer Protection and Business Regulation thereunder, including, without limitation, 201 C.M.R. §§ 12.00 *et seq.* These statutes and regulations provide a private right of action to seek damages up to $6,500 for each violation.

11. The Plaintiff is informed and believes that the Trial Court of Massachusetts would have original jurisdiction over an action by the Plaintiff seeking damages for alleged violations of such statutes and regulations.

12. None of said advertisements indicates the identity or location of the sender or the true name and location of the advertiser.

13. The Plaintiff is presently unable to determine the identities and locations of the sender or senders of such advertisements or whether the sender or senders provided caller-id information in their facsimile calls as required by federal and state law.

14. The Plaintiff is informed and believes that COMCAST exclusively possesses knowledge of the telephone numbers from which such advertisements were sent and of whether caller-id information accompanied the transmission of such advertisements.

15. The Plaintiff is informed and believes that learning the telephone numbers from which such advertisements were sent will allow him to identify other, presently unknown, telephone carriers whose subscribers are responsible for sending such advertisements; and that such carriers exclusively possess knowledge of the names and addresses of such subscribers.

16. The Plaintiff cannot otherwise obtain the information possessed by the Defendants than by bringing this action and obtaining discovery from them.

-3-

WHEREFORE the Plaintiff prays that this court allow this bill of discovery so that he may issue subpoenas and employ other necessary discovery devices in order to determine the names and addresses of the persons and entities against whom he may properly assert his meritorious claims under federal and state telemarketing laws.

Dated: *Dec. 22, 2004*

MICHAEL SHERMAN, by his attorney,

Walter Oney (BBO # 379795)
4 Longfellow Place
Boston, MA 02114
Tel: 617-227-5620
Fax: 617-227-5760

### VERIFICATION

The undersigned Michael Sherman hereby affirms under the pains and penalties of perjury that he has personal knowledge of the facts stated in this Complaint and knows them to be true, except statements made on information and belief, as to which he says he believes them to be true.

Dated: *Dec. 21, 2004*

Michael Sherman

-4-



# Medical    Dental    Rx

## Our Healthcare Programs Include:

- Maternity
- Vision and Dental
- Accidental Injury (Emergency Room)
- PPO Hospital Network (over 3,500 hospitals)
- PPO Physician's Network (over 350,000 doctors)
- Prescription Program (Target, Eckerds, etc.)
- Hearing Plan
- 24 Hr. Live Nurse Helpline
- 60 Day Satisfaction Guarantee
- $25 FIRST USE Rebate
- $250 Visa Give-Aways
- Personal Healthcare Advocate Program
- 24 Hr. Customer Service

**As Low As $54.00 Per Month.**

**ALL Pre-existing conditions accepted!**

**NO limitations on usage!**

**YOU can not be singled out for rate increases or cancellations!**

**NO age restrictions!**

# Limited Time Offer Good Through Friday!

## CALL US TODAY! 1-877-232-1488

Mon-Fri 8am-8pm, Sat 8am-12pm CST

If you received this fax in error and would like to be removed from our database, call TOLL FREE 1-800-490-3718

© 2004  This is not insurance. Approval #PL22

2

To:    All Employees
From:  Corporate Travel Department

Our Corporate Travel department has asked if you would distribute this memo freely to all employees.

# Its Time to plan your vacation
# Disney's Orlando!!

### Only **$99** p.p!



Kids Stay
**FREE!**

## Your vacation includes
## 4 Days and 3 Nights in **Orlando**
### 3 days and 2 nights in **Daytona Beach**
### and 2 one-day passes to
# Disney World!!



Bonus
vacation!!

## Every reservation will receive:

## 3 Days and 2 Nights in your choice of:
# Jamaica, Cancun, or vegas
# *Roundtrip airfare included!*

### Space is Limited, So Call Today
# Toll Free 1-800-610-3711

If you have received this fax in error please call toll free 866-360-4856

 

# MicroTech Trader

*"News You Can Use About Small-Cap Technology Companies On The Move"*

## Global Vision Holdings: Pink Sheets (GVHL)

*Poised for Growth in Multibillion-Dollar Marketplace*

| Global Vision Holdings, Inc. (Pink Sheets: GVHL) | |
|---|---|
| Recent Price: | $0.08 |
| Common Outstanding: | 55,946,344 |
| November 17, 2004 | |

*MicroTech Trader* is your one-stop resource for news and information on the world's most innovative, small-cap technology companies.

### THIS WEEK'S PICK

This week, we are closely monitoring a company whose founder was the co-inventor of the ATM machine.

**Global Vision Holdings (GVHL)** is a developer and wholesale marketer of a new generation of prepaid (also known as "Stored-Value") financial service products, specializing in the worldwide distribution of pre-paid bank debit cards, retail gift cards, prepaid calling cards, healthcare and insurance products serving a multibillion-dollar global marketplace. Its revenues are realized by licensing its products and services to distributors worldwide and earning a share of generated sales.

### PREPAID DEBIT CARDS

An exciting world of opportunity is unfolding in Prepaid Debit Cards -- bank cards that do not require users to have good credit, a credit history or even a previous banking relationship. They work like credit cards as long as users have loaded them with cash. Since all transactions are authorized online against account balances and no paper checks exist to result in overdrafts, these cards are safer for the issuer to offer to almost anyone.

### RECENT NEWS & DEVELOPMENTS

*November 9*
GVHL inks deal with International Payment Services, Inc. to mass market GVHL's "GlobalFirst" calling cards. IPS will sell the GlobalFirst Calling Card through its distributors, business customers and affiliate websites, many of which have e-commerce capabilities.

*November 1*
GVHL creates OPT Services, Inc. in a joint venture with the AutoPay 21 division of @360, Inc. The new GVHL subsidiary will address operations and development needs for gift card marketing and distribution, and also will develop prepaid Internet telephony in conjunction with wireless "Hot Spots."

> According to Ernst & Young, gift cards comprised 5% of all retail sales in Q4 2003, and sales of gift cards hit $40 billion that year – a 33% increase over 2002 sales. Gift cards were the No. 1 gift item of the 2003 holiday season.

*October 26*
GVHL inks deal with NetNetMarketing, Inc. who will mass market GVHL's "GlobalFirst" telephone calling cards, branded for NetNetMarketing as "Global2000 Phone Cards". NetNetMarketing also will sell GVHL's prepaid bank debit cards.

> For additional GVHL info, visit www.global-vision.com.

### INDUSTRY GURU IDENTIFIES WIRELESS PAYMENT SYSTEM AS NEXT HIGH GROWTH AREA

GVHL CEO Jack Chang brings a proven track record of identifying profound trends and creating systems that translate vision into reality. He is a pioneer in the use of magnetic strips on bankcards, electronic funds transfer systems, and PC-based in-bank systems. He was an early developer and provider of modern-day bank payment systems to more than 100 financial institutions worldwide.

As an adjunct to its current offerings, GVHL is designing a wireless phone using the 10-mile, IEEE 802.11.G public 2.4 GHZ frequency. GVHL also has acquired the global rights to market a Secure Multimedia Card chipset capable of computing, high-density storage, and data encryption, designed to secure bank payment transactions and download intellectual properties, yet is small enough to fit inside a cell phone. The technology was developed by an alliance that includes Hitachi, Sanyo, and Fujitsu.

### M-COMMERCE OPPORTUNITY

Today, more than 1.7 billion people use cellular devices; and research firm IDC projects the number of mobile subscribers engaging in m-commerce transactions to soar exponentially in the coming years.

If you have received this fax in error, or wish to be removed from our list, please call 1800 4900368.

****** Important Notice and Disclaimer: Please Read ******
MicroTech Trader is a technology news service of the Wall Street Small Cap Reporter (WSSCR). WSSCR: 866-249-4961 publishes reports providing information on selected companies that it believes has investment potential. WSSCR is not a registered investment advisor or broker-dealer. This report is provided as an information service only, and the statements and opinions in this report should not be construed as an offer or solicitation to buy or sell any security. WSSCR accepts no liability for any loss arising from an investor's reliance on or use of this report. An investment is considered to be highly speculative and should not be considered unless a person can afford a complete loss of investment. WSSCR has been hired as a consultant by a third party and has been paid $15,000.00 for the publication and circulation of this report. This report contains forward-looking statements, which involve risks and uncertainties – including, but not limited to, risks associated with changes in general economic and business conditions, actions of competitors, the extent to which we are able to develop new services and markets for our services, the time and expense involved in such development activities, the level of demand and market acceptance of the company's services, and/or changes in its business strategies – that may cause actual results to differ materially from those set forth in the forward-looking statements. For further details concerning these risks and uncertainties, please request additional information directly from the company featured above or obtain the SEC filings of the company including the company's most recent annual and quarterly reports.

# Stock Opportunities on Wall Street 4



| Company: Global National Communications Corporation |
| OTC BB Symbol: GLNC |
| Shares Outstanding: **22,000,000** |
| Current Price: **$7.45**   Website: **www.gncc.net** |

November 17th, 2004
Issue: 381

## GLNC: Global National Communications Corp. Has Signed a Contract with Chongqing Yantong Industrial Co. Ltd to Manufacture 500,000 Sets of the 5568 Series PHS Phones for the Chinese Market. The Contract is Valued at Approximately $21 Million Dollars

Global National Communications Corporation (OTC Bulletin Board Symbol: GLNC), through its wholly-owned subsidiary Guonuo Industrial Co. Ltd., **a Shenzhen, China** company employing over **600 employees** and generating **revenues in excess of $13 million in 2003** contract manufacturing OEM electronic products for customers such as **Sony, Panasonic, Aiwa of Japan, Philips of Holland, and Daewoo of Korea**, is expanding into the manufacture and distribution of **PHS (Personal Handy System) cell phones in China.**

The "**Xiaolingtong**" or "**Little Smart Phone,**" as PHS phones are known in China, "works within the boundaries of a single city, is an inexpensive handset similar to a mobile phone. It is based on the personal handy-phone system (PHS) that uses wireline instead of cellular technology, experts with UTStarcom, a leading [U.S.-based] personal access system supplier in China, explained." (China.org.cn, December 2000) The main reason behind the rapid development of Little Smart is simple, said Zhang Xinzhu, an economist with the China Academy of Social Sciences. **The charge standard for mobile telecom services is too high** . . . . (English People's Daily Online, 6/21/2002)

As Rebecca Buckman reported in the Wall Street Journal Online: "The service [has] exploded in China because of the country's huge base of poor and rural residents, most of whom have little use for high-end phones with Web browsing or international roaming." She also notes that the Little Smart has now also moved "into China's biggest cities, such as Beijing and Shanghai,

and attracted increasingly sophisticated users. The service also has become a major growth driver for huge Chinese phone companies whose stocks are listed, or about to be listed, on the New York Stock Exchange, including China Telecom Corp. and China Network Communications Group Corp. which is known as China Netcom. Analysts say the majority of China Netcom's new subscribers are Xiaolingtong customers. Plus, about 36% of customers of China Mobile Ltd., China's largest cellphone-service provider, also have Xiaolingtong phones, according to a recent BDA study." (Wall Street Journal Online, 7/8/2004)

She continues by stating that "**there are already an astounding 50 million subscribers to Xiaolingtong, including many in big cities like Beijing.**" (Wall Street Journal Online, 7/8/2004)

As Asia Online stated in an article titled: "**PHS Use in China Soars 15-Fold in 3 Years**"--dated 9/13/2004: "The number of PHS (personal handyphone system) users in China has **skyrocketed from 5 million in 2001 to 75 million estimated for 2004.**" Dottucomu.com stated on 5/24/2004 that "the [PHS] service is now available in 355 cities in 31 provinces."

As In-StatMDR 2004 Reports states: "China continues to be the world's fastest-growing telecommunications market, with **annual capital investment of 200 Billion RMB (about $24 Billion US dollars), and combined landline and wireless telephone subscribers in excess of 600 million.**"

### BUSINESS PLAN

GLNC is a high-tech enterprise primarily engaged in electrical power monitoring systems and information technology consumer electronics products, contract manufacturing products for Sony, Panasonic, Aiwa, Philips, and Daewoo. The largest product growth anticipated for the future is in PHS cell phone manufacturing and distribution. There are **11 approved PHS manufacturers in Shenzhen, China, GLNC being one of them.** GLNC is a viable competitor due to experience in the production of mobile phones and phone products as well as having established a market network throughout China.

With Global Information, Inc. reporting that "**the number of PHS users in China has exploded, with well over 2 million new PHS users being added each month,**" GLNC is well positioned to take advantage of this burgeoning market.

### CORPORATE SNAPSHOT

- China is the fastest-growing telecommunications market in the world with over 600 million phone users
- PHS cellphone market soars 15 fold in 3 years from 2001-2004 in China —with over 50 million subscribers already
- GLNC signs **$21 Million contract** for PHS phones in China

**We apologize if this fax was received in error. To be removed from our list call: 1-800-490-1871**

This report is for informational purposes only, and is neither a solicitation to buy nor an offer to sell securities. Investment in low-priced small and micro-cap stocks are considered extremely speculative and may result in the loss of some or all of any investment made in these companies. ATN Enterprises, LLC is not a registered investment advisor or a broker-dealer. Information, opinions and analysis contained herein are based on sources believed to be reliable, but no representation, expressed or implied, is made as to its accuracy, completeness or correctness. The opinions contained herein reflect our current judgment and are subject to change without notice. ATN Enterprises, LLC assumes no responsibility for updating the information contained herein regardless of any change in GLNC's financial or operating condition. As ATN Enterprises, LLC has received compensation for this report, and will benefit from any increase in share price of the advertised company, there is an inherent conflict of interest in our statements and opinions. ATN Enterprises, LLC accepts no liability for any losses arising from an investor's reliance on, or use of, this report. GLNC will require additional capital to realize its business plan and continue as a going concern. ATN Enterprises, LLC has been hired by a third-party consultant (Endeavor Growth Ventures) and is contracted to receive 1,000,000 free-trading shares of GLNC for the publication and dissemination of this issue #361. ATN Enterprises, LLC and its affiliates or officers may buy, hold or sell common shares, of mentioned companies, in the open market or in private transactions at any time without notice. Certain information included herein is forward-looking within the context of the Private Securities Litigation Reform Act of 1995, including, but not limited to, statements concerning manufacturing, marketing, growth, and expansion. The words "may," "would," "will," "expect," "estimate," "anticipate," "believe," "intend," and similar expressions and variations thereof are intended to identify forward-looking statements. Such forward-looking information involves important risks and uncertainties that could affect actual results and cause them to differ materially from expectations expressed herein.

5

# *2004*

# WALL ⬛⬛⬛⬛⬛ STREET

ISSN76-102011                                                      November 2004

## URGENT    NEWS    ALERT

# TKO and Cory Everson To launch T.V. campaign for New fitness trainer system!

| | |
|---|---|
| Symbol................................................. | TKHL |
| Penn. Trading Bounce................. | .40¢¢ |
| Float (est.)................................... | 5,000,000 |
| 52 Week High/Low............... | .90 - .10 |
| Target........................................ | .15 |
| Rating................................... | STRONG |
| To be removed: .... 1-888-441-5729 | |

Wall-street is ready to get into the ring with the next potential giant in the boxing and fitness apparel industry. *If you were lucky enough to read about PDEI, you could have made 400% on a trade in less than a month .50- 2.50 What a play!!*
THIS IS THE NEXT BIG WINNER

TKHL.PK is ready for the challenge and has a 1st round take down approach to making money for investors everywhere. GET IN NOW TO LOCK IN PROFITS.

The potential for TKHL.PK is HUGE, and if it trades where it has in the past it *could at least be a 500% gain in the short term.* A small investment of 1,000 dollars could yield *thousands more in a matter of days.*

The Company's parent corporation had revenues of nearly seventeen million dollars for calendar year 2003 and even though they lost some money, they are moving the company in the right direction.

The financial records of the Company are prepared by Deloitte Touche Tohmatsu ONE OF THE BEST AUDITORS! *The Company does maintain audited financial statements* and hopes to utilize its audited financial statements in the near future to become a fully reporting company with its stock quoted in the public market place on an internationally recognized securities exchange.

TKHL.PK, a manufacturer of sporting goods, has been

steadily expanding its product line and client base since 1996, seizing opportunities to build brand awareness in the growth-oriented boxing and fitness markets.

The purchase of Linex Company was the first in a series of transactions designed to increase share holder value. *Linex has projected 5 million in revenue for 2004* and is a great acquisition for TKHL.PK. It allows access to the multibillion dollar fitness market and could be a substantial play for all TKHL.PK shareholders The company has also set up their e- commerce portal and expects to start marketing and generating sales from it very soon. THIS COULD BE WORTH MILLIONS MORE $$$$$

With over 500 retail customers, TKO Holdings is looking to move up in the rankings. By utilizing their existing client base they can market new products with a minimum effort. If the company sticks to its press releases it should have improved financial results to post for all of us at the end of the year. Institutional and retail investors alike will be buzzing with TKHL.PK
Everyone wants to make the trade that will add some spice and big returns to their portfolio, TKHL.PK brings all of the ingredients of a winner with it, and is sure to make a great holiday trade for any savvy investor in the market. If you always wait to make the trade, you will never get the most for your money. Lock in your profits and get ready to rumble with TKHL.PK on your screen.

We brought it to you first!!!!!!

Wallstreet-2004, Publishes reports on select companies that W2004 believes have investment potential. W2004 is not a registered investment advisor or broker dealer. This report is provided as an information service only, and the statements and opinions in this report should not be construed as an offer to buy or sell any securities W2004 accepts no liability for any losses occurring from the use of this report you could lose all of your money. Pink sheet stocks are the riskiest investment, they do not have filings to report and information is hard to verify. W2004 is paid fifty thousand dollars for research and distribution of this report by DFLADV. W2004 will not buy or trade shares in the open market at any time during or around the time this report is published. WSTPR news no shares to date and will not buy any in the market. This report contains forward looking statements which involve risks and uncertainties to that may cause actual results to differ from those set forth in these statements. For further details concerning risks and uncertainties please contact your advisor TKHL.TK Copyright 2004

If you received this fax in error or wish to be removed please call toll Free: 1-888-441-5729

6

 # DEFEND YOUR RIGHT TO VOTE!

- Americans turned out in record numbers at the polls on election day.
- The republicans are claiming a COMMANDING victory.
- But many Americans are still outraged over the WAR IN IRAQ.
- With 4 more years...

# DID AMERICA MAKE THE RIGHT CHOICE ELECTING GEORGE W. BUSH?

 

**TO VOTE**, simply check your vote above and fax back to us.

## Fax To: 1-900-226-1444

Calls cost three dollars and ninety five cents per minute, a small price to pay for moral values.

### THE RESULTS OBTAINED FROM THIS POLL WILL BE SENT DIRECTLY TO OUR CONGRESSIONAL LEADERS.

Poll Commissioned by: Greatgain, Ltd.
450 High Road, Essex UK
For mailing list removal please call 800-490-9373

7



# Our Holiday Gift To You!

## Get Extra Money For The Holidays!

Refinance Now With
Rates As Low As 1.25%

- Pay off credit cards!
- Credit card lates OK!
- Mortgage lates OK!
- Challenged credit OK!
- Cash out to 100%!
- Credit score 475 and up OK!
- No income / No asset
- Get out of debt NOW!

"Rates are still as low as they have been in 40 years!!!
Refinance now, consolidate debts, and lower your
monthly payments"

Even if You Have Been Turned Down, Give Us A Call

866-314-8211

If you received this fax in error, please call 888-288-8069 to be removed.

# ENERGY TRADERS REPORT - *Investor Alert*

November 2004, Issue 18, vol 9

| | |
|---|---|
| Symbol Pink Sheet: | **EOGI** |
| Recent Price: | **$0.24** |
| Short Term Target: | **$1.55** |

**Price Trend: Upward**

## STRONG BUY

**- *BREAKING NEWS* -** EOGI signs letter of intent for 50% working interest in nearby oil and gas well.

### "Oil well turned Natural Gas well could flow millions of cubic feet of gas per day."

Emerson Oil and Gas is a company poised to capitalize on the current world market price of oil and gas. This booming market has created new opportunities to bring proven undeveloped reserves, on stream with very little downside risk to the company. Emerson's primary operating philosophy is to utilize the most current technology available to develop low risk, high yield, underdeveloped oil and gas reserves. This approach will enable Emerson to capitalize upon previously discovered and producing properties with known reserves that had not been completely exploited due to market conditions.

Emerson will continually look to get involved with low risk projects that maximize shareholder value. This will be accomplished by pursuing achievable pay zones and avoiding wildcat or exploratory type ventures. Emerson will participate in turn key operations minimizing the need for high cost equipment purchases and if necessary cost effectively outsource some aspects of labor. With the worldwide focus on energy needs being front and center in the public eye, Emerson feels that with it's first class management and discretionary project choices, the company will continue to serve it's shareholders well.

### *Energy – Bull Market of the Decade*

With energy prices continuing to soar, demand continuing to rise, and supplies continuing to decrease there has never been a better time to invest in energy stocks. As you may already know, and many analysts predict, the Energy sector is shaping up to be the bull market of the decade.

Emerson Oil & Gas holds a 50% working interest in the W.T. Davis Well and lands within Township 23 North and Range 13 West of Bossier Parish, Louisiana. The company strongly feels that there is enormous opportunity in producing the natural gas that is available in this deep well. **Neighboring wells are producing from a half million to 3 million cubic feet of gas per day.** The Company has now received recommendation from its operator that it should move into production on the well as a Natural Gas producer.

*"Operator recommends going into production on well"*

*"Neighboring wells are producing from a half million to 3 million cubic feet of gas per day."*

With earth's dwindling supply of fossil fuels and a rising global demand for energy, **investors are now looking at the bull market of a lifetime.** Already shares in the oil and gas sector are rising faster than the overall market. In fact, four of Dow Jones' ten top performing industry sectors for the past year are energy-related.

### "Natural Gas Seems Headed the Way of Oil: More Demand, Less Supply, Higher Cost"

*New York Times - Aug 20, 2004*

### "Report warns on soaring natural gas prices."

*Financial Times – July 2004*

Of course, the longer the bull market in energy continues, the harder it will be to find undervalued energy stocks. In fact, it may not be too long before finding a cheap oil or gas stock will be as

Energy Traders Report (ETR) publishes reports providing information on selected companies. ETR is not a registered investment advisor or broker-dealer. This report is provided as an information service only, and the statements and opinions in this report should not be construed as an offer or solicitation to buy or sell any security. ETR accepts no liability for any loss arising from an investor's reliance on or use of this report. An investment in EOGI is considered to be highly speculative and should not be considered unless a person can afford a complete loss of investment. BFL Enterprises has received $50,000.00 from a non-affiliated third party, for the publication and circulation of this report. This report contains forward-looking statements, which involve risks, and uncertainties that may cause actual results to differ materially from those set forth in the forward-looking statements. Copyright 2004 by ETR. All rights reserved.

**To be removed from our fax list database please call 1- 888-820-6354**

you HAVE REACHED THE

# High Tech Trader Alert

### December 1, 2004

Congratulations to everyone who invested in Home Health Solutions (NASDAQ: HSHL) . HSHL jumped 91% in ONE DAY.

**Are you ready for ANOTHER POTENTIAL WINNER?**

If our interpretation is accurate, Reeltime Rentals Inc (Ticker Symbol: RLTR) has the potential to move from $0.056 to $0.11, representing a handsome 89% increase.

(Some of our past recommendations have jumped by over 100%)

Read today's issue of `High Tech Alert' very carefully. Please don't miss out on another remarkable opportunity!

---

**Reeltime Rentals Inc • OTC: RLTR or RLTR.PK • Recent Price: $ 0.056 Target Price: $0.11**

---

## CEO of Reeltime Rentals, Alex Stanczyk, Interviewed by Wall Street.Net

SEATTLE, Nov. 29, 2004 (PRIMEZONE) -- Reeltime Rentals, Inc. (Other OTC: RLTR.PK - News) announces that Alex Stanczyk, Chief Executive Officer, was interviewed by WallSt.Net on November 17, 2004. WallSt.Net features interviews with CEOs and prominent business executives and serves as a forum for the financial community.

During the interview, Mr. Stanczyk discussed a variety of topics ranging from Reeltime Rentals' vision for the future of video rentals, market share potential, management background, projected milestones, and the Company's breakthrough IRDS technology.

Some analysts predict that there will be up to 29 million video-on-demand users by year-end 2005. ReelTime is focused on becoming a significant contributor in this space. Mr. Stanczyk discusses many aspects of ReelTime's potential in this market as well as estimated product launch schedules.

## ReelTime to Deploy Linux Operating Systems on its IRDS Servers

### The Company Expects to Realize Tremendous Cost Savings in its Server Infrastructure

SEATTLE--(BUSINESS WIRE)--Nov. 10, 2004--Reeltime Rentals, Inc. (OTC: RLTR - News) has announced that it will utilize a custom version of the Linux Operating System on its IRDS servers to deliver video rentals to its customers. Linux servers will be used to support ReelTime's proprietary Intelligent Rapid Delivery Systems (IRDS) during Phase III of ReelTime's Beta Test.

An investment in RLTR is a high risk investment with the potential for high rewards.

### Do Not Miss this Trade!!

## European Beta Test Produces Encouraging Results

SEATTLE, Nov. 15, 2004 (PRIMEZONE) -- Reeltime Rentals, Inc. (Other OTC: RLTR.PK - News) announced that it has successfully delivered a series of DVD-quality video streams to a control group of Beta Testers in Europe. The overseas beta test correlates with the Company's initiative to explore business opportunities in the European marketplace for their Rental-on-Demand Client. Thus far, the Company's ``Next Generation" ROD technology has been well received by its beta testers.

"ReelTime has ventured into the next generation of movie rentals and I am looking forward to its international launch. The video and audio quality, coupled with the lack of any lag experience while receiving the movie, was impressive. By setting their transmission and quality standards so high, they have practically eliminated the need to drive to a movie rental store. I believe that the best products are spread by word of mouth and you can guarantee that I will tell all my family and friends about this experience," remarked Marcus Massengale, a beta tester from Cambridge, England.

6 Reasons to own this stock:

1. High Quality Product.
2. Huge present and future demand.
3. Vision of Alex Stanczyk, CEO.
4. Proprietary IRDS servers.
5. Upward Potential in Stock Value.
6. The stock is only about $0.06 per share

RLTR is still trading over-the-counter. This means that the traditional investment community doesn't follow it, and most major brokerage firms and institutional investors can't yet invest in it. This is GREAT NEWS for our readers, because They can invest in RLTR before mainstream investors.

For more information go to: www.ReelTimeTV.NET

This report contains forward-looking statements, which involve risks, and uncertainties that may cause actual results to differ materially from those set forth in the forward-looking statements. High Tech Trader Alert publishes reports providing information on selected companies. High Tech Trader Alert is not a registered investment advisor or broker-dealer. This report is provided as an information service only, and the statements and opinions in this report should not be construed as an offer or solicitation to buy or sell any security. High Tech Trader Alert accepts no liability for any loss arising from an investor's reliance on or use of this report. An investment in HSHL is considered to be highly speculative and should not be considered unless a person can afford a complete loss of investment. High Tech Trader Alert has received $6,000 cash from a non-affiliated third party, for the publication and circulation of this report. Copyright 2004 by High Tech Trader Alert. All rights reserved.

If you received this fax in error and would like to have your number removed from our database call Toll Free: 1-888-485-1452

# ACTIVE TRADING ALERT

*10*

## CEO/PRESIDENT BUYS MORE THAN 1,100,000 SHARES OF COMPANY STOCK AND ACTUALLY CONTINUES TO BUY MORE!!!!!

### COMPANY SHOWS MORE THAN 700% GROWTH IN REVENUE

**Sales on EBay.COM and AMAZON.COM Explode – EXPANSION TO EUROPE BEGINS**

## SoftNet Technology Corp Trading Symbol (OTCBB: STTC)

| Symbol | OTCBB: STTC |
|---|---|
| Shares Out (est.) | 110,000,000 |
| Float (est.) | 70,000,000 |
| Recent Price | $0.18 |
| Year Low/Hi | $0.02 - $.18 |

### Opportunity Assessment:

1. *Growth Rates of more than 700%!*
2. *STTC sells with Amazon.com and EBay.com!*
3. **Expansion to 100,000 or more products to be added!**
4. *CEO Buys more than 1,100,000 shares of STTC and continues to purchase even more shares!*
4. **Company just increased 2005 revenue projections 100%!!!!!!**

### About SoftNet Technology Corp

SoftNet Technology Corp **(Trading symbol: STTC) (German WKN#: A0B7RZ)** is a software and technology company with three operating subsidiaries: Solutions Technology, Wholesalebyus, LLC and a German Subsidiary Called SoftNet International GmbH. Each operating division has many exciting things occurring, but we focus our discussion on the one that is just exploding sales and growing exponentially.

WholesaleByUs, LLC - management believes their process cuts through the shopping search clutter to bring, in many cases, the lowest Internet-based retail prices.

With a rule-driven, web-based, application server based software system

♦ WholesaleByUs connects manufacturers and distributes to Internet buyers
♦ Effectively eliminates many dealers and other distributors.

If you have received this fax in error please call 800-490-1092

Product descriptions and prices are mass uploaded by WholesaleByUs to:

♦ EBay as a 'buy it now' item and
♦ Amazon

The Wholesalebyus model is now in the process of being implemented in Europe. This expansion should ensure that sales continue to quickly expand into and through 2005. In fact, growth rates are even expected to accelerate for the foreseeable future.

### *Investment Considerations:*

#### 1. Fundamental Analysis

-Sales growth has begun to explode and is accelerating at a quickened pace. This growth is expected to continue as new products and Internet portals are added in the U.S.A.

-Expansion to Europe is imminent – should lead to explosive growth into and through 2005 and 2006.

-Expansion to Canada is also expected very shortly also leading to a further explosion in sales.

-Expansion from 10,000 products offered to 20,000 products just recently is expected to further expand sales at even quicker rates.

-Management shows a great belief in Company by purchasing more than 1,100,000 shares in the open market.

The Private Securities Litigation Reform Act of 1995 provides a safe harbor for forward-looking statements made on behalf of the company. All such forward-looking statements are, by necessity, only estimates of future results and actual results achieved by SoftNet Technology Corp (STTC) may differ materially from these statement due to a number of factors. STTC assumes no obligations to update these forward-looking statements to reflect actual results, changes in assumptions or changes in other factors affecting such statements. You should independently investigate and fully understand all risks before making investment decisions.

you print

# OTC Info Wire
## Your Insight to the OTC

Strategy International Insurance Group, Inc.
Symbol OTCBB:    SGYI
Industry    Insurance

December 1, 2004    Issue #1130

//

## SGYI: Strategy International Insurance Group, Inc.

| | |
|---|---|
| Shares Outstanding: | 63,147,503 |
| Float (Estimate): | 15,470,000 |
| Current Price: | $1.67 |

# $140 MILLION IN ASSETS

## EMERGING INSURANCE CO. TAPPING INTO THE MULTI- BILLION DOLLAR NICHE INSURANCE MARKET

Simply put, SGYI is an emerging insurance company positioned to react to niche insurance underwriting opportunities that are in very high demand and yet are currently under-served by the financial services industry. With companies like XL Capital, Ltd (NYSE: XL) trading at $74 per share and Max Re Capital (NasdNM: MXRE) trading around $18, the demand is obvious. With several contracts already secured and many pending, SGYI is poised to capitalize in this underserved arena with projections of $.20 at $.35 per share by the end of their fiscal year.

### WHAT IS REINSURANCE

In simple terms, reinsurance has been defined as insurance for insurance companies provided in the form of a contract of indemnity rather than a liability contract. An insurance company pays a loss, and seeks reimbursement from its re-insurer. SGYI focuses on niche markets for insurance instead of traditional products that suffer from market saturation such as life, health, and auto. SGYI specializes in the virtually untapped but truly essential areas such as the following:

**Time Share Market** – Time Share Cost Protection Coverage is designed for the $44.4 Billion time share industry and could generate up to $19 million in premiums for SGYI in 2005.

**Rental Guarantee Insurance** – SGYI is taking the lead in introducing Rental Guarantee Insurance in the North American Market that has a total premium potential of $10.5 billion.

**Senior Life Settlements** – SGYI expects to generate $10 million in premiums from its Senior Life Settlements products with expectations of the market reaching $50 billion in ten years.

**Residual Value Insurance** – SGYI management expects to write $9 million in this niche business by year end 2004. These products are extremely attractive with no payouts for 10 years. Frequency of claims typically plunges 50% and most covered assets appreciate.

**Film Completion Bonds** – While only a small portion of SGYI's premium mix, this sector offers minimal downside while yielding equity stake in the films that they underwrite.

### CORPORATE SUMMARY

Strategy International Insurance Group, Inc. (OTCBB: SGYI) is a Texas corporation headquartered in Bridgetown, Barbados. SGYI is a rapidly growing provider of specialty lines of insurance, reinsurance, and structured risk solutions focusing on lines of business that are often unusual or difficult to place and do not fit the criteria of standard commercial product providers.

### CORPORATE STRATEGY

SGYI's team of industry experts work independently and in partnership with retail and wholesale insurance brokers to identify opportunities in areas that are under-serviced. They then team up to identify appropriate opportunities that meet their healthy corporate rate of return requirements. SGYI has developed relationships with 15 intermediaries principally located in Canada, the U.S., and the U.K including notable companies such as AON; Marsh & McLennan; Tysers & Co.; and Dashwood, Brewer, and Phipps.

### INVESTMENT ADVANTAGES

- In the first 12 months of operation, SGYI management expects to go from a standing start to realizing $71 million in gross premium revenues.

- SGYI expects operating costs to be no more than 10% of gross revenue.

- SGYI is eligible for listing on a major exchange.

- SGYI projects that written time share protection premiums alone will increase in 2005 to well over $50 million.

- SGYI has already secured a deal with Value Guaranteed Vacations, Inc. that should produce over $50 million in written premiums and represents at least $200 million of timeshare ownership value.

- SGYI's lines of coverage are customized and not subject to a rigorous competitive bid process.

- SGYI currently has a balance sheet of more than $140 million of net capital which gives the company the wherewithal to write insurance that would result in over $275 million in premium income.

This report is for information purposes only, and is neither a solicitation to buy nor an offer to sell securities. OTC Info Wire is a registered investment advisor. OTC Info Wire is not a broker-dealer. Information, opinions and analysis contained herein are based on sources believed to be reliable, but no representation, expressed or implied, is made as to its accuracy, completeness or correctness. The opinions contained herein reflect our current judgment and are subject to change without notice. OTC Info Wire accepts no liability for any losses arising from an investor's reliance on the use of this report. OTC Info Wire has been hired a third party consultant, and is contracted to receive $85,000.00 (50,000 shares of SGYI) for the publication and circulation of this report #1130. OTC Info Wire and its affiliates or officers may buy, hold, or sell shares of common stock of SGYI, in the open market without notice. Certain information included herein is forward-looking within the context of the Private Securities Litigation Reform Act of 1995, including, but not limited to, statements concerning manufacturing, marketing, growth, and expansion. The words "may", "would," "will," "expect," "estimate," "anticipate," "believe," "intend," " project," and similar expressions and variations thereof are intended to identify forward-looking statements. Such forward-looking information involves important risks and uncertainties that could affect actual results and cause them to differ materially from expectations expressed herein. *OTC Info Wire does not set price targets on securities.

TO HAVE YOUR NUMBER REMOVED FROM OUR DATABASE, PLEASE CALL OUR TOLL FREE SERVICE AT 888-251-8846

You HAVE --.

# DAYTRADER'S ALERT!

*Alerting you to companies that could be some of the Street's best kept secrets, but that may not remain that way for long!*

12

**Southwestern Medical Solutions**         **OTC: SWNM**         **Current Price: $0.16**

---

**December 2, 2004**
Stock Symbol: SWNM    Current Price: $0.16
52 week High: $0.51    52 week Low: $0.05

## Corporate Snapshot

**Investors! There is a little known technology-led company that has been flying under the radar of mainstream Wall Street!** It is targeting the multi-billion dollar medical devices industry with a system that could possibly revolutionize diagnostic testing and specimen collection!

**Southwestern Medical Solutions Inc. (OTC: SWNM)** is a development stage company who had previously acquired the worldwide exclusive rights to Labguard Accucheck™. This on-site collection & diagnostic testing system represents an innovative approach that is expected to provide greater safety and convenience for diagnostic testing administrators at an attractive, market-competitive price. According to an 11/22/04 press release, Labguard Accucheck™ has already attracted expressions of strong interest from several major medical-device distribution companies, both in the U.S. and abroad – **And it is currently in the final prototype stage.**

**Its initial mission:** Threatening to jeopardize the safety of co-workers and customers, SWNM is committed to helping organizations around the world establish effective Drug-Free environments, and opening the doors to <u>the explosive market for on-site testing of employees, job applicants, military personnel, public service workers, prison inmates and parolees, students & athletes.</u> **But be aware-** Based on the current system, numerous applications, such as non-invasive HIV Test Kit, are currently in the design, prototype and/or testing stages.

*As the markets are undergoing extreme fluctuations and turbulence, timing is everything! Some investors are realizing that gains of 100%+ (not likely with well known stocks) are possible with OTC stocks. This stock could be one of the street's best kept secrets, but may not remain that way for long! Our alerts present what may be new opportunities to get in while trading levels are still low and before mainstream investors start paying attention!*

## Investment Highlights

- **Latest News:** SWNM reported that it has entered into an agreement whereby it has been granted the right to earn up to a 35% interest in Glacier Medical LLC, and certain exclusive marketing rights concerning that company's Protect-A-Pal needle safety device, a solution to the universal problem of needle-stick injuries among healthcare workers.

- SWNM announced that it has begun the R&D regarding an economical and accurate HIV urinalysis test kit for safe, rapid on-site testing. **This could be huge!** Consider these chilling facts: <u>The Centers for Disease Control and Prevention (CDC) estimate that 850,000 to 950,000 U.S. residents are living with HIV infection, one-quarter of who are unaware of their infection.</u> **Approximately 40,000 new HIV infections occur each year in the United States!**

- <u>This system could mean solutions for the healthcare industry!</u> **Here are the technical details:** Simultaneous detection of multiple drugs in under 5 minutes; Integrated collection and testing device for every sample; Sterile sample and reagent/fluid-free handling; Room temperature storage; Clear positive/negative results; Non-Leak-Spill-proof container.

- **The demand is huge!** An estimated 14.8 million Americans are currently use drugs. Not considering the 11% of those who are between the age of 12 and 17, there is an estimated 12.3 million adult current illicit drug users. **9.4 million or 77% of them work, making the vast majority of drug users in the U.S. employees.**

- SWNM's Labgaurd Accucheck™ is currently in the **FINAL prototype stage!** Investors, <u>FINAL should mean do your research, find out as much as you can about this company, and be on the look out for future developments!</u> Remember, with OTC Stocks, all it takes is that one piece of great news!

---

### To be removed from this fax list, call (888) 561-0838

Always consult a professional investment advisor and remember that OTC stocks like SWNM are considered extremely risky, and you could lose your entire investment! This is NOT professional investment advice; this is a paid advertisement! It is not an offer to sell, or a solicitation to buy any security. It is for informational purposes only, and created without regard to any investors' individual needs, or the financial condition or stability of the company it is written about. This advertisement has not been seen or approved by anyone at the company that it is written about and therefore the company does not endorse the content or distribution of the advertisement. Do your own research! Uniway International Trading Ltd (UIT) was paid, thirty eight thousand dollars by a third party who is not affiliated with SWNM and who was paid fifty four thousand dollars for this report on Southwestern Medical Solutions Inc. (OTC: SWNM). Any companies mentioned in this report may, or may not, be experiencing liquidity issues and may require additional capital to continue operations.

*[handwritten:] ARACHES
YOU HAVE ARECTOSO THE PAY RENUAL NUMER
IF YOU NO COUGSA VISIT*

# *Breaking News Investor's Alert*

*13*

## Introducing Consumer's Choice Financial Services, Inc.
### *Potential Profits to Rival Those in the Lucrative Sub Prime Lending Market; Initial Investors Could Experience Exponential ROI!*

Company Name: Consumers Choice Financial Services, Inc. * Stock Symbol: RWRD.OB * Recent Quote: 0.12

### CONSUMERS CHOICE FINANCIAL SERVICES, INC.

Wall Street has become a believer in the profit potential available from well-managed debt buying companies since the successful November 2002 IPO from Portfolio Recovery Associates of Norfolk, VA.

Consumers Choice, a start-up subsidiary of Reward Enterprises, Inc., will target sub-prime consumers using a proprietary system for target marketing a highly select section of the sub prime market.

*The company has developed a business plan that combines two of the fastest growth industries in today's marketplace -- debt buying and sub-prime consumer financial services/credit card services -- Consumer's Choice is positioned for rapid growth and profitability.*

### MARKET OVERVIEW

Sub-prime credit card lending has seen fast track special services banks grow from start-up to over five hundred million in assets in less than seven years.

Consumer's Choice will begin marketing auto and mortgage lending programs in December 2004 and plans to offer a full range of services by the end of February 2005.

The company has an aggressive growth plan that includes a bank charter for issuing credit and debit cards to targeted sub-prime consumers.

Consumer's Choice plans to apply for a South Dakota bank charter by end of first quarter 2005.

Competing entities in the market, even the most recent, show huge gains and profits from credit cards alone:

| Issuer | Receivables | # of cards |
|---|---|---|
| Capital One | $45,298,000,000 | 48,800,000 |
| HSBC/Household | $18,800,000,000 | 31,800,000 |
| Providian Financial | $16,680,000,000 | 9,900,000 |
| Cross Country Bank | $ 1,500,000,000 | 1,800,000 |
| First Premier | $ 642,688,181 | 2,885,601 |
| Firstmerit Corp | $ 142,179,734 | 139,155 |

### BUSINESS STRATEGY

Consumer's Choice intends to do much more than offer credit cards. Targeted consumers will have the opportunity to acquire a full range of financial services at rates not currently available to them.

The key to success for Consumer's Choice centers on proprietary hybrid system of underwriting, one that blends the current scoring system with human underwriting.

Thus, select consumers will be able to refinance debts and acquire new loans at far better rates.

### PROJECTED REVENUES

Although it is common knowledge that consumers have little loyalty to financial institutions, Consumer's Choice intends to carefully cross market products and services at rates so attractive that their customers will see no reason to take their business elsewhere. The company intends to use the motto – Your Lender for Life.

Investors could see solid profit margins from the rapid rollover of consumers into the Consumer's Choice product and service offerings. Sales are projected to rise to 35,000,000 by end of FY 2007.

### OPPORTUNITY ASSESSMENT

Consumers Choice plans to rapidly increase its profitability by combine the elements of a successful debt - buying operation with those of a sub-prime consumer lender. The company has an aggressive growth plan that includes a bank charter for issuing credit cards to targeted sub-prime consumers.

The company's mission is to provide aggressive lending programs for targeted sub-prime consumers. Consumer's Choice intends to pursue targeted debt buying from individuals who have the earning power to settle debts in addition to the ability to take on new loans for autos, mortgages, credit cards and installment insurance products.

Consumer's Choice will differentiate and prosper from its proprietary systems for target marketing consumers and offering of attractive lending rates and a range of financial products. Initial investors are likely to see strong, solid profits and exponential return on investment.

**For a recent quote, go to:
http://finance.yahoo.com/q?s=RWRD.OB**

IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE DIAL: 1-888-382-6019

Per Section 17(b) of the Securities Act of 1933: Wolverine Investment (hereafter referred to as WI), a marketing company, was compensated three hundred and seventy-five thousand free trading shares by a non-affiliated, third party. The shares may be sold at the time this adv is being distributed. The ad is for marketing purposes only & does not have regard to investment objective, financial situation or suitability. This report is based on RWRD's web site and press releases. WI does not verify the accuracy of such releases. This advice is not the opinion of RWRD management, which has not seen, and does not endorse this advice! Consult a professional investment advisor prior to making any investment decision and to independently verify the information in this advice. An investment in RWRD is considered to be highly speculative & could result in a complete loss of investment. WI is not an investment advisor or broker-dealer. WI accepts no liability for any loss arising from an investor's reliance on or use of this advice. This advice is not intended to be, & shall not constitute, an offer to sell or solicitation of any offer to buy any security. Certain statements contained herein are "forward-looking" statements & investors are cautioned that any such forward-looking statements could involve risks & uncertainties, or may never materialize. RWRD will require additional capital to realize its business plan & continue as a going concern. Consult with your financial advisor about RWRD for further details concerning these risks & uncertainties.

# INSTANT ON-LINE ALERT

November 2004    14

"Time sensitive investment information for the serious investor"

| | |
|---|---|
| **Symbol: AIMT** | · |
| **Previous Open** | $2.00 |
| **60 day projection** | $6-8.00 |
| **12 Mo. Projection** | $12-15.00 |
| **CALL YOUR BROKER TODAY.** | |
| **THIS STOCK IS GOING HIGHER!** | |

**Aimsi Technologies, Inc.**
**(OTC: AIMT)**
*"A Homeland Security Sector Growth Company"*

## TIMING AND MOMENTUM
### AIMT UP OVER 80% LAST WEEK ALONE, POISED FOR MORE GROWTH!

**No "Pump and Dump" here. AIMSI Technologies Inc. (OTCBB: AIMT) is a solid company with an exciting future.**

- In business over 10 years, profitable each year.

- Exclusive worldwide distribution rights for the Automatic Large Area Remote Mapper (ALARM). A cutting edge technology patented by the University of Alabama at Huntsville, that can detect radioactive "dirty bombs", chemical and biological threats.

- Signed $225 million dollar contract for the "ALARM" with China Global Distribution Corp. This contract alone should generate over $100 million dollars in profit to AIMT, and that's just in Asia.

- The U.S. Department of Homeland Security has a $44 billion dollar budget, and AIMT is well positioned to tap into this budget with contracts that may dwarf the Asian contract. (see press release)

- ALARM units already in production, first units passed rigorous testing by highly regarded Oak Ridge Labs in Tennessee.

**This stock will not go unnoticed long. We predict this stock will soar to the $6.00 - $8.00 dollar/share range by the end of this year!!!**

- **Timing is perfect**
- **The Homeland Security sector is hot.**
- **Company fundamentals are sound, with strong leadership.**
- **Best of all this company has structured its stock for tremendous growth.**

## LATEST NEWS IS BEST OF ALL!

**Savvy investors say this latest press release is "*stronger than a garlic milkshake*".**

Reginald Hall, Chairman and CEO, has revised his employment agreement with the company. He is so excited and confident about the future growth prospects of the company, that he has canceled over 36 million shares previously issued to him, and has agreed to receive compensation based on future performance of the company. This action by the CEO leaves no doubt that he believes AIMT is headed for great success.

Since this represents more than half of the issued and outstanding shares of stock in the company, it won't take the market long to realize that the price per share should double in value.

That's good news...but it gets better!

At the same time Mr. Hall cancelled his stock, the company approved a 5 for 1 forward stock split. The company felt that a growth stock is much more attractive to investors at a lower price. *(Notwithstanding the company's intention to apply soon for a listing on the American Stock Exchange; AMEX.)* Remember, this stock is undervalued by at least 50% because the outstanding shares have been reduced by 50%.

**GO ONLINE OR CALL YOUR BROKER TODAY!**

Disclaimer: GEC provides information on select companies that GEC believes have investment potential. GEC is not a registered advisor or broker-dealer. This report is provided for information service only, and the statements and opinions in this report should not be construed as an offer or solicitation to buy or sell any security. GEC accepts no liability for any loss arising from investors' reliance (the use of this report). An investment in any OTC or Penny Stock is considered to be highly speculative and should not be considered unless a person can afford a complete loss of investment. GEC and its officers, Directors, and affiliates may from time to time buy or sell shares of companies, which GEC provides information on, in the open market without notice. This report contains past performance information which does not necessarily indicate, predict or guarantee future performance, as well as containing forward looking statements which involve, risk, and uncertainties that may cause actual results to differ materially from those set forth in the forward looking statements. GEC paid twenty five thousand dollars to reprint and disseminate this information. Do your own due diligence. To remove your number from our database; call 888-818-2145.

*15*

# Early Bird



| | |
|---|---|
| Symbol: | PLBI.OB |
| Rating: | 10 out of 10 |
| Current Price: | $0.10 |

*Featuring Only the Stocks That Can Enhance and Diversify Your Portfolio*

Stock Symbol: **PLBI.OB**
Rating: 10 out of 10
Current Price: $0.10

For more information visit:

**www.Protonlabs.com**

## The Strong Buy is Always The Right Stock at the Right Time
Intensely electrolyzed acidic water has been shown to be an excellent antibacterial, antifungal, antiviral and sporicide agent *and Proton Labs has the inside track!*

**Dear Investors:**

The last few months have been very exciting for stock pickers. The search is on for the companies with consistent profitability, good niche markets and the knowledge and desire to succeed. Alliance Associates has been focusing on these factors. After looking at thousands of public companies, we want to tell you about a company that we think has explosive potential!

Proton Laboratories, Inc (PLBI), the sole distributor of Micro-Structured/ Functional Electrolyzed Water units, is soon to be a household word, thanks to a national publicity campaign seeking regional and national distributors of Proton Lab's product lines manufactured by Panasonic's parent company, Kyushu Matsushita Electric.

Functional electrolyzed water is electrically charged, which changes the molecules in the water, creating water with high pH properties or high acidic properties. Studies have shown that water with high pH properties has health benefits when consumed or applied to skin. Studies have also shown that water with high acidic properties kills many bacteria, molds and yeasts on contact. Proton Labs has the inside track on this great technology and you can benefit by adding PLBI to your portfolio!

**About The Company**

Proton Laboratories is a leading distributor of equipment used in the processing of Micro-Structured/Functional Electrolyzed Water and is a leader in the development of commercial and domestic uses of Micro-Structured/Functional Electrolyzed Water. Markets include food processing, mining, the agricultural and livestock industry, as well as the medical and skin care industries.

The market for this process is untapped as it is just now becoming accepted in the United States. Market applications are currently being tested and recognized in food processing, mining, agriculture, the livestock industry, the medical, and skin care industries. There is also an expanding health conscious domestic market due to skyrocketing health care costs, with related spending expected to exceed $2.8 trillion by 2011 – some $9,285 per person in the United States or 17% of GDP annually. Proton Labs is a leading distributor of the affordable countertop home use unit also manufactured by Panasonic. PLBI has a proven business model with proven and developing technology. Functional electrolyzed water has been studied and used in Japan for the past 36 years.

**Reasons to buy this stock**

1. Americans are well aware of the need for better water
2. New products are coming to market thru Proton that are unique, such as a universal and portable residential electrical unit
3. Proton sales and earnings about to dramatically improve
4. shareholders can be distributors and users of these products and be involved in the ongoing success of the company as owners
5. Stock is ridiculously under-valued and poised for a move up

**Final Word**

PLBI has all the elements of an attractive investment opportunity. As the company develops and brings numerous applications on-line PLBI's revenue will be greatly enhanced. PBLI's management and scientific team is very impressive. PLBI has also developed strategic and working relationships with key scientific, academic, industrial, governmental and trade organization both domestically and internationally. There are good reasons to think that PBLI's stock will go sky high in the near future!

Neither the information nor any opinion expressed herein constitutes an offer, or an invitation to make an offer, to buy or sell any securities or any options, futures or other derivatives, related to such securities. Alliance Associates was compensated seventy five hundred dollars for this opinion by a third party. Alliance Associates Inc. and its affiliates may trade for their own accounts in any securities of the issue (or issues) or in related investments. Alliance Associates Inc. does not accept liability for any loss resulting from an investor's use of, or reliance, on this report. Alliance Associates, Inc. has obtained information from sources that considered reliable but it is not guaranteed that this report is accurate or complete. Considerable reliance has been placed on information the company has released to the public domain or provided. However, no representation or warranty is made as to the accuracy, reliability, or timeliness of the content. This report contains forward-looking statements, which involve risks and uncertainties, which could cause actual results to differ from those implied by these statements. It is intended that all forward-looking statements be covered by the "safe harbor" provisions of section 21E of the Securities Exchange Act of 1934. Past performance is not necessarily a guide to future results. The opinions expressed are of this date and Alliance Associates, Inc. assumes no obligation to update, modify, or amend this report.

To be removed from our distribution list, please call toll free: 866-296-9207

16

# Momentum Trader

© 2004 Momentum Trader LLC All rights reserved

December 3, 2004

\* \* \* \* \*

# Data Evolution Holdings, Inc.  DTEV

For the subscribers
who have been with us
for 7+ years.

## AWARD WINNING HARDWARE/SOFTWARE PROVIDER +
## BRIDGES THE GAP BETWEEN THE NOTEBOOK & PDA
### RUNS MICROSOFT'S WINDOWS® CE SYSTEM
#### DEVELOPED FOR LUCRATIVE NICHE MARKETS:
## EDUCATION, GOVERNMENT & HEALTHCARE

Data Evolution Corporation, a wholly owned subsidiary of Data Evolution Holdings, Inc. (OTC.PK: DTEV), develops cutting edge, proprietary software _and_ manufactures state-of-the-art hardware for mobile data capture solutions. The company's industry leading products & services are grouped under the trade name mCapture:PowerSys™, specifically designed to help _organizations capture and manipulate data efficiently and accurately_. DEC's hardware products consist of the award-winning, convertible handheld personal computer, Clio® and the traditional notebook-style, Cathena™ _(Windows CE computer)_, which were _specifically designed and targeted to the education, healthcare and government services markets_.

Data Evolution Corp., is steadily capturing and targeting lucrative and stable niche markets which include healthcare, education, data capture, and sales automation. Highlights of their R&D and business development strategy include award-winning products Clio® and the Cathena™ (runs Microsoft® CE platform) AND partnership with LocatePLUS which promises to expand their market horizons.

**Data Evolution Holdings, Inc:    Pink: DTEV**

| | |
|---|---|
| Last Trade: | $6.60 |
| Previous Close: | $3.50 |
| Float | 456,000 |
| Target – 6 mo. | $22.00 |

**DTEV** – Data Evolution Holdings, Inc., is a progressive and innovative organization that is keenly in tune with the drivers of the rapidly growing mobile data capture market. The company's front end software solutions are strategically designed to add value and help organizations capture, manipulate and delivery data efficiently and accurately.

Among DTEV's hardware offerings is the award-winning, convertible handheld personal computer, Clio® and the Cathena™ (traditional notebook-style, Windows® CE computer), developed specifically for the vast opportunities with the education and government services markets.

### Changing the playing field of mobile computing.

o  Clio® - The Clio is a convertible tablet computer featuring the award-winning, patented SwingTop® pivoting arm and a 9.4" screen with 180º screen rotation.

o  The Clio runs Microsoft®'s Windows® CE operating system AND can be used in notebook, tablet, or presentation mode with keyboard, touch screen, or handwriting input.

o  The new Clio NXT continues to utilize the award-winning SwingTop® design and a near full-sized keyboard _BUT_, it also offers built-in 802.11 wireless, larger screen, a blazing 400MHz Intel XScale processor, industry standard USB connectivity, multiple memory slots, MP3 player, and audio in/out ports.

• The NXT runs Microsoft's® Windows® CE.NET™ 4.2 Professional operating system.

### A winning combination you'll want to get to know... DTEV
### Products, Partnerships and Distribution!

#### COMPANY HIGHLIGHTS:

o  Data Evolution Holdings, Inc., and LocatePLUS Holdings Corp., announced their respective wholly-owned subsidiaries, Data Evolution Corporation and LocatePLUS, Inc., have entered into a Sales, Service and Alliance Agreement.

•  The goal of this partnership is to create innovative mobile data capture and information delivery solutions that assist police and military forces to do a more efficient and effective job of protecting the nation.

o  Data Evolution Corp introduced a _Windows_® CE powered mobile computer aimed at the education and government services marketplaces. The Cathena, which runs "Microsoft's latest Windows CE.NET operating system," has the look and feel of a traditional ultra light notebook computer, while offering all the features and benefits of a high-performance Windows® CE product.

Momentum Trader publishes reports providing information on selected companies. Momentum Trader is not a registered investment advisor or broker-dealer. This report is provided as an information service only and the statements and opinions in this report should not be construed as an offer or solicitation to buy or sell any security. M T accepts no liability for any loss arising from an investor's reliance on or use of this report. An investment in DTEV is considered to be highly speculative and should not be considered unless a person can afford a complete loss of investment. Momentum Trader has received $4000 cash from a non-affiliated third party for the publication and circulation of this report. This report contains forward-looking statements, which involve risks and uncertainties that may cause actual results to differ materially from those set forth in the forward-looking statements. Copyright 1997 by Momentum Trader.All rights reserved. To be removed from the Momentum Trader Advance Notice Group (ANG) please call  1-888-820-6266

1



# NEWS RELEASE

**Strong Buy**

# SENTICORE ACQUIRES CONTROLLING INTEREST OF POKERBOOK GAMING CORP

*17*

**HOLLYWOOD , Fla. , December 6, 2004** -- Senticore, Inc. (OTC Bulletin Board: SNIO), a diversified public holding company with an emphasis in real estate, timber, sports entertainment, and gaming, announced today that it has executed the Definitive Stock Purchase Agreement and closed the transaction to acquire a controlling interest in Pokerbook Gaming Corporation (Pink Sheets: POKG) of Orlando, Fla.....

**STOCK ON THE MOVE – BREAKING NEWS:** The above story was just released after the close yesterday evening!

The search continues for companies with consistent growth, well thought out business plans, good niche markets, a quality management team, and the energy to make it succeed.   After analyzing and evaluating thousands of public companies, we want to tell you about a company that we believe meets the above criteria and possesses explosive potential!

**Senticore, Inc (SNIO)**, has been gaining a lot of interest on Wall Street during recent weeks. Average daily volume is up, price has been appreciating from a strong support base, and new investors have been getting involved as the stock is beginning to hit their radar screens. The company has demonstrated an aggressive acquisition strategy amassing over $50 million in assets during the past 12 months.

Check out the CEO's "Status of the Company" addressed to investors at **www.senticore.com/investorrelations/.**

Senticore has a strong concentration in two key industries: timber and gaming.   Today, lumber futures are soaring; supply is very low and demand continues to surge worldwide.   SNIO is very well positioned owning 60,000 acres of prime timber plantations in Costa Rica and 22,000 acres in Venezuela.

In recent weeks, Senticore has also begun to develop a presence in the gaming industry through the acquisition of a gaming license, a JV deal with SkillJam, and it's most recent acquisition of Pokerbook (POKG). The online gaming industry is growing at triple digit rates each year and yet experts believe that the global market is still virtually untapped.   SNIO's initial focus will be on the European, Asian, and South American markets where they hope to make Pokerbook a household name.

**Senticore, Inc.**
**[OTC Bulletin Board: SNIO]**
| | |
|---|---|
| Shares Outstanding: | 117 Million |
| Public Float: | 12.5 Million |
| Current Price: | $.12 |
| Rating: | 10 out of 10 |



## Reasons to Consider SNIO for Your Portfolio

- SNIO is extremely under-valued and poised for a sharp move up!

- The company intends to make application to a more senior exchange (AMEX or NASDAQ Small Cap) in early 2005.

- SNIO has amassed over $50 million in assets during the past year and aims to add $75 million in assets during 2005.

- Senticore possesses over $2.4 million in timber contracts in the pipeline and enjoys operating margins of nearly 50%.

- The company was awarded a broad gaming license from Venezuela to operate a land/Internet based casino, and has now entered the fast growing gaming industry.

- Taking advantage of the Poker craze, their "World Poker Charity Tour" is scheduled to launch during the first quarter of 2005.

- SNIO - Cream of the Crop on the OTC BB.

Neither the information nor any opinion expressed herein constitutes an offer, or an invitation to make an offer, to buy or sell any securities or any options, futures or other derivatives, related to such securities. We may trade for our own accounts in any securities of the issue (or issues) or in related investments. We do not accept liability for any loss resulting from an investor's use of, or reliance, on this report. Information has been obtained from sources that are considered reliable, but it is not guaranteed that this report is accurate or complete. Considerable reliance has been placed on information the company has released to the public domain or provided. However, no representation or warranty is made as to the accuracy, reliability, or timeliness of the content. This report contains forward-looking statements, which involve risks and uncertainties, which could cause actual results to differ from those implied by these statements. It is intended that all forward-looking statements be covered by the "safe harbor" provisions of section 21E of the Securities Exchange Act of 1934. Past performance is not necessarily a guide to future results. The opinions expressed are of this date and this service assumes no obligation to update, modify, or amend this report.

If you would like to be removed from our distribution list, please call toll free number (888) 820-6289.

*Wall Street Leaders*



Focusing on stocks that are the leaders of tomorrow!                                              *18*

| Stock Symbol: | WLKF |
|---|---|
| Rating: | 10 out of 10 |
| Current Price: | $.40 |
| Short Term Target: | $4.29 |

**For more information visit:**

**www.nationalpreplanning.com**

## This Market is producing amazing returns.
## WLKF could be the next big one!

### Dear Readers:

*At this time a year a lot of people are thinking about doing their holiday shopping. However, those investors who think ahead can take advantage of the January effect. The market has produced great returns in January in the past, especially in the small cap market.*

*Which brings us to our focus stock of the Year ......*

Our Focus Stock of the Year 2005 is:

### WLKF

### About The Company

**National Preplanning is a Subsidiary of Walker Financial Corp., which trades on the OTC BB as: WLKF. WLKF is the provider of one of the most unique and valuable voluntary benefits available. Our products, discounted funeral plans, are presented to individuals through their association with an affinity organization. An affinity organization can include any corporation, union, association, club, and religious organization, bank, credit union, chamber of commerce or other groups sharing a common interest. Our funeral products are discounted and provide other additional benefits to individuals associated with affinity organizations.**

One out of every four people in the United States will arrange for this inevitable expense within the next five years.

**WLKF** the leader in providing death care coverage to individuals through various platforms.

**WLKF's** primary product is discounted funeral packages that are marketed as a voluntary benefit to employees, union members, credit union members, bank customers and association members. All packages are discounted ten percent (10%) from what the package would normally cost. Additionally the discounted benefits are extended to an individual's immediate family, thereby allowing the whole family to take advantage of this value oriented product.

In most instances **WLKF** offer three types of funeral packages related to burials and three types of cremation packages. An individual chooses the package he or she wants and is issued an insurance product which serves to pay the funeral director upon an individuals death. You can pay for the cost of your prearrangement over 1, 3, 5 7, or 10 years turning this great planning opportunity and investment into a small monthly payment. **WLKF** represents funeral homes on a national scale which guarantee the price of your future funeral at the price it would cost today, thereby preventing inflation from increasing your price as you live longer.

### Final Word

Take initiative and pull up **WLKF** right now on your radar. This is one worth following. We urge you to at least look more into this company and possibly take an interest in their success. I hope you all have a good and successful trading year and thanks for reading our article.

WSL is not a registered financial advisory. The information presented by WSL is not an offer to buy or sell securities. Since WSL has received this info from other public sources, we cannot and do not make any representations or guarantees as to the accuracy of the information contained herein. Penny stocks are considered to be highly speculative and may be unsuitable for all but very aggressive investors. WSL may hold positions in companies mentioned and may buy or sell at any time. This Profile of WLKF was a paid advertisement by a third party to WSL with compensation in the amount of one hundred and fifty thousand shares which will need to be sold over time to pay for the advertising. Paid advertisements by an affiliated public relations group or third party do not necessarily reflect the views of WSL. Target price may fluctuate, please always consult a registered financial advisor before making any decisions.

To have your name removed from our database please call our toll free service at: (888)-308-1239

12/15/04 7:53 PM

VISIONLAB

19

Capital Financial

facsimile transmittal

| To: Dr. Mitchel | Fax: |
| From: Chris | Date: 12/15/2004 |
| Re: Symbol AVLL | Pages: |
| CC: | |

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

AVLL

Can you please put your cell phone on. I have been trying to get you for 2 hours. I have a stock for you that will tripple in price just like the last stock I gave you "SIRI" did. I can't get you on either phone. Either call me, or call Linda to place the new trade. We need to buy "AVLL" now —

P.S
You better be good to me this Christmas. No other Stock Broker has given you back to back wins.

Thanks, your shinning Star Financial Planner
ha ha ha

CONFIDENTIALITY NOTICE: THIS MESSAGE (INCLUDING ATTACHMENTS) CONTAINS CONFIDENTIAL INFORMATION AND IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED. If have received this an error please call 888-820-6298

## Early Bird



*Featuring Only the Stocks That Can Enhance and Diversify Your Portfolio*

| Symbol: | MMFS.PK |
| Rating: | 10 out of 10 |
| Current Price: | $2.60 |

20

Stock Symbol: **MMFS.PK**
Rating: **10 out of 10**
Current Price: **$2.60**

For more information contact:
www.vrmdcorp.com

### The Strong Buy is Always The Right Stock at the Right Time
The mortgage industry is strong and MEM Financial is moving up fast – $150 Million in total revenues!

**Dear Investor,**

The last few months have been very exciting for stock pickers. The search is on for the companies with consistent profitability, good niche markets and the knowledge and desire to succeed. Level 3 Securities has been focusing on these factors. After looking at thousands of public companies, we want to tell you about a company that we think has explosive potential!

With all the turmoil in the US economy, one thing has remained very strong: real estate. And the future looks excellent. Housing industry experts confidently look to the housing market to remain strong for years to come. Rates are low - which is an additional boost to the industry. This is a great time to invest in MEM Financial Solutions Inc. - a smart company right in the thick of things. Read on and see why MEM is an excellent buy!

**About The Company**

MEM Financial Solutions is currently licensed as a mortgage broker in New York and in Florida. Concerted efforts are being made to obtain licensing in every state in the U.S. within a year. MEM is looking for this national thrust to provide acceleration in its growth rate and your portfolio can experience healthy growth too!

Headquartered in Half Moon, New York, MEM has branch offices in Clifton Park, New York, Glens Falls, New York, Albany, New York, and Fort Saint Lucie, Florida. MEM Financial Solutions offers purchase, refinance, construction and equity loans to the conventional, Sub -Prime, Jumbo, modular & Manufactured home markets, as well as products securing commercial property, through over 120 mortgage lenders.

MEM Financial Solutions Inc. is trading on the Pink Sheets under the symbol MMFS. Since its inception in 1999, MEM has produced double-digit growth annually! 2004 Revenues are expected to exceed $75 Million, up from $42 Million reported last year. All in all, the company has grown to 47 employees and has generated a total revenue of over $150,000,000! Don't wait to add MMFS to your portfolio, this is the time to act!

With this robust, ever-expanding housing market, MEM anticipates a 12%-15% compounded yearly growth that will continue to blossom by the rapid expansion currently planned. Look for MEM to pursue new acquisitions of title abstract companies, settlement agencies, mortgage brokerages, and federally chartered banks. The company's top priority is to build shareholder value and past history proves this is a reality. What great news for investors!

**Reasons to buy this stock:**

1. MEM Financial's stock is poised to skyrocket
2. Management is focused on building shareholder value
3. This company is forward-thinking and flexible
4. The mortgage market is huge and remains strong
5. MEM Financial offers customers lending products in all sectors of the mortgage industry
6. New acquisitions will be pursued

**Final Word**
The future of real estate and the mortgage industry looks great and shows no sign of slowing down. When it comes to hot companies like MEM Financial, you can't afford to wait to invest. And once you do invest, you have a team of experts whose top priority is to build shareholder value. What a winning attitude!

Neither the information nor any opinion herein constitutes an offer, or an invitation to make an offer, to buy or sell any securities or any options, futures or other derivatives, related to such securities. Level 3 Securities Inc was compensated $30,000 to date for this opinion by a third party. Level 3 Securities Inc. and its affiliates may trade for their own accounts in any securities of the issue (or issues) or in related investments. Level 3 Securities Inc. does not accept liability for any loss resulting from an investor's use of, or reliance, on this report. Level 3 Securities Inc. has obtained information from sources that are considered reliable but it is not guaranteed that this report in accurate or complete. Considerable reliance has been placed on information the company has released to the public domain or provided. However, no representation or warranty is made as to the accuracy, reliability, or timeliness of the content. This report contains forward-looking statements, which involve risks and uncertainties, which could cause actual results to differ from those implied by these statements. It is intended that all forward-looking statements be covered by the "safe harbor" provisions of section 21E of the Securities Exchange Act of 1934. Past performance is not necessarily a guide to future results. The opinions expressed are of this date and Level 3 Securities, Inc assumes no obligation to update, modify, or amend this report.

To be removed from our distribution list, please call toll free: 866-296-9207

1st July  1st Removed

To: All Employees
From: Our Corporate Travel Department

Our Corporate Travel Department has asked if you would distribute this memo freely
to all employees.



## Your Vacation Includes

# Only $99!
*Per Person*

4 Days and 3 Nights in Orlando, FL

3 Days and 2 Nights in Daytona Beach, FL

and 2 Passes to Your Choice of Theme Parks!

Purchase today and you will
receive 3 DAYS & 2 NIGHTS
in your choice of Jamaica,
Cancun, Las Vegas, or Orlando with... ➡

# Round Trip Airfare Included!

Space is Limited, so call Today!

ONLY 50 Reservations Available!

CALL NOW!

# 1-800-349-0569

Mon–Fri 9:00am – 10:00pm, Sat 10:00am – 3:00pm EST

To remove your fax number from our database call toll free  1-888-520-7616

*PAOTUS*

22

# the bioTech report

**ArTec, Inc.**
**(Pink Sheets: ATKJ)**

| | |
|---|---|
| Recent Price: | $0.25 |
| Public Float: | 1,500,000 |
| Accumulate to: | $2.00 |
| STRONG BUY OPPORTUNITY!!! | |

*"discovering value in biotechnology stocks"*

**Attn Subscribers – NEW ISSUE!**

**MANAGEMENT TO PREPARE FOR "PRECLINICAL" US FDA APPLICATION FOR PATENTED CANCER COMPOUND, TUBERCIN!**

*The bioTech Report focuses on new and emerging biotech stocks that have immediate upside potential.*

**THIS WEEK'S PICK:** ArTec, Inc. (OTC Symbol: ATKJ) is a cancer drug company formed to commercialize a revolutionary compound trade named Tubercin that has been effectively used in treatments of various cancers. ArTec, Inc., is sublicensed by Shinn Capital Group, Inc., to manufacture and distribute Tubercin in the United States and Canada . Tubercin has been granted no less than 5 issued patents both domestically and abroad, the most significant being the US patent issued August 14, 2001. The patent office has allowed an impressive array of claims for Tubercin as is evident in the following quote from the patent's abstract: "A carbohydrate complex, which is a mixture of low molecular-weight poly saccharides of an arabinomannan structure extracted from mycobacterium tuberculosis, highly effective in treating various cancer patients without incurring any adverse side effects." **For further information, the US Patent and Trademark Office's Official website is:**http://patft.uspto.gov/netacgi/tubercin .

**THAT'S WHY WE'RE GIVING ATKJ A "STRONG BUY" RATING!!!**

For additional ATKJ info, visit www.Artec-Inc.net

### ARTEC SAVING LIVES



*"Nine million new cases of cancer occur annually with five million people dying from breast cancer every year,"* reports the World Health Organization.

TUBERCIN is derived from micro bacterium tuberculosis. As an immunostimulant, Tubercin strengthens the human body's own immune system and assists the body in seeking out and combating cancer cells. ArTec is able to develop TUBERCIN into a low-cost product to treat cancer patients on an international scale. Salient treatment, through the administration of TUBERCIN, could positively affect thousands of lives in North America . In addition, Europe and Asia have millions of lives at risk each year because of viral diseases such as cancer.

### OPPORTUNITY

**Tubercin is a "finished" product!!!** Tubercin as an inmunostimulant has been administered to human patients in stages three and four of terminal cancer. There have been no indications of any adverse side effects in human trials. There have been encouraging results of patients with Tubercin in the last fourteen years. Various forms of cancer were involved and many of the patients survived. **Statistically speaking forty percent (40%) is a realistic survival rate among patients experiencing the varying forms of cancer who have been treated with TUBERCIN.** Research and Development is complete with product currently being used through "compassionate care."

**REASONS TO OWN ATKJ**

**1. potential "pre-FDA approved" valuation in the $$$$ millions !**
**2. seasoned management team w/over 150 yrs experience biotech research & development**
**3. new issue w/tight float – ground floor opportunity!**
**4. company nearly "debt-free!"**
**5. similar biotech stocks trading @ $6, $10 even $20 a share!!!!!!**

**If you have received this fax in error, or wish to be removed from our list, please call 1-800-325-8594.**

The bioTech Report(TR) is an independent investor awareness publication  (TR) is not a regulated financial analyst, stockbroker, broker-dealer or investment banker.  This report is based on (TR) independent analysis but also relies on information supplied by sources believed to be reliable, including the company's website, press releases, SEC filings and articles written about the company including the company's executive summary. This report may not be the opinion of Artec Inc. Management. (TR) has been contracted by a "third party" to research and issue this report and is expected to receive thirty thousand dollars to distribute this report . (TR) may from time to time buy and/or sell common shares of ATKJ in the open market without any notice. The information contained in this report is not intended to be , and shall not constitute an offer to buy or sell securities. Its sole intention is for information purposes only.  Some statements may contain so-called "forward-looking" information. Many factors could cause actual results to differ.  Investors should consult with their investment advisors and/or stockbrokers concerning ATKJ.  An investment in ATKJ could result in entire loss of investment.  Please do your own due-diligence on ATKJ before making any investment decisions.

14

TRIAL COURT OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
MIDDLESEX COUNTY

MIDDLESEX, ss.                           Civil No. MICV2004-05030

MICHAEL SHERMAN,                    )
    Plaintiff                          )
    v.                                 )
VISIONLAB TELECOMMUNICATIONS,, )
    INC., et al.,                      )
    Defendants                         )



REQUEST FOR DEFAULT AS TO BELLSOUTH CORPORATION (RULE 55(a))

    The Plaintiff hereby requests that the clerk of this court enter the default of Defendant BellSouth Corporation (BellSouth). He says that he caused BellSouth's registered agent, as shown by the records of the Secretary of State of Georgia, to be served with a copy of a summons and the First Amended Complaint in this matter on June 22, 2005, as more fully appears from the return of service filed by his counsel. He further says that BellSouth has not answered or otherwise defended.

Dated: July 18, 2005

                 MICHAEL SHERMAN, by his attorney,

                 Walter Oney
                 Walter Oney (BBO #379795)
                 4 Longfellow Place
                 Boston, MA 02114
                 Tel: 617-227-5620
                 Fax: 617-227-5760

# Commonwealth of Massachusetts
## County of Middlesex
## The Superior Court

15

CIVIL DOCKET# **MICV2004-05030**

RE:    **Sherman v Visionlab Telecommunications, Inc. et al**

## DEFAULT ORDER (Mass. R. CIV. P.  55a)

The defendant(s) named below, having failed to plead or otherwise defend in the above referenced case as required by MRCP 12(a), is(are) hereby defaulted pursuant to MRCP 55(a):

**Default (55a) as to defendant(s) BellSouth Corp.. Copies mailed July 19, 2005**

The plaintiff shall file: ·

    1. A motion for an assessment of damages and default judgment pursuant to Mass. R.Civ.P.55(b)2 and subject to Mass.R.Civ.P.54(b) by **08/18/2005**, or

    2. A request for Default Judgment pursuant to Mass.R.Civ.P. 55(b)1 and subject to Mass.R.Civ.P.54(b) by **08/18/2005**(contract-sum certain only).

    Dated at Cambridge, Massachusetts this 19th day of July, 2005.

Edward J. Sullivan,
Clerk of Courts

BY:

Leona Kusmirek
Assistant Clerk

Telephone: 617-494-4010 EXT 4251

cvddf155a_2.wpd 2760305 df155a blacjose

*10*

TRIAL COURT OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
MIDDLESEX COUNTY

MIDDLESEX, ss.                                      Civil No. MICV2004-05030

MICHAEL SHERMAN,                      )
    Plaintiff                                    )
    v.                                               )
VISIONLAB TELECOMMUNICATIONS, )
    INC., et al.,                                 )
    Defendants                               )

*D*

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS

JUN 1 7 2005

Edward J. Sullivan

### PLAINTIFF'S MOTION TO APPROVE SERVICE BY FEDERAL EXPRESS [MRCP 4(e)(5)]

Now comes the Plaintiff and moves that this honorable court authorize service of a

summons and a copy of the Plaintiff's First Amended Complaint on Defendants THE

SUPPORT GROUP IN SWEDEN AB and HIGHLAND MARKETING LLC by means

of Federal Express Delivery. In support hereof, the Plaintiff respectfully submits the

attached Memorandum of Law.

Dated: June 16, 2005

                         MICHAEL SHERMAN, by his attorney,

                         *Walter Oney*

                         Walter Oney (BBO # 379795)
                         4 Longfellow Place
                         Boston, MA 02114
                         Tel: 617-227-5620
                         Fax: 617-227-5760

7/12/05 - After review, the motion is DENIED. S. [illegible]

TRIAL COURT OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
MIDDLESEX COUNTY

MIDDLESEX, ss.                          Civil No. MICV2004-05030

MICHAEL SHERMAN,                    )
    Plaintiff                          )
    v.                                 )
VISIONLAB TELECOMMUNICATIONS,, )
    INC., et al.,                      )
    Defendants                         )

JUN  7 2005

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO APPROVE SERVICE BY FEDERAL EXPRESS

The Plaintiff respectfully submits this Memorandum of Law in support of his motion

of even date to approve service by Federal Express on two non-United-States entities.

### SUMMARY

The Plaintiff seeks authority to serve two non-U.S. defendants by Federal Express.

While Federal Express ought to constitute "any form of mail ... requiring a signed

receipt" for purposes of Rule 4(e)(3) and the Massachusetts long-arm statute, that

question is sufficiently in doubt for the Plaintiff to ask for explicit permission.

### FACTS AND AUTHORITIES

On June 16, 2005, the Plaintiff filed his First Amended Complaint in this action. The

amended complaint names new defendants, including The Support Group in Sweden AB

(SUPPORT GROUP) and Highland Marketing LLC (HIGHLAND MARKETING).

These defendants are limited liability companies located in Sweden and in the City of

Gibraltar (a possession of the United Kingdom), respectively. The Plaintiff alleges in the

First Amended Complaint that SUPPORT GROUP has contracted with one or more fax

broadcasters to provide so-called toll-free "number removal" service for the purpose of

helping such broadcasters evade federal and state telemarketing laws The Plaintiff further alleges that SUPPORT GROUP derives substantial revenue by providing a toll-free automated response service that it should reasonably expect to be used by residents of Massachusetts. The Plaintiff alleges that HIGHLAND MARKETING had a substantial degree of involvement in the transmission of at least two unsolicited facsimile advertisements to the Plaintiff. Accordingly, the Plaintiff submits that both SUPPORT GROUP and HIGHLAND MARKETING are subject to the personal jurisdiction of this court pursuant to G.L. c. 223A, § 3.

Sweden, the United Kingdom, and the United States are signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361 (Nov. 15, 1969). The Hague Service Convention specifies a procedure whereby judicial process may be served on entities located within signatory nations. Article 10(a) of the Convention also states, however, that "[p]rovided the State of destination does not object, the present Convention shall not interfere with the freedom to send judicial documents, by postal channels, directly to persons abroad." Neither Sweden nor the United Kingdom has objected to service by postal channels. In federal practice, therefore, otherwise valid service by mail on Swedish or British subjects has been found sufficient. *Trump Taj Mahal Assocs. v. Hotel Servs.,* 183 F.R.D. 173, 181 n. 5 (D.N.J., 1998) (United Kingdom); *Coblentz GMC Freightliner, Inc. v. General Motors Corp.,* 724 F. Supp. 1364, 1372 (M.D. Ala. 1989), *aff'd,* 932 F.2d 978 (11th Cir. 1991) (Sweden).

Mass. R. Civ. P. 4(e) permits process to be served outside the Commonwealth "by any form of mail addressed to the person to be served and requiring a signed receipt." *See*

-2-

*also* G.L. c. 223A, § 6(3). There is a split of authority in other jurisdictions on the question whether Federal Express delivery is a "form of mail" under similar court rules. The majority rule appears to be that it is not. *See, e.g., Helmers v. Sortino,* 545 N.W.2d 796, 799 (N.D. 1996) ("Federal Express delivery is not mail delivery"). *Accord, Fannie Mae v. Fandino,* 751 So. 2d 752, 754 (Fla. App. 2000); *Nissan Div. v. Fred Anderson Nissan,* 337 N.C. 424, 427 (1994) (statute requiring use of "registered or certified mail, return receipt requested" meant U.S. Mail only); *Continental Sports Corp. v. Department of Labor & Indus.,* 128 Wash.2d 594, 601 (1996) (notice of appeal not timely "mailed", but constituted substantial compliance with rule).

In *Helmers,* the court said, "Whatever commercial usage Federal Express delivery has attained, it has not gained the long experience, expected reliability, or legal recognition that postal mail delivery has attained." 545 N.W.2d at 799. That pronouncement was made ten years ago, by a court sitting in a state with far less of an international mercantile tradition than Massachusetts. Moreover, whatever reliability may appertain to registered mail within the United States, *international* registered mail is not at all reliable because there are so many differences between the postal systems of different countries. Anecdotally, the Plaintiff notes the experience of his attorney in attempting to effect delivery of a summons on a Greek company via international registered mail: no return receipt ever arrived, and the tracking procedure to find out whether there had been a delivery failure (which was itself expected to take several months, according to the Post Office) never produced any response. First-class mail or facsimile are more *reliable* ways of transmitting documents abroad than is international registered mail. What they lack is a method of confirming delivery by signature of the addressee.

Federal Express, on the other hand, has world-wide presence and has by now established itself as an experienced and reliable service for delivering documents and packages all over the world. Federal Express requires a signature for receipt of an international shipment, and it will provide upon request by the sender a proof of delivery. Such proof of delivery is well accepted in the commercial world in connection with transactions of far greater import than this lawsuit.

The case of *Allen Organ Co. v. ELKA S.p.A.,* 615 F. Supp. 328 (E.D. Pa. 1985) exemplifies the better view. Construing a Pennsylvania statute, the court said, "The term 'any form of mail' is broad enough to encompass the private mail service employed by plaintiff in this case. Notice to the defendant of the claims against it is the purpose of service and *it is the signed receipt rather than the carrier that insures the fulfillment of that purpose.*" *Id.* at 330 (emphasis added). In *R. Griggs Group v. Filanto Spa,* 920 F. Supp. 1100 (D. Nev. 1996), the court upheld service on an Italian company by Federal Express without even discussing the issue whether private courier delivery was through "postal channels" within the meaning of the Hague Service Convention. *See also Dee-K Enterprises, Inc. v. Heveafil SDN. Bhd.,* 174 F.R.D. 376, 379 (E.D. Va. 1997) (DHL was "form of mail"); *EOI Corp. v. Medical Mktg.,* 172 F.R.D. 133, 143 (D.N.J. 1997) (DHL service in UK sufficient under Hague Service Convention); *Bolkiah v. Superior Court,* 74 Cal.App.4th 984, 999-1000 (1999) (service by mail and Federal Express at 13 different addresses was sufficient given proof of receipt).

Thus, the Plaintiff suggests that delivery of a summons and complaint by Federal Express *ought* to pass muster under our rules permitting service by "any form of mail … requiring a signed receipt." Mass. R. Civ. P. 4(e)(3). Out of an excess of caution,

-4-

however, and wishing to avoid later questions as to the sufficiency of service on these

two foreign entities, the Plaintiff asks this court to explicitly approve service via Federal

Express under the authority of Rule 4(e)(5) ("as directed by order of the court"). *See* G.L.

c. 223A, § 6(5).

Dated: June 16, 2005

MICHAEL SHERMAN, by his attorney,

Walter Oney (BBO # 379795)
4 Longfellow Place
Boston, MA 02114
Tel: 617-227-5620
Fax: 617-227-5760

# WALTER ONEY

### ATTORNEY AT LAW

4 LONGFELLOW PLACE
BOSTON, MA 02114

TEL:   617-227-5620
FAX:   617-227-5760
WWW.ONEYLAW.COM

June 16, 2005

Civil Clerk
Middlesex County Superior Court
40 Thorndike St.
Cambridge, MA  02141

Re: Case No. MICV2004-05030

To Whom It May Concern:

Enclosed please find for filing (1) the Plaintiff's First Amended Complaint, and (2) the Plaintiff's Motion to Approve Service by Federal Express, together with a supporting memorandum.

Note that this case should be retitled "Michael Sherman v. Visionlab Telecommunications, Inc." now that the names of some of the defendants are finally known.

Also enclosed is a check in the amount of $35. Would you kindly send me seven summonses.

Sincerely yours,

Walter Oney

TRIAL COURT OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
MIDDLESEX COUNTY

MIDDLESEX, ss.                                    Civil No. MICV2004-05030

MICHAEL SHERMAN,                    )
    Plaintiff                         )
    v.                                )
VISIONLAB TELECOMMUNICATIONS, )
    INC.,                             )
ON DEMAND MARKETING LLC,           )
RANDY THOMASON,                     )
HIGHLAND MARKETING LLC,             )
BELLSOUTH CORPORATION,              )
TELEDATA SOLUTIONS, INC.,           )
    and                               )
THE SUPPORT GROUP IN SWEDEN, AB,)
    Defendants



FIRST AMENDED COMPLAINT

1.  The Plaintiff brings this action to obtain statutory damages on account of

unsolicited facsimile advertisements he received on the fax machine located in his home

during 2004 and in order to learn the identities and locations of unknown persons and

entities responsible for sending such unsolicited facsimile advertisements.

PARTIES

2.  The Plaintiff is a natural person residing at 54 Knowles Road, Watertown, MA

02472.

3.  On information and belief, Defendant VISIONLAB TELECOMMUNICATIONS,

INC., (VISIONLAB) is a corporation duly organized and existing under the laws of the

State of Florida and having its principal place of business at 1680 Michigan Ave., Suite 1106, Miami Beach, FL 33139.

4. On information and belief, Defendant ON DEMAND MARKETING, LLC, (ON DEMAND) is a limited liability company duly organized and existing under the laws of the State of California and having its principal place of business at 426 16th Place, Costa Mesa, CA 92627.

5. On information and belief, Defendant RANDY THOMASON (THOMASON) is an individual residing or having a place of business at 426 16th Place, Costa Mesa, CA 92627.

6. On information and belief, Defendant HIGHLAND MARKETING LLC (HIGHLAND) is a limited liability company duly organized and existing under the laws of the City of Gibraltar and having a place of business in care of Portland House, Glacis Road, Gibraltar.

7. On information and belief, Defendant BELLSOUTH CORPORATION (BELLSOUTH) is a corporation duly organized and existing under the laws of the State of Georgia and having its principal place of business at 1155 Peachtree St., N.E., Atlanta, GA 30309-3610.

8. On information and belief, Defendant TELEDATA SOLUTIONS, INC. (TELEDATA) is a corporation duly organized and existing under the laws of the State of Nevada and having its principal place of business at 200 No. Westlake Blvd., Suite 104, Westlake Village, CA 91362.

9. On information and belief, Defendant THE SUPPORT GROUP IN SWEDEN AB (SUPPORT GROUP) is a limited liability entity duly organized and existing under the

-2-

laws of Sweden and having its principal place of business at Liljeholmsvägen 18, SE-11761 Stockholm, Sweden.

### FACTS

10. At all times relevant to this action, the Plaintiff has subscribed for residential telephone service under the number 617-923-1329.

11. At all times relevant to this action, the Plaintiff has connected a facsimile machine to 617-923-1329, which machine is capable of transcribing text and images from an electronic signal received over a regular telephone line onto paper.

12. The Plaintiff placed his telephone number 617-923-1329 on the National Do Not Call Registry on August 6, 2003 and on the Massachusetts do-not-call list effective January 1, 2004.

13. Between April 30, 2004 and December 15, 2004, the Plaintiff received more than 90 unsolicited facsimile advertisements on his facsimile machine connected to 617-923-1329.

14. Some of said advertisements have arrived between 8:00 p.m. and 8:00 a.m., local time.

15. None of said advertisements indicates the identity or location of the sender or the true name and location of the advertiser.

16. The Plaintiff is informed and believes that the senders and advertisers of said advertisements have violated one or more of the federal Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227; regulations of the Federal Communications Commission thereunder including, without limitation, 47 C.F.R. §§ 64.1200, 64.1601(e), and 68.318(d); the Massachusetts Telephone Solicitation Law, G.L. c. 159C; and

-3-

regulations of the Office of Consumer Protection and Business Regulation thereunder, including, without limitation, 201 C.M.R. §§ 12.00 *et seq.,* (collectively referred to herein as "said telemarketing statutes and regulations"). These statutes and regulations provide a private right of action to seek damages up to $6,500 for each violation.

## COUNT 1
## CLAIMS AGAINST VISIONLAB

17. The Plaintiff repeats the allegations of paragraphs 1, 2, 3, and 10-16.

18. The Plaintiff is informed and believes that at least 55 of the unsolicited facsimile advertisements he received as so alleged were transmitted by VISIONLAB.

19. The Plaintiff is further informed and believes that VISIONLAB had substantial involvement in one or more of the following activities, to wit: designing said advertisements, choosing the telephone numbers to which such advertisements were sent, controlling the information supplied in marginal headings on such advertisements, controlling the caller identification information supplied to common carriers during the transmission of such advertisements, contracting for so-called number removal services furnished by SUPPORT GROUP and other parties, and actually transmitting said advertisements.

WHEREFORE the Plaintiff demands judgment against VISIONLAB for actual and statutory damages, and the reasonable fees of his attorney, pursuant to said telemarketing statutes and regulations.

## COUNT 2
## CLAIMS AGAINST ON DEMAND AND THOMASON

20. The Plaintiff repeats the allegations of paragraphs 1, 2, 4, 5, and 10-16.

21. The Plaintiff is informed and believes that at least 3 of the unsolicited facsimile advertisements he received as so alleged were transmitted on behalf of ON DEMAND.

22. The Plaintiff is further informed and believes that THOMASON was at all times relevant to this action in actual charge of the day-to-day operations of ON DEMAND and had substantial involvement in the design of said advertisements, in the decision to transmit them by fax to the Plaintiff, in the selection of telephone numbers to which said advertisements would be transmitted, and in contracting with VISIONLAB and others to transmit such advertisements by fax to the Plaintiff on behalf of ON DEMAND and on his own behalf.

WHEREFORE the Plaintiff demands judgment against ON DEMAND and THOMASON, jointly and severally, for actual and statutory damages, and the reasonable fees of his attorney, pursuant to said telemarketing statutes and regulations.

COUNT 3
CLAIMS AGAINST HIGHLAND MARKETING

23. The Plaintiff repeats the allegations of paragraphs 1, 2, 6, and 10-16.

24. The Plaintiff is informed and believes that at least 2 of the unsolicited facsimile advertisements he received as so alleged were transmitted on behalf of HIGHLAND MARKETING.

25. The Plaintiff is further informed and believes that HIGHLAND MARKETING had substantial involvement in the design of said advertisements, in the decision to transmit them by fax to the Plaintiff, in the selection of telephone numbers to which said advertisements would be transmitted, and in contracting with VISIONLAB and others to transmit such advertisements by fax to the Plaintiff on behalf of HIGHLAND MARKETING.

WHEREFORE the Plaintiff demands judgment against HIGHLAND MARKETING for actual and statutory damages, and the reasonable fees of his attorney, pursuant to said telemarketing statutes and regulations.

COUNT 4<br>CLAIM AGAINST BELLSOUTH FOR BILL OF DISCOVERY

26. The Plaintiff repeats the allegations of paragraphs 1, 2, 7, and 10-16.

27. The Plaintiff has obtained business records, duly authenticated under oath pursuant to G.L. c. 233, § 78, from telephone common carriers tending to show that some of the telephone calls described in paragraph 13 originated from a BELLSOUTH subscriber.

28. BELLSOUTH refused on March 4, 2005, to identify the subscriber or subscribers responsible for said telephone calls except in response to a subpoena issued by a court in Georgia, Florida, South Carolina, North Carolina, Mississippi, Louisiana, Tennessee, Kentucky, or Alabama, or to a subpoena issued by a federal court and domesticated within one of those states.

29. The Plaintiff is informed and believes that federal courts lack subject matter jurisdiction over cases arising under the TCPA and that, in consequence, he cannot file suit in a federal court in order to utilize the third-party discovery mechanisms provided in the Federal Rules of Civil Procedure.

30. The records of the Secretary of the Commonwealth show that many subsidiaries of BELLSOUTH are either incorporated in Massachusetts or have registered as foreign corporations in Massachusetts.

31. The Plaintiff avers that BELLSOUTH derives substantial revenue from providing telecommunication services to residents of the Commonwealth and from carrying long distance traffic to and from residents of the Commonwealth.

32. The Plaintiff further avers that he cannot know in which state to commence an action on his substantive claims without obtaining information that is presently in the exclusive possession of BELLSOUTH and that, in consequence, the conditions imposed by BELLSOUTH on providing that information are manifestly unreasonable.

33. The Plaintiff therefore avers that this court may exercise personal jurisdiction over BELLSOUTH pursuant to the Massachusetts Long Arm statute, G.L. c. 223A, § 3 and may compel BELLSOUTH to provide to the Plaintiff the information that the Plaintiff needs in order to identify the person or persons responsible for the telephone calls referred to in paragraph 13.

WHEREFORE the Plaintiff prays that the court might allow his bill of discovery against BELLSOUTH for the purpose of more particularly determining who is responsible for transmitting the facsimile advertisements referred to in paragraph 13.

COUNT 5
CLAIM AGAINST TELEDATA FOR BILL OF DISCOVERY

34. The Plaintiff repeats the allegations of paragraphs 1, 2, 8, and 10-16.

35. The Plaintiff is informed and believes that at least twenty of the faxes complained of herein carry a toll-free "removal" number assigned to TELEDATA as Responsible Organization.

36. On January 6, 2005, in response to a subpoena issued in this case, TELEDATA provided to the Plaintiff an affidavit to the effect that each of twenty specified toll-free numbers, which the Plaintiff says appear as "removal" numbers on some of the faxes

-7-

complained of herein, were subscribed for by SUPPORT GROUP. TELEDATA supplied on January 14, 2005, a list of several hundred toll-free numbers for which TELEDATA is the Responsible Organization and SUPPORT GROUP is the subscriber.

37. On February 9, 2005, after two follow-up requests by the Plaintiff, TELEDATA provided codes identifying the circuits to which the toll-free numbers assigned to SUPPORT GROUP connect. Qwest Communications, the putative provider of the circuits so identified, has no record of circuits having such codes. TELEDATA has therefore not identified said circuits with sufficient specificity to allow the Plaintiff to determine whether a United States entity receives such calls or to determine the physical terminus of such calls.

38. The Plaintiff avers that he requires the information described in the preceding paragraph in order to more certainly identify the person or persons who placed the telephone calls referred to in paragraph 13.

39. The Plaintiff further avers that TELEDATA derives substantial revenue from wholesaling toll-free numbers, including the so-called "removal" numbers appearing on the faxes complained of in his action, that it should reasonably expect to be dialed by residents of Massachusetts.

40. The Plaintiff therefore avers that this court may exercise personal jurisdiction over TELEDATA pursuant to the Massachusetts Long Arm statute, G.L. c. 223A, § 3.

WHEREFORE the Plaintiff prays that the court might allow his bill of discovery against TELEDATA for the purpose of more particularly determining who is responsible for transmitting the facsimile advertisements referred to in paragraph 13.

### COUNT 6
### CLAIMS AGAINST SUPPORT GROUP

-8-

41. The Plaintiff repeats the allegations of paragraphs 1, 2, 9, and 10-16.

42. The Plaintiff has obtained business records, duly authenticated under oath pursuant to G.L. c. 233, § 78, from TELEDATA tending to show that twenty of the faxes complained of herein carry a toll-free "removal" number subscribed for by SUPPORT GROUP.

43. The Plaintiff is informed and believes that one or more fax broadcasting companies, including the person or persons who placed the telephone calls referred to in paragraph 13, have entered into contracts with SUPPORT GROUP, pursuant to which SUPPORT GROUP provides a toll-free automated response service whereby a consumer may register a request to have the consumer's fax number removed from the database or list of fax numbers used by said fax broadcasting companies.

44. The Plaintiff avers that SUPPORT GROUP derives substantial revenue by providing a toll-free automated response service that it should reasonably expect to be used by residents of Massachusetts.

45. The Plaintiff therefore avers that this court may exercise personal jurisdiction over SUPPORT GROUP pursuant to the Massachusetts Long Arm statute, G.L. c. 223A, § 3.

46. The Plaintiff further avers that SUPPORT GROUP has so entered into contracts, and so derives substantial revenue, in the knowledge that it is thereby aiding and abetting, and for the purpose of aiding and abetting, VISIONLAB in flouting said statutes and regulations on a massive scale.

-9-

WHEREFORE the Plaintiff demands judgment against SUPPORT GROUP for actual

and statutory damages, and the reasonable fees of his attorney, pursuant to said

telemarketing statutes and regulations.

Dated: *June 16, 2005*

        MICHAEL SHERMAN, by his attorney,

        Walter Oney (BBO # 379795)
        4 Longfellow Place
        Boston, MA 02114
        Tel: 617-227-5620
        Fax: 617-227-5760

TRIAL COURT OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
MIDDLESEX COUNTY

MIDDLESEX, ss.                                          Civil No. MICV2004-05030

MICHAEL SHERMAN,                    )
    Plaintiff                              )
    v.                                      )
COMCAST PHONE OF                    )
    MASSACHUSETTS, INC.,                )
    and                                 )
UNKNOWN TELEPHONE CARRIERS,         )
    Defendants                          )

MOTION FOR ENLARGMENT OF TIME TO SERVE PROCESS [RULE 4(j)]

Now comes the Plaintiff and moves this honorable court to enlarge until July 22,

2005, the time permitted to serve the Defendant or Defendants presently identified as

"Unknown Telephone Carriers." In support hereof, the Plaintiff says that he has made

diligent, but so far unsuccessful, efforts to determine the identities of other parties who

have the information sought to be discovered in this action or who are liable for the harm

suffered by the Plaintiff, including issuing numerous subpoenas to the organizations

responsible for the various toll-free numbers appearing on the faxes complained of,

writing letters to the issuers of the stock issues promoted in certain of the faxes, and

processing information supplied by COMCAST in response to a subpoena.

Dated: February 23, 2005

MICHAEL SHERMAN, by his attorney,

Walter Oney (BBO # 379795)
4 Longfellow Place
Boston, MA 02114
Tel: 617-227-5620
Fax: 617-227-5760

## CERTIFICATE OF SERVICE

I hereby certify under the pains and penalties of perjury that I served copies of the within document on the parties entitled to receive them by mailing them by first-class mail, postage prepaid, as follows:

Cameron F. Kerry, Esq.
Attorney for Comcast Phone of Massachusetts, Inc.
1 Financial Center
Boston, MA 02111

Dated: February 23, 2005

Walter Oney

TRIAL COURT OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
MIDDLESEX COUNTY

MIDDLESEX, ss.                                              Civil No. MICV2004-05030

MICHAEL SHERMAN,                    )
    Plaintiff                            )
    v.                                   )
COMCAST PHONE OF                    )
    MASSACHUSETTS, INC.,                 )
    and                                  )
UNKNOWN TELEPHONE CARRIERS,         )
    Defendants                           )

FILED
IN T...
F...
FEB 2 8 2005

## NOTICE OF VOLUNTARY DISMISSAL AS TO
## COMCAST PHONE OF MASSACHUSETTS, INC. [RULE 41(a)]

Now comes the Plaintiff pursuant to Mass. R. Civ. P. 41(a)(1)(i) and voluntarily

dismisses this action, as to COMCAST PHONE OF MASSACHUSETTS, INC.,

(COMCAST) only, with prejudice. In support hereof, the Plaintiff says that COMCAST

has served neither an answer nor a motion for summary judgment.

Dated: February 23, 2005

MICHAEL SHERMAN, by his attorney,

Walter Oney (BBO # 379795)
4 Longfellow Place
Boston, MA 02114
Tel: 617-227-5620
Fax: 617-227-5760

CERTIFICATE OF SERVICE

I hereby certify under the pains and penalties of perjury that I served copies of the within document on the parties entitled to receive them by mailing them by first-class mail, postage prepaid, as follows:

Cameron F. Kerry, Esq.
Attorney for Comcast Phone of Massachusetts, Inc.
Mintz Levin et. al.
1 Financial Center
Boston, MA  02111

Dated: February 23, 2005

_____
Walter Oney

TRIAL COURT OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
MIDDLESEX COUNTY

MIDDLESEX, ss.                                    Civil No. MICV2004-05030

MICHAEL SHERMAN,                    )
        Plaintiff                   )
        v.                          )
COMCAST PHONE OF                    )
        MASSACHUSETTS, INC.,        )
        and                         )
UNKNOWN TELEPHONE CARRIERS,         )
        Defendants                  )

JOINT STIPULATION CONCERNING RECORD RETENTION

The Plaintiff and Comcast Phone of Massachusetts, Inc. (Comcast) hereby

stipulate as follows:

1.      Comcast agrees that, through December 31, 2005, neither it nor persons or

entities under its control will alter or destroy any records now existing, and under its

custody or control, tending to show (a) the telephone numbers from which Michael

Sherman, of 54 Knowles Road, Watertown, MA 02472, has, since November 12, 2004

through December 31, 2004, received facsimile calls on his residential telephone

connected to 617-923-1329; (b) whether such calls were accompanied by caller-id

information and, if so, what that information was; and (c) the names and address of any

COMCAST subscribers who placed such calls. The Plaintiff may make further request

for records with respect to any specific facsimile calls received after December 31, 2004,

or for retention of any records after December 31, 2005.

2.      Comcast further agrees that it will forthwith request from AT&T such

records within the scope of this agreement as AT&T has within its custody or control to

which Comcast is contractually entitled to obtain, so tending, and that it will retain any

such records pursuant to this agreement.

3.      The Plaintiff agrees that the foregoing undertakings by Comcast shall be

in lieu of any temporary or preliminary injunctive relief to preserve the status quo

pending the resolution on the merits of the Plaintiff's complaint for a bill of discovery.

4.      These undertakings are without admission or prejudice with respect to any

defenses to the injunctive relief requested or the merits of the Plaintiff's cause of action.


Dated:  January 3, 2005

MICHAEL SHERMAN, by his attorney,

*Walter Oney*

Walter Oney (BBO#379795)
4 Longfellow Place
Boston, MA  02114
Tel:  617-227-5620
Fax: 617-227-5760

COMCAST PHONE OF MASSACHUSETTS, INC., by its attorney,

*Cameron F. Kerry ( by Walter Oney )*

Cameron F. Kerry (BBO#269660)
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, MA  02111
Tel: 617-348-1671
Fax: 617-542-2241


LIT 1496867v1

CERTIFICATE OF SERVICE

I hereby certify under the pains and penalties of perjury that I served copies of the foregoing document on the following parties by mailing the same, postage prepaid by first-class mail, as follows:

Cameron F. Kerry, Attorney for Comcast Phone of Massachusetts, Inc.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, MA 02111

Dated: January 3, 2005

_____
Walter Oney

TRIAL COURT OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
MIDDLESEX COUNTY

MIDDLESEX, ss.                                    Civil No.    04-5030

MICHAEL SHERMAN,                    )
    Plaintiff                          )
    v.                                 )
COMCAST PHONE OF                    )
    MASSACHUSETTS, INC.,               )
    and                                )
UNKNOWN TELEPHONE CARRIERS,         )
    Defendants                         )

*FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
...SEX
DEC 22 2004
Edward J. Sullivan
CLERK*

PLAINTIFF'S EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER

Now comes the Plaintiff, *ex parte,* and moves this honorable court to issue its order

temporarily restraining the Defendant COMCAST PHONE OF MASSACHUSETTS,

INC. (COMCAST) from destroying records that would tend to show (a) the telephone

numbers from which he has, since November 12, 2004, received facsimile calls on his

residential telephone connected to 617-923-1329; (b) whether such calls were

accompanied by caller-id information and, if so, what that information was; and (c) the

names and addresses of any COMCAST subscribers who placed such calls. In support

hereof, the Plaintiff says as follows.

    The Plaintiff commenced this action seeking allowance of a bill of discovery by

means of a verified complaint. A bill of discovery allows a plaintiff contemplating a

properly described cause of action to obtain discovery from one who will not, or cannot,

be a party to the underlying action. *Wolfe v. Massachusetts Port Authority,* 366 Mass.

*2004 Dec 22
Order of Motion to issue
Restraint Dec. 30, 2004 in
The emergency provision*

417, 421-22 (1974). "[T]he plaintiff must demonstrate that the information sought is in the exclusive possession of a party against whom discovery under the Rules cannot be obtained." *Walker v. Daley Hotel Management Corp.,* 4 Mass. L. Rep. 57, slip op. at 11 (Suffolk Sup. Ct., Dec. 23, 1994).

The Plaintiff's Verified Complaint sets forth facts that establish the existence of potentially meritorious claims against presently unknown parties for violations of the junk-fax, time-of-day, identification, and do-not-call provisions of federal and state telemarketing laws. It further sets forth facts indicating why the Plaintiff cannot presently identify the parties against whom such claims should be asserted. It states the Plaintiff's belief that COMCAST and other presently unknown telephone carriers have exclusive possession of information identifying those parties. These facts establish a likelihood that the Plaintiff would prevail on the merits in his prayer for a bill of discovery under the standards stated in *Wolfe* and *Walker. See also La Societe Metro Cash & Carry France v. Time Warner Cable,* 2003 Conn. Super. LEXIS 3302 (Conn. Super. 2003) (bill of discovery would lie to obtain identity of internet subscriber).

The Plaintiff will suffer irreparable harm if the information he seeks should be destroyed. *Cf. Brown v. Massachusetts Port Authority*, 371 Mass. 395 (1976), where the plaintiff who prevailed in *Wolfe* ultimately lost out because the Massachusetts Port Authority destroyed the records he sought during the pendency of an appeal. The Plaintiff presently has no idea what record retention policies COMCAST may have in place. For all he knows, the records he seeks are customarily destroyed after 30 days. If so, the information he seeks will be irretrievably lost after January 15, 2005. Thus, immediate

-2-

action is required to preserve the *status quo* pending a full hearing on the merits of a

temporary injunction to preserve the records the Plaintiff seeks.

Dated: *Dec 22, 2004*

MICHAEL SHERMAN, by his attorney,

Walter Oney (BBO #379795)
4 Longfellow Place
Boston, MA 02114
Tel: 617-227-5620
Fax: 617-227-5760

# Commonwealth of Massachusetts
## County of Middlesex
## The Superior Court



CIVIL DOCKET# **MICV2004-05030**

Michael Sherman, Plaintiff(s)

vs.

Comcast Phone of Massachusetts, Inc., Unknown Telephone Carriers

, Defendant(s)

### SUMMONS AND ORDER OF NOTICE

To the above-named:

You are hereby summoned and required to serve upon **Walter Oney, Esquire**, plaintiff's attorney, whose address is **4 Longfellow Place Boston, MA 02114** , an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at Cambridge either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application has been made in said action, as appears in the complaint, for a preliminary injunction and that a hearing upon such application will be held at the court house at said Middlesex County Superior Court, in Cambridge on **12/30/2004, at 02:00 PM in Rm 8A (Cambridge),** at which time you may appear and show cause why such application should not be granted.

**Witness, Barbara J. Rouse,** Esquire, Chief Justice of the Superior Court, at Cambridge, Massachusetts this 22nd day of December, 2004.

............................................................................

Clerk

**(AFFIX RETURN OF SERVICE ON BACK OF SUMMONS)**

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

DEC 28 2004

CLERK

cvcsumornot_2.wpd 612056 hrgpin gouveial

TRIAL COURT OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
MIDDLESEX COUNTY

MIDDLESEX, ss.                                         Civil No. MICV2004-05030

MICHAEL SHERMAN,                    )
    Plaintiff                              )
    v.                                     )
COMCAST PHONE OF                    )
    MASSACHUSETTS, INC.,                )
    and                                    )
UNKNOWN TELEPHONE CARRIERS,          )
    Defendants                             )

---

### NOTICE OF HEARING

A HEARING ON THIS APPLICATION HAS BEEN SCHEDULED FOR 2:00 p.m. ON
DECEMBER 30, 2004 IN THE EMERGENCY SESSION OF THE MIDDLESEX
COUNTY SUPERIOR COURT, 40 THORNDIKE ST., CAMBRIDGE, MA 02141

---

### APPLICATION FOR PRELIMINARY INJUNCTION

The Plaintiff hereby applies to this court for a preliminary injunction restraining the

Defendant COMCAST PHONE OF MASSACHUSETTS, INC. (COMCAST), together

with its employees, agents, subsidiaries, affiliates, and all other persons having actual

knowledge hereof, from altering or destroying any records now or hereafter existing

tending to show (a) the telephone numbers from which Michael Sherman, of 54 Knowles

Road, Watertown, MA 02472, has, since November 12, 2004, received facsimile calls on

his residential telephone connected to 617-923-1329; (b) whether such calls were

accompanied by caller-id information and, if so, what that information was; and (c) the

names and addresses of any COMCAST subscribers who placed such calls.

Dated: December 22, 2004

MICHAEL SHERMAN, by his attorney,

*Walter Oney*

Walter Oney (BBO # 379795)
4 Longfellow Place
Boston, MA 02114
Tel: 617-227-5620
Fax: 617-227-5760


### CERTIFICATE OF SERVICE

I hereby certify under the pains and penalties of perjury that I served a copy of the within
document on COMCAST PHONE OF MASSACHUSETTS, INC., by causing said copy
to be delivered along with the summons and complaint in this matter.

Dated: December 22, 2004

*Walter Oney*

Walter Oney

**Commonwealth of Massachusetts**
**County of Middlesex**
**The Superior Court**

CIVIL DOCKET# **MICV2004-05030**

Michael Sherman, Plaintiff(s)

vs.

Comcast Phone of Massachusetts, Inc., Unknown Telephone Carriers

, Defendant(s)

## SUMMONS AND ORDER OF NOTICE

To the above-named:

You are hereby summoned and required to serve upon **Walter Oney, Esquire**, plaintiff's attorney, whose address is **4 Longfellow Place Boston, MA 02114** , an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at Cambridge either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application has been made in said action, as appears in the complaint, for a preliminary injunction and that a hearing upon such application will be held at the court house at said Middlesex County Superior Court, in Cambridge on **12/30/2004, at 02:00 PM in Rm 8A (Cambridge),** at which time you may appear and show cause why such application should not be granted.

**Witness, Barbara J. Rouse,** Esquire, Chief Justice of the Superior Court, at Cambridge, Massachusetts this 22nd day of December, 2004.

...................................................................................

Clerk

## (AFFIX RETURN OF SERVICE ON BACK OF SUMMONS)

cvcsumornot_2.wpd 612056 hrgpin gouveial

**County of Middlesex**
**The Superior Court**

CIVIL DOCKET# **MICV2004-05030-D**

RE:    **Sherman v Comcast Phone of Massachusetts, Inc. et al**

TO:Walter Oney, Esquire
      4 Longfellow Place
      Boston, MA 02114

## TRACKING ORDER - X TRACK

You are hereby notified that this case is on the **accelerated (X) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                          DEADLINE

| | |
|---|---|
| Service of process made and return filed with the Court | 03/22/2005 |
| Response to the complaint filed (also see MRCP 12) | 05/21/2005 |
| Firm trial date set | 06/20/2005 |
| Case disposed | 07/20/2005 |

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session **D** sitting in **Rm 7A (Cambridge) at Middlesex Superior Court.**

**Dated: 12/22/2004**

**Edward J. Sullivan**
**Clerk of the Courts**

**BY: Leona Kusmirek**
**Assistant Clerk**

**Location: Rm 7A (Cambridge)**
**Telephone: 617-494-4010 EXT 4251**

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130

Check website as to status of case: http://ma-trialcourts.org/tcic
cvdtracx_2.wpd 2660723 inidoc01 gouveial

TRIAL COURT OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
MIDDLESEX COUNTY

MIDDLESEX, ss.                                    Civil No.        **04-5030**

MICHAEL SHERMAN,                          )
    Plaintiff                                        )
    v.                                                   )
COMCAST PHONE OF                          )
    MASSACHUSETTS, INC.,                )
    and                                                )
UNKNOWN TELEPHONE CARRIERS,    )
    Defendants                                    )

### TEMPORARY RESTRAINING ORDER

This matter came on to be heard on the Plaintiff's *ex parte* motion for a temporary

restraining order. The court finds that the Plaintiff will suffer immediate and irreparable

injury unless the court enters this order. Accordingly, it is hereby ordered and decreed

that Comcast Phone of Massachusetts, Inc. (COMCAST), together with its employees,

agents, subsidiaries, affiliates, and all other persons having actual knowledge hereof, are

hereby temporarily enjoined from altering or destroying any records now or hereafter

existing tending to show (a) the telephone numbers from which Michael Sherman, of 54

Knowles Road, Watertown, MA  02472, has, since November 12, 2004, received

facsimile calls on his residential telephone connected to 617-923-1329; (b) whether such

calls were accompanied by caller-id information and, if so, what that information was;

and (c) the names and addresses of any COMCAST subscribers who placed such calls.

The Plaintiff's application for a preliminary injunction is hereby set down for hearing

at _____ on _____.

This order shall expire 10 days after the date and time stamped hereon unless, within

such time, for good cause shown, it be extended for a period not to exceed 10 days or

unless the party against whom the order is directed consents that it may be extended for a

longer period. If the party who has obtained this temporary restraining order fails to

proceed with an application for a preliminary injunction at the hearing, the court will

dissolve this temporary restraining order. On two days' notice to the party who obtained

this temporary restraining order or on such shorter notice to that party as the court may

prescribe, the adverse party may appear and move its dissolution or modification.

Dated:

_____

Judge of the Superior Court

**TO PLAINTIFF'S ATTORNEY:  PLEASE CIRCLE TYPE OF ACTION INVOLVED: —**
**TORT — MOTOR VEHICLE TORT — CONTRACT —**
**EQUITABLE RELIEF — OTHER**

## COMMONWEALTH OF MASSACHUSETTS

................. MIDDLESEX ................. , ss
[seal]

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. *MICV 2004-05030*

*Michael Sherman* .................................. , Plaintiff(s)

D

*Vision Lab Telecommunications, Inc.,*
*On Demand Marketing LLC,*
*Randy Thomason,* ................. , Defendant(s)
*Highland Marketing LLc,*
*Teledata Solutions, Inc.,*
*The Support Group in Sweden, AB*
*- Bellsouth Corporation*
**SUMMONS**

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

To the above-named Defendant:

You are hereby summoned and required to serve upon ... *Walter Oney, Esq.* ...........................

...................................................... plaintiff's attorney, whose address is *4 Longfellow Place*
*Boston, MA 02114* ........................................, an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at *40 Thorndike St,*
*Cambridge, MA 02141* ...................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, S**Barbara J. Rouse** Esquire, at ..... *Cambridge, MA* ...........................................

the ... *20th* .......................................... day of *June* ...............................................................

...................., in the year of our Lord *2005* ...............................

JUN 2 8 2005

*Edward J. Sullivan*
**Clerk**

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

**PROOF OF SERVICE OF PROCESS**

I hereby certify and return that on *June 20, 2005* ................................................
20........., I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

*By mailing the same, postage prepaid via certified mail, return receipt requested, to Bellsouth Corporation c/o Prentice Hall Corporation, 40 Technology Pkwy South #300, Norcross, GA 30092*

*Walter Oney*

Dated: *June 25, 2005* ....................................................

**N.B.  TO PROCESS SERVER:**
   **PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX
   ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

( ................................. )
( ................................., ........ )
( ................................. )

**COMMONWEALTH OF MASSACHUSETTS**

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. *04-5030*

MIDDLESEX ......ss.

*Michael Sherman* ............Plff.

*VisionLab Telecommunications, Inc., et al.* ............Deft.

**SUMMONS**
(Mass. R. Civ. P. 4)

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ..................... , ss  [seal]  MIDDLESEX | *1 2* | SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT CIVIL ACTION No.  *M I C V 2004-0503C* |

*Michael Sherman* .................................., Plaintiff(s)

v.

*Vision Lab Telecommunications, Inc.,*
*On Demand Marketing LLC,*
*Randy Thomason,* ............., Defendant(s)
*Highland Marketing LLC,*
*Teledata Solutions, Inc.,*
*The Support Group in Sweden, AB*

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon ...... *Walter Oney, Esq.* ...........................
................................................... plaintiff's attorney, whose address is ... *4 Longfellow Place*
*Boston, MA 02114* ........................................., an answer to the complaint which is herewith
served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you
fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also
required to file your answer to the complaint in the office of the Clerk of this court at ... *40 Thorndike St,*
*Cambridge, MA 02141* ................... either before service upon plaintiff's attorney or within a
reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may
have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's
claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse** ~~Suzanne V. DelVecchio~~ Esquire, at ........ *Cambridge, MA* ....................................
the ...... *20th* ....................................... day of ... *June* .............................................
...................., in the year of our Lord .... *2005* ................ .

*Edward J Sullivan*
**Clerk**

NOTES.

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

**PROOF OF SERVICE OF PROCESS**

I hereby certify and return that on *June 20* ....................................................................
20*2005*., I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

*by mailing the same via certified mail, return receipt requested to Teledata Solutions, Inc. in care of Jeff L Daniels, its President, at 471 Onecet Ar., Woodland Hills, CA 91364*

*Walter Ony*

Dated: *June 28, 2005*

**N.B.  TO PROCESS SERVER:**
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

(                                                                    )
(   ...................................................., ......... )
(                                                                    )

**COMMONWEALTH OF MASSACHUSETTS**

MIDDLESEX ......, ss.

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. *MICV 2004-5030*

*Michael Sherman* ............ Plff.

v.

*Vision Lab Telecommunications, Inc., et al,*

**SUMMONS**
(Mass. R. Civ. P. 4)

**TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER**

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION

.......... MIDDLESEX .......... , ss
[seal]

No. *MICV2004-05030*

*Michael Sherman*
......................................... , Plaintiff(s)

*— Vision Lab Telecommunications, Inc.,
On Demand Marketing LLC,
Randy Thomason,* ............... , Defendant(s)
*Highland Marketing LLC,
Teledata Solutions, Inc.
The Support Group in Sweden, AB*

### SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon .... *Walter Oney, Esq.* ......................

*Boston, MA 02114* .......... plaintiff's attorney, whose address is .. *4 Longfellow Place*

..........................................................................., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at .. *40 Thorndike St,*

*Cambridge, MA 02141* ............... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse** Esquire, at ...... *Cambridge, MA* ......................................

the ..... *20th* ......................................... day of ...... *June* .......................................................

...................., in the year of our Lord ...... *2005* ........................................... .

*Edward J Sullivan*

Clerk

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on ... *June 20* ...........................................................
20.*05*..., I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

*by mailing the same via certf/ red mail , return receipt requested, to Visionlab Telecommunications , Inc., in care of their registed agent american Information Services, Inc., one S.E. 3d ave, Third Floor, Miami FL 33131*

*Walter Ony*

Dated: *June 28, 2005* ...............................................................

## N.B.  TO PROCESS SERVER:
### PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

(  ......................................................................  )
(  ......................................................................  )
(  ......................................................................  )

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX ...... ss.

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. *MICV 2004-5030*

*Michael Sherman* ............ Plff.

v.

*Vision Lab Telecommunications, Inc., et al.*

SUMMONS
(Mass. R. Civ. P. 4)