IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MICHAEL SHERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 05-11545-NG |
| VISION LAB TELECOMMUNICATIONS, | ) | |
| INC., ON DEMAND MARKETING LLC, | ) | |
| RANDY THOMASON, HIGHLAND | ) | |
| MARKETING LLC, BELLSOUTH | ) | |
| CORPORATION, TELEDATA SOLUTIONS, | ) | |
| INC., and THE SUPPORT GROUP IN SWEDEN, | ) | |
| AB, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT VISION LAB'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM

Defendant Vision Lab Telecommunications, Inc. ("Vision Lab") respectfully submits this

memorandum of law in support of its motion to dismiss certain claims pursuant to Fed. R. Civ. P.

12(b)(6) for failure to state a claim upon which relief can be granted.

### INTRODUCTION

Plaintiff Michael Sherman ("Plaintiff" or "Mr. Sherman") seeks statutory damages for his

receipt of allegedly unsolicited facsimiles which he alleges were advertisements. He alleges that

these facsimiles were sent in violation of the Telephone Consumer Protection Act ("TCPA"), 47

U.S.C. § 227, FCC regulations including 47 C.F.R. §§ 64.1200, 64.1601(e) and 68.318(d), Mass.

Telephone Solicitation Law, G.L. 159C and 201 C.M.R. §§ 12.00 *et seq.* Plaintiff attempts to

allege multiple statutory and regulatory violations for each facsimile he received in a futile

attempt to inflate his damage claims. Unfortunately for Plaintiff, the TCPA provides no private

right of action for the alleged failure to identify the sender of the faxes and state law cannot be

used to regulate interstate telecommunications transmissions. This mandates dismissal of all of

Plaintiff's claims other than the alleged violation of 47 U.S.C. § 227(b), the sending of unsolicited facsimile advertisements.

He alleges that Vision Lab transmitted at least 55 of these documents. Implicitly acknowledging that Vision Lab is nothing more than a fax broadcaster, i.e., a business that provides the service of faxing its customers' faxes to fax numbers provided by its customers for a fixed fee, and is thereby exempt from the proscriptions of the TCPA, he conclusorily alleges conduct on *information and belief* (without alleging a single fact in support) that he hopes will divest Vision Lab of its safe harbor. Plaintiff's attempts to divest Vision Lab of its safe harbor as a fax broadcaster are insufficient. Much of the grab bag of conduct that he pleads, on purported information and belief, is irrelevant. The rest serves little purpose in that it lacks sufficient definiteness to permit an answer. Accordingly, Vision Lab moves that Plaintiff be required to file a more definite statement even with respect to that portion of the Complaint.

## THE ALLEGATIONS OF THE COMPLAINT

In this diversity case, the First Amended Complaint ("Complaint" or "Cmplt.") alleges that Plaintiff "received more than 90 unsolicited facsimile advertisements on his facsimile machine." (Cmplt., ¶ 13). Plaintiff further asserts that defendant Vision Lab, a fax broadcaster in Florida, transmitted "at least 55 of the unsolicited facsimile advertisements" received by Plaintiff, an individual resident of Massachusetts. (Cmplt., ¶¶ 1, 18). He also alleges that the advertisements failed to provide the identity or location of their sender(s) or to include the "true name and location of the advertiser." (Cmplt., ¶ 15). Plaintiff does not allege any facts which, if proven, would permit a finder of fact to conclude that the documents at issue were, in fact, advertisements as defined by the statutes pursuant to which Plaintiff seeks damages.

Plaintiff also alleges that he "is informed and believes that VISIONLAB had substantial involvement in one or more of" designing the advertisements, choosing the telephone numbers to which the advertisements were sent, controlling the information in margin headings, controlling the caller identification information supplied during the transmission, contracting for removal services, and transmitting the advertisements. (Cmplt., ¶ 19). Plaintiff does not disclose any information that leads him to his purported belief. Neither does he identify the specific conduct allegedly engaged in by Vision Lab with respect to any particular facsimile or the reason why it is relevant to his claims.

Plaintiff purports to seek statutory damages. He alleges that the various statutes and regulations that he cites provide a private right of action for up to $6,500 for each violation. (Cmplt., ¶ 16). However, he identifies no statutory right of action upon which he relies. With respect to the TCPA and regulations promulgated thereunder, the only private right of action applicable to the alleged conduct is contained in 47 U.S.C. § 227(b)(3) and provides $500 damages for each fax that violates that subsection or $1500 if the violation was knowing and willful.

Finally, plaintiff seeks attorneys' fees, without identifying any basis for such an award. (Cmplt., p. 4, Count 1). He also seeks actual *and* statutory damages, despite the fact that the statutorily granted private right of action provides for such damages in the alternative. *Id.*

## ARGUMENT

Plaintiff's attempt to recover $6,500 for each of the allegedly unsolicited faxes at issue, more than a 300% increase over the highest damage amount set forth in §227(b), fails for at least two reasons. First, plaintiff has no private right to pursue the supposed violations of the FCC's fax identification regulations. The structure of the TCPA, the statutory language, and FCC

3

promulgations under the TCPA demonstrate this point.  Second, even if it could be believed that a private right of action exists under the fax identification regulations, there is no reason to find that Congress intended to allow awards of multiple damages relating to the same fax.

Plaintiff's attempt to recover under the Mass. Telephone Solicitation Law, G.L. 159C, and 201 C.M.R. §§ 12.00 *et seq.* fares no better.  Congress understood, intended, and made efforts to account for the fact that, with respect to *interstate* faxes, state law is preempted by federal law.  Finally, because it is undisputed that the TCPA does not allow for an award of attorneys' fees, the claim for fees should be dismissed.

## I.      The Statutory Scheme Precludes Any Private Right of Action for the Alleged Violation of the Fax Identification Requirements.

In evaluating whether a federal statute or regulation provides a private right of action, Congressional intent "is the critical factor." *Conboy v. AT&T Corp.,* 241 F.3d 242, 252 (2nd Cir. 2001)(holding that Congress did not intend to provide a private right of action for violation of certain FCC regulations).  Furthermore, "[t]he question of the existence of a statutory cause of action is, of course, one of statutory construction." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).  In this case, as in *Conboy*, the "text of the Telecommunications Act contains no language that explicitly provides a private right of action for damages for violations of the [] FCC regulations at issue." 241 F. 3d at 252.

### A.      Congress Did Not Provide a  Private Right of Action for Violations of the Fax Identification Requirements.

The structure of the TCPA makes plain that Congress did not, and did not intend to, create a private right of action for alleged violations of the fax identification regulations set forth in 47 CFR §68.318(d) or 47 CFR § 64.1601(e).   Section 227(b)(1)(C) of the TCPA makes it unlawful to send unsolicited advertising faxes.  The same subsection provides a private right of action for "a violation of *this subsection* or *the regulations prescribed under this subsection . . .* "

4

§227(b)(3). Conversely, the statutory fax identification requirements are contained in a *different subsection* -- §227(d) -- a subsection that, while it directs the FCC to issue regulations effectuating its purpose, does *not* contain a private right of action. Instead, Congress reserved enforcement of fax identification violations to state attorney generals and the FCC. *See* 47 U.S.C. §§227(f), 503.

This clear determination of Congress was recognized in *Lary v. Flasch Bus. Consulting*, 878 So.2d 1158, 1164 (Ala. Ct. App. 2003), where the court held that there is no private right of action to enforce the fax identification requirements of the TCPA. In *Lary,* the court affirmed dismissal of plaintiff's claims under §227(d) because Congress expressed no intention to make such violations actionable by private citizens. 878 So.2d at 1164; s*ee also Condon v. Office Depot, Inc.*, 855 So.2d 644, n1 (Fla. Ct. App. 2003) (noting that trial court held that there is no private right of action for alleged identification violations).

Even if the structure of the statute were not sufficiently clear[1], the legislative history also demonstrates that Congress gave careful consideration to the enforcement scheme. Congress expressed its intent that TCPA claims proceed in small claims court, that no attorneys' fees be awarded, and that the amount of damages be "fair" to both parties. Senator Hollings, the author of the Senate bill, stated:

> The substitute bill contains a private right-of-action provision that will make it easier for consumers to recover damages from receiving these computerized calls. The provision would allow consumers to bring an action in State court against any entity that violates the bill. The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action, as this is a matter for State legislators to determine. *Nevertheless, it is my hope that States*

---

[1] It is also worth noting that the TCPA provides another, separate private right of action for violations of subsection (c) and regulations promulgated pursuant to that subsection. 47 U.S.C. § 227(c). Had Congress wished to provide a private right of action for violations of subsection (d), it has amply demonstrated it knew very well how to accomplish that objective. Its failure to do so is telling.

5

> *will make it as easy as possible for consumers to bring such actions, preferably in small claims court.* The consumer outrage at receiving these calls is clear. Unless Congress makes it easier for consumers to obtain damages from those who violate this bill, these abuses will undoubtedly continue.
>
> *Small claims court or a similar court would allow the consumer to appear before the court without an attorney. The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer. However, it would defeat the purposes of the bill if the attorneys' costs to consumers of bringing an action were greater than the potential damages.* I thus expect that the States will act reasonably in permitting their citizens to go to court to enforce this bill.

137 Cong. Rec. S. 16,204 at 16,205-06 (Nov. 7, 1991)(emphasis added).

Implying a private right of action for violations of the fax identification requirements would undermine Congress' goal of making such cases suitable for resolution in small claims court. With a potential recovery of $6,000 under the TCPA for each allegedly offending fax, even a single fax in violation of the TCPA could exceed the jurisdictional limit of most small claims courts.

Both the express language of the statute and its legislative history make abundantly clear that Congress intended *not* to extend a private right of action for violation of the fax identification regulations. Instead, Congress clearly determined that the $500 statutory damages provided pursuant to subsection (b) for the receipt of an unsolicited fax advertisement, with the possibility of trebling for willful violations, was sufficient to compensate an aggrieved party, and left enforcement of the fax identification requirements to state attorney generals and the FCC.

## B. Since 47 C.F.R. §68.318(d) Was Promulgated Under §227(d), There Is No Private Right of Action for Violations of 47 C.F.R. §68.318(d).

Section 227(d) expressly deals with the fax identification requirements and directs the FCC to issue regulations on the subject. *See* §227(d)(2). Accordingly, it is clear that the FCC's fax identification regulations were promulgated under §227(d), since both the statute and the

6

regulations address exactly the same subject matter. Further, the FCC repeatedly and expressly

cited §227(d) in adopting §68.318(d)'s predecessor (§68.318(c)(3)) and then, ultimately,

§68.318(d). Specifically, in a 1997 order considering the purpose and intent of §68.318(c)(3),

the FCC cited §227(d) as its basis for, source of the language of, and statutory authority for

revising the fax identification regulations:

> ### III. DISCUSSION
>
> 6. *The purpose of Section 68.318(c)(3), which parallels the language of the TCPA, [FN23]* is to ensure that consumers will have the information they need to identify the sender of an unsolicited facsimile message.
>
> *FN23. See 47 U.S.C. § § 227(d)(1) and 227(d)(2)*.
>
> ....
>
> ### IV. **ORDERING CLAUSE**
>
> 7. Accordingly, *pursuant to Sections* 4(i)*, 227(d)(2)* and 405(a) of the Communications Act of 1934, as amended, 47 U.S.C. § § 154(i), 227(d)(2) and 405(a), and Section 1.106 of the Commission's Rules, 47 C.F.R. § 1.106, IT IS ORDERED, that MCI's petition for clarification or, in the alternative, reconsideration is GRANTED.

1997 WL 177258 (F.C.C.), 12 F.C.C.R. 4609, 12 FCC Rcd. 4609, 7 Communications Reg.

(P&F) 965 (emphasis added) (attached hereto as Exhibit A). Thus, it is clear that the FCC

intended to adopt §68.318(c)(3), the earlier version of the regulation relied upon by plaintiff,

under the authority of §227(d).

The FCC also cited §227(d) as its authority for adopting the current version of the fax

identification requirements, 47 C.F.R. §68.318(d):

> 146. The TCPA and Commission rules require that any message sent via a telephone facsimile machine contain the date and time it is sent and an identification of the business, other entity, or individual sending the message and the telephone number of the

> sending machine or of such business, other entity, or individual.
> *47 U.S.C. 227(d)(1)(B); 47 CFR 68.318(d).* (emphasis added)

68 FR 44144.

This document was a summary of the FCC's full Report and Order ("Order") in CG

Docket No. 02-278, FCC 03-153, adopted on June 26, 2003 and released July 3, 2003, which

emphasizes the FCC's reliance on §227(d). In that Order, the FCC again cited §227(d) for its

authority to adopt the fax identification regulations.

> 4. Identification Requirements
>
> 203. The TCPA and Commission rules require that any message
> sent via a telephone facsimile machine contain the date and time it
> is sent and an identification of the business, other entity, or
> individual sending the message and the telephone number of the
> sending machine or of such business, other entity, or individual.
> *[FN742]*
>
> *FN742. 47 U.S.C. § 227(d)(1)(B); 47 C.F.R. § 68.318(d)* (emphasis added).

In adopting this Order, the FCC made clear that it did not intend to impact the scope of

the private right of action provided by Congress under §227(b). The FCC stated:

> 206. *The Commission declines to make any determination about
> the specific contours of the TCPA's private right of action.*
> Congress provided consumers with a private right of action, "if
> otherwise permitted by the laws or rules of court of a State." This
> language suggests that Congress contemplated that such legal
> action was a matter for consumers to pursue in appropriate state
> courts, subject to those courts' rules. *The Commission believes it is
> for Congress, not the Commission, to either clarify or limit this
> right of action.*

CG Docket No. 02-278, FCC 03-153, adopted on June 26, 2003 and released July 3, 2003

(emphasis added). Indeed, if the FCC had intended to substantially increase the potential scope

of the private right of action under §227(b) by relying on it as authority for its adoption of the fax

identification regulations, it would have been obligated to give the public clear notice of its

intentions. *See Florida Power & Light Company v. United States,* 846 F.2d 765, 771 (DC Cir. 1988).

Furthermore, any attempt by the FCC to promulgate the fax identification regulations under the statutory subsection pertaining to unsolicited faxes would have exceeded the FCC's authority. The FCC was directed by Congress to issue the fax identification regulations pursuant to a subsection of TCPA that does not contain a private right of action, and clearly the FCC is not empowered to create a private right of action that Congress never envisioned. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 476 U.S. 837, 842-43 (1984) (in reviewing an agency's construction of the statute which it administers, the first question is "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress"). In any event, it never happened: the FCC has repeatedly cited §227(d) as its basis for the fax identification regulations, and has made clear that it never intended to expand the private right of action under the TCPA.

For these reasons, plaintiff's claims for violations of the fax identification requirements should be dismissed.

## II.     Plaintiff May Not Recover Multiple Damages Relating to the Same Fax under the TCPA.

While no published court opinion has squarely addressed the issue of whether a plaintiff may recover multiple damages for multiple alleged fax violations of the TCPA, the idea that a plaintiff may obtain damages for multiple violations of the TCPA by a single telephone call has been addressed and rejected. *See Worsham v. Nationwide Ins. Co.,* 772 A. 2d 868, 876-77 and fn. 5 (Md. Ct. Spec. App. 2000) (citing multiple cases in finding unpersuasive Plaintiff's assertion that multiple violations by a single call are each compensable and holding that

9

"Congress declined to create an unlimited private right of action for all grievances arising from all telephone solicitations").

The reason for the lack of authority in the context of fax violations is obvious. As detailed above, plaintiff has *no* private right of action under 47 CFR § 68.318(d). Consequently, the courts have not had occasion to address whether a plaintiff may recover multiple damages for the same fax. Similarly, this Court need not reach the issue if it finds, as it should, that there is no private right of action under the fax identification regulations.

But even if it could be believed that a private right of action exists under 47 CFR § 68.318(d), Congress plainly did not intend to allow awards of multiple damages relating to the same fax. In *Bell v. United States,* 349 U.S. 81, 84 (1955), the Supreme Court made clear that "if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses . . ." This line of reasoning applies equally to cases alleging violations of federal administrative regulations. In *FAA v. Landy,* 705 F. 2d 624 (2nd Cir. 1983), the defendants challenged the imposition of certain civil penalties imposed for the violation of FAA regulations as duplicative, in that multiple penalties were assessed for the same transaction. In rejecting the defendants' arguments, the court explained that "[t]he test of whether charges are multiplicious is, in important part, one of legislative intent. Congress should indicate clearly that it contemplated separate violations, because a determination that separate violations are involved makes it possible to fine cumulatively." 705 F. 2d at 636.

There is no clear Congressional intent expressed in either the language of the TCPA or its legislative history which would permit a plaintiff to recover multiple damages for a single fax. As to the express language of the statute, §227(b) makes it unlawful to send an unsolicited fax

10

advertisement, provides a private right of action for "a violation of *this subsection* or *the regulations prescribed under this subsection,*" and provides that a plaintiff may "receive $500 in damages for each such violation . . ." The fax identification requirements are contained in a *different subsection* that does *not* contain a private right of action.

The most logical reading of §227 of the TCPA is that Congress envisioned a plaintiff recovering a total of $500 for an unsolicited advertising fax, trebled to $1,500 if the conduct was willful. Congress simply did not intend that a plaintiff could obtain multiple damages for a single fax arising out of alleged violations of the TCPA's identification requirements, given that such requirements are never mentioned in the single subsection providing a private right of action for unsolicited faxes, but are instead placed in a different subsection, the enforcement of which is assigned to the states' attorneys general and the FCC.

Given the failure of Congress to allow them, plaintiff's claims for multiple damages per fax should be dismissed.

## III.    Plaintiff's Claims That The Sending Of The Faxes At Issue Violated Massachusetts' Statutes Governing Facsimile Transmissions Cannot Stand.

### A. The State Lacks Jurisdiction To Regulate Interstate Telecommunications.

The Mass. Telephone Solicitation Law, G.L. 159C and 201 C.M.R. §§ 12.00 *et seq.* cannot be applied to regulate the instrumentalities of interstate commerce, such as the interstate communications at issue here. The faxes at issue in this case are all interstate faxes, having been allegedly sent by Vision Lab in Florida to Plaintiff in Massachusetts. (Cmplt., ¶¶ 1-3, 18).

Simply stated, the Massachusetts state legislature lacks jurisdiction over interstate telecommunication transmissions. Therefore, the statutory and regulatory provisions relied upon by Plaintiff cannot be applied to regulate *interstate* facsimile transmissions, as Plaintiff seeks to do here. This was recognized early in the history of the TCPA. Those appellate courts to

11

consider the issue found that a motivating purpose of the TCPA was to plug a hole in the states' regulatory regime. They have largely concluded that the statute and its legislative history leave no doubt that Congress understood that state laws purporting to govern unsolicited interstate faxes are preempted, and enacted the TCPA to create a method by which to protect the public against such faxes. *See Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Services, Ltd.,* 156 F. 3d 432, 437 (2nd Cir. 1998) (stating that state fax laws were of limited effect because "states do not have jurisdiction over interstate calls"); *Erienet, Inc. v. Velocity Net, Inc.,* 156 F. 3d 513, 515 (3rd Cir. 1998) ("Congress recognized that state regulation of telemarketing activity was ineffective because it could be avoided by interstate operations") Specifically, Congress found that telemarketers were able to evade state regulation merely by using interstate operations. *See, e.g., International Science & Tech. Inst., Inc. v. Inacom Communications, Inc.*, 106 F. 3d 1146, 1154 (4th Cir. 1997).

This jurisdictional divide was more expressly recognized by the United States Supreme Court. *See Smith v. Illinois Bell Tel. Co.*, 282 U.S. 131 (1930) (holding that separation of intra and interstate rate setting was "essential to the appropriate recognition of the competent governmental authority in each field of regulation"); *see also* Communications Act of 1934, 47 U.S.C. sec. 151 et seq. (the "Act") and its predecessor, the Manns-Elkin Act. Neither may the states employ the stratagem of indirectly regulating the use of the instrumentalities of interstate telecommunications by addressing their enactments to regulate the purpose to which such transmissions are applied in order to bridge the gap. *See Sprint Corp. v. Evans*, 818 F. Supp. 1447, 1456 (M.D. Ala. 1993) (enjoining Alabama Attorney General from prosecuting Sprint under Alabama's criminal anti-obscenity statute because it improperly had the effect of seeking to regulate interstate telecommunications transmission) citing *Louisiana Public Serv. Comm'n v.*

*FCC*, 476 U.S. 355 (1986) (the Act broadly preempts state laws with respect to regulations affecting interstate communications).

In enacting the TCPA, Congress took note of the plethora of state legislation seeking to regulate unsolicited advertising faxes. In doing so, it recognized that these statutes must necessarily fail of their intended purpose because the fax advertiser could easily escape their reach by the simple stratagem of sending its fax ads from out of state. The reason is simple -- the States may not enact any laws regulating interstate commerce, the exclusive province of the U.S. Congress, pursuant to the United States Constitution. As the legislative history for the TCPA indicates:

> Many consumers and consumer representatives believe that legislation is necessary to protect them from these calls. One survey found that about 75 percent of persons contacted favored some form of regulation of these calls, and one-half of these favored prohibiting all unsolicited calls.
>
> As a result, over 40 States have enacted legislation limiting the use of ADRMPs or otherwise restricting unsolicited telemarketing. These measures have had limited effect, however, because **States do not have jurisdiction over interstate calls. Many States have expressed a desire for Federal legislation to regulate interstate telemarketing calls to supplement their restrictions on intrastate calls.**

TELEPHONE CONSUMER PROTECTION ACT OF 1991, P.L. 102-243, S. REP. 102-178 at 3

(1991) (emphasis added).

The TCPA contains language addressing state law preemption and specifically carves out state laws affecting *intrastate* facsimiles:

> "[N]othing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive **intrastate** requirements or regulations . . . ."

47 U.S.C. § 227(e)(1) (in relevant part; emphasis added). Congress, by expressly stating that

"*intrastate* requirements or regulations . . . which prohibits" unsolicited faxes are not preempted,

knew and intended that *interstate* requirements and regulations were and are preempted. Indeed,

13

any other construction would render § 227(e)(1) superfluous. If Congress did not understand and intend that *some* state laws would be preempted, § 227(e)(1) would have no purpose.

Indeed, Congress' primary motivation in enacting the TCPA was to create a law that could reach interstate transmissions. §227, Congressional Statement of Findings (7). The Massachusetts statutory and regulatory regime cannot regulate facsimiles sent from outside of the state of Massachusetts. The faxes at issue in this case were sent from Florida. Accordingly, Plaintiff's claims against Vision Lab for interstate fax transmissions based upon putative violations of state statutes or regulations must be dismissed.

## B.    The Massachusetts Telephone Solicitation Law Does Not Apply To Fax Ads.

The Massachusetts Telephone Solicitation Law provides a private right of action to "a person who has received more than 1 unsolicited telephonic sales call within a 12-month period…" M.G.L.A. 159C § 8(b) (Westlaw 2005). An "unsolicited telephonic sales call" is defined as "[a] telephonic sales call other than a call made:

(d) in which the sale of goods and services is not completed, and payment or authorization of payment is not required, until after a face-to-face sales presentation by the telephone solicitor or a meeting between the telephone solicitor and customer."

201 CMR 12.01 (Westlaw 2005). Plainly, it is impossible to complete a sale by receiving a fax ad and Plaintiff has not alleged that any payment or authorization was required, or even requested by any of the fax ads at issue. Accordingly, Plaintiff has failed to state a claim against Vision Lab for any violation of Massachusetts law for which he has a private right of action.

## IV.    Plaintiff Is Not Entitled to Recover Attorneys' Fees.

The TCPA does not provide for an award of attorneys' fees. Absent statutory authorization or contract, no attorneys' fees may be recovered. As explained by the United States Supreme Court, "attorneys' fees generally are not a recoverable cost of litigation absent

14

explicit congressional authorization." *Key Tronic Corporation v. United States*, 511 U.S. 809,

814 (1997)(citations omitted). Accordingly, this prayer for relief must be stricken.

## CONCLUSION

For the reasons set forth above, the claims relating to the alleged violations of 47 C.F.R.

§§ 64.1200, 64.1601(e) and 68.318(d), Mass. Telephone Solicitation Law, G.L. 159C and 201

C.M.R. §§ 12.00 *et seq.*, and the request for an award of attorney's fees should be dismissed with

prejudice.

Dated: August 24, 2005

> VISION LAB TELECOMMUNICATIONS, INC.,
>
> By its attorneys,
>
> Richard M. Zielinski
> _____
> Richard M. Zielinski (BBO #540060)
> GOULSTON & STORRS, P.C.
> 400 Atlantic Avenue
> Boston, MA 02110-3333
> (617) 482-1776
>
> Of Counsel:
> Samuel S. Cohen
> Neal Gerber Eisenberg LLC
> 2 North LaSalle Street
> Suite 2200
> Chicago, IL 60602

## Westlaw.

1997 WL 177258 (F.C.C.), 12 F.C.C.R. 4609, 12 FCC Rcd. 4609, 7 Communications Reg. (P&F) 965

**(Cite as: 12 FCC Rcd. 4609)**

H

· Federal Communications Commission (F.C.C.)

Order on Further Reconsideration

IN THE MATTER OF RULES AND REGULATIONS IMPLEMENTING THE TELEPHONE CONSUMER
PROTECTION ACT OF 1991
CC Docket 92-90

FCC 97-117
Adopted:  April 3, 1997
Released:  April 10, 1997

**\*4609** By the Commission:

### I.  INTRODUCTION

1.  In a Report and Order released on October 16, 1992, [FN1] the Commission
amended its rules to establish procedures governing unwanted telephone
solicitations and to regulate the use of automatic telephone dialing systems,
prerecorded or artificial voice messages and telephone facsimile machines.  In a
Memorandum Opinion and Order released on August 7, 1995, [FN2] the Commission
addressed arguments made by parties seeking reconsideration or clarification of
various matters discussed in the Report and Order.  On September 14, 1995, MCI
Telecommunications Corporation ("MCI") filed a petition for clarification or, in
the alternative, reconsideration of our Memorandum Opinion and Order, that
required both a facsimile broadcast service provider and the entity on whose
behalf the facsimile is transmitted be identified on each facsimile sent by the
facsimile broadcaster.  MCI contends that Section 68.318 [FN3] of the Commission's
rules requires the identification of only one entity, the one responsible for the
content of the facsimile. [FN4]  The Commission issued a Public Notice [FN5] on
October 6, 1995, seeking **\*4610** comment on the MCI petition.  Three comments [FN6]
were filed in response to the Public Notice, and MCI filed a reply.  We grant
MCI's request for clarification or, in the alternative, reconsideration of our
Memorandum Opinion and Order by stating that a message sent by a facsimile
broadcast service provider must contain the identification and telephone number of
the entity on whose behalf the message was sent.          ₄

### II.  BACKGROUND

2.  The Telephone Consumer Protection Act of 1991 (TCPA), Public Law 102- 243
(1991), amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 et
seq., by adding a new section, 47 U.S.C. § 227.  The TCPA restricted the use of
telephone equipment for telemarketing purposes by imposing restrictions on the use

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1997 WL 177258 (F.C.C.), 12 F.C.C.R. 4609, 12 FCC Rcd. 4609, 7 Communications Reg. (P&F) 965

**(Cite as: 12 FCC Rcd. 4609)**

of automatic dialing systems, of artificial or prerecorded voice messages, and of telephone facsimile machines to send unsolicited advertisements.  The TCPA prohibited the transmission of unsolicited advertisements by telephone facsimile machines and required those using telephone facsimile machines or transmitting artificial or prerecorded voice messages to identify themselves to message recipients.  The Commission sought to implement the TCPA in a way that reasonably accommodated individuals' rights to privacy as well as the legitimate business interests of telemarketers.  We amended Section 68.318 of the Commission's rules to require that all facsimile transmissions identify the business, entity or individual sending the message and the telephone number of the sending machine or of such business, entity or individual sending the message.  In the Memorandum Opinion and Order we further stated that facsimile broadcast service providers [FN7] also must comply with these identification requirements.  We required that a facsimile broadcast service provider transmitting messages for multiple entities ensure that its own identifying information and the identifying information of each entity on whose behalf it has sent messages appear separately on facsimile broadcasts. [FN8] We reconsider our decision in the Memorandum Opinion and Order and require that a facsimile broadcast service provider ensure that the identifying information of the entity on whose behalf the provider sent messages appear on facsimile messages.

    3.  MCI, Sprint and Ameritech argue that the Commission erred in stating that the facsimile broadcast service provider must ensure that two identifications, that of the entity on whose behalf the facsimile was sent and that of the facsimile broadcast service provider, appear **\*4611** on each facsimile message the facsimile broadcast service provider sends. [FN9]  While Ameritech argues that the Commission erred in requiring dual identification, it requests that the Commission allow a facsimile broadcast provider to supply dual identification if it chooses to do so. [FN10]  Smith, however, requests that the Commission deny MCI's petition and affirm the requirement that both the facsimile broadcast service provider and the entity on whose behalf the facsimile was sent place identifying information on a facsimile message. [FN11]

    4.  MCI, Sprint, and Ameritech contend that Section 68.318(c)(3) of the Commission's rules requires that only one entity be identified as the sender of the facsimile and that the Commission's Memorandum Opinion and Order creates an additional obligation by requiring the identification of two entities. [FN12] Section 68.318(c)(3) provides that:
    It shall be unlawful for any person within the United States to use a computer or other electronic device to send any message via a telephone facsimile unless such message contains, in a margin at the top or bottom of each transmitted page or on the first page of the transmission, the date and time it is sent and an identification of the business, other entity, or individual sending the message [emphasis added] and the telephone number of the sending machine or of such business, other entity, or individual ... Telephone facsimile machines manufactured on and after December 20, 1992, must clearly mark such identifying information on each transmitted message. [FN13]
MCI asserts that the "message sender" is the entity responsible for the content of the message and only its identifying information should be placed on the facsimile

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1997 WL 177258 (F.C.C.), 12 F.C.C.R. 4609, 12 FCC Rcd. 4609, 7 Communications Reg. (P&F) 965

**(Cite as: 12 FCC Rcd. 4609)**

message.  MCI states that the facsimile broadcast service provider is not responsible for the content of the message that it transmits and, therefore, it should not be identified as the message sender. [FN14]  Ameritech asserts that neither the TCPA nor the Commission's orders in this docket state an intent to define a facsimile broadcast service provider as a "sender" under Section 68.318(c)(3). [FN15]  Notwithstanding these claims, Smith states that Section 68.318(c)(3) requires that identification of the facsimile broadcast service provider be placed on the facsimile message and Section 64.1200(e)(iv), the rule regarding identification of a telephone solicitor, requires that identification of the entity whom **\*4612** the facsimile broadcaster represents (by transmitting the facsimile) be contained within the body of the facsimile. [FN16]

   5.  Parties also argue that facsimile broadcast service providers are not ultimately liable for failure to comply with Section 64.1200(a)(3), the rule banning unsolicited facsimile advertisements, [FN17] and thus there is no reason for their identifying information to appear on the facsimile message. [FN18] MCI and Sprint assert that if a facsimile message is sent in violation of Section 64.1200(a)(3), the identification and telephone number of the entity on whose behalf the facsimile was sent will give the recipient consumer the information necessary to initiate a contact or complaint and to prevent the consumer from receiving additional unwanted facsimiles. [FN19]  Parties contend that dual identification will confuse facsimile recipients as to who is responsible for the message and may cause consumers incorrectly to link the facsimile broadcast service provider to the content of the message. [FN20]  In contrast, Smith reports that dual identification may allow consumers to trace unwanted facsimiles through the broadcaster when the identity of the entity on whose behalf the facsimile was sent is not clear. [FN21]  After reviewing the complaints filed with the Commission under the TCPA, Smith states that in many facsimile complaint cases there is a lack of sufficient identifying information by the sender of the facsimile message. [FN22]  Finally, Smith notes that a facsimile broadcast service provider could put a disclaimer on the facsimile message to ensure that the recipient does not associate it with the content of the message.

### III.  DISCUSSION

   6.  The purpose of Section 68.318(c)(3), which parallels the language of the TCPA, [FN23] is to ensure that consumers will have the information they need to identify the sender of an unsolicited facsimile message. [FN24]  Section 68.318(c)(3) requires that all facsimile transmissions **\*4613** provide two informational elements: (1) the identity of the business, entity or individual sending the message; and (2) the telephone number of the sending machine or of such business, entity or individual sending the message.  MCI contends that only the identity and telephone number of the "message sender," which it defines as the entity responsible for the content of the message, should appear on a facsimile message sent by a facsimile broadcast service provider.  Having reviewed the pleadings, the TCPA's statutory language [FN25] and the legislative history of the TCPA, [FN26] we reconsider our determination in our Memorandum Opinion and Order that a facsimile broadcast service provider must ensure that its identifying information and the identifying information of the entity on whose behalf it sent

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1997 WL 177258 (F.C.C.), 12 F.C.C.R. 4609, 12 FCC Rcd. 4609, 7 Communications Reg. (P&F) 965

**(Cite as: 12 FCC Rcd. 4609)**

facsimile messages must appear on the messages. We clarify that the sender of a facsimile message is the creator of the content of the message.  We find that the Section 227(d)(1) [FN27] of the statute mandates that a facsimile include the identification of the business, other entity, or individual creating or originating a facsimile message and not the entity that transmits the message. [FN28]  We do not find anything in the TCPA that would prohibit a facsimile broadcast provider from supplying identification of itself and the entity originating a message if it arranges with the message sender to do so.  This, however, is a matter between the parties, and we emphasize that in cases where parties choose to place dual identification upon the facsimile message, it must be clear which entity is the content originator and which entity is merely the transmitter of the message. Thus, we protect consumers' rights to identify the sender of an unsolicited facsimile message without unduly hindering the business practices of facsimile broadcast service providers.

IV.  ORDERING CLAUSE

   7.  Accordingly, pursuant to Sections 4(i), 227(d)(2) and 405(a) of the Communications Act of 1934, as amended, 47 U.S.C. §§ 154(i), 227(d)(2) and 405(a), and Section 1.106 of the Commission's Rules, 47 C.F.R. § 1.106, IT IS ORDERED, that MCI's petition for clarification or, in the alternative, reconsideration is GRANTED.

**\*4614** FEDERAL COMMUNICATIONS COMMISSION

William F. Caton

Acting Secretary

FN1. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 7 FCC Rcd 8752 (1992) (Report and Order).

FN2. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum Opinion and Order, 10 FCC Rcd 12391 (1995) (Memorandum Opinion and Order).

FN3. 47 C.F.R. § 68.318.

FN4. MCI Petition at 1.

FN5. Public Notice, Commission Seeks Comment on MCI Petition for Clarification and/or Reconsideration of Commission Order Finalizing Rules Implementing the Telephone Consumer Protection Act, DA 95-2030, 10 FCC Rcd 13168 (1995).

FN6. Comments were filed by Sprint Communications Company L.P. ("Sprint"), Russell R. Smith ("Smith") and the Ameritech Operating Companies ("Ameritech").

FN7. Facsimile broadcast service providers are businesses or individuals that transmit messages on behalf of other entities to selected destinations and that do

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1997 WL 177258 (F.C.C.), 12 F.C.C.R. 4609, 12 FCC Rcd. 4609, 7 Communications Reg. (P&F) 965

**(Cite as: 12 FCC Rcd. 4609)**

not determine either the message content or to whom they are sent.

FN8. See Memorandum Opinion and Order, 10 FCC Rcd at 12407, para. 35.

FN9. See MCI Petition at 1; Sprint Comments at 2-3; Ameritech Comments at 2; MCI Reply at 2.

FN10. See Ameritech Comments at 2.

FN11. See Smith Comments at 1.

FN12. See MCI Petition at 1; Sprint Comments at 3; Ameritech Comments at 2; MCI Reply at 1.

FN13. 47 C.F.R. § 68.318(c)(3).

FN14. See MCI Petition at 1-2; Sprint Comments at 2; Ameritech Comments at 2; MCI Reply at 1.

FN15. See Ameritech Comments at 2, fn. 4.

FN16. See Smith Comments at 2.

FN17. See Memorandum Opinion and Order, 10 FCC Rcd at 12407, para. 35.

FN18. See Sprint Comments at 2-3; MCI Reply at 1-2.

FN19. See MCI Petition at 2; Sprint Comments at 2; MCI Reply at 1.

FN20. See MCI Petition at 2; Sprint Comments at 3; Ameritech Comments at 2; MCI Reply at 1-2.

FN21. See Smith Comments at 2.

FN22. See Smith Comments at 1, Appendix.

FN23. See 47 U.S.C. §§ 227(d)(1) and 227(d)(2).

FN24. In our Report and Order, we noted that carriers who transmitted unsolicited facsimile advertisements on behalf of other entities would be not liable for failure to comply with Section 64.1200(a)(3), the rule banning unsolicited facsimile advertisements, unless they had "a high degree of involvement" in sending the unsolicited facsimile messages or had actual notice of the illegal messages and failed to take steps to prevent such transmissions.  See Report and Order, 7 FCC Rcd at 8779, para. 54.

FN25. See 47 U.S.C. §§ 227(d)(1) and 227(d)(2).

FN26. See S. Rep. No. 178, 102d Cong., 1st Sess. 9 (1991).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1997 WL 177258 (F.C.C.), 12 F.C.C.R. 4609, 12 FCC Rcd. 4609, 7 Communications Reg. (P&F) 965

**(Cite as: 12 FCC Rcd. 4609)**

FN27. See 47 U.S.C. § 227(d)(1).

FN28. See Memorandum Opinion and Order, 10 FCC Rcd at 12407, fn. 90. S. Rep. No. 178, 102d Cong., 1st Sess. 9 (1991) states that:

    regulations concerning the use of these machines apply to the persons initiating the telephone call or sending the message and do not apply to the common carrier or other entity that transmits the call or message and that is not the originator or controller of the content of the call or message.

1997 WL 177258 (F.C.C.), 12 F.C.C.R. 4609, 12 FCC Rcd. 4609, 7 Communications Reg. (P&F) 965

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.