IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL SHERMAN,<br><br>Plaintiff,<br><br>VISION LAB TELECOMMUNICATIONS, INC., ON DEMAND MARKETING LLC, RANDY THOMASON, HIGHLAND MARKETING LLC, BELLSOUTH CORPORATION, TELEDATA SOLUTIONS, INC., and THE SUPPORT GROUP IN SWEDEN, AB,<br><br>Defendants. | )<br>)<br>)<br>)<br>) Case No. 05-11545-NG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT VISION LAB'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR A MORE DEFINITE STATEMENT**

Defendant Vision Lab Telecommunications, Inc. ("Vision Lab") respectfully submits this memorandum of law in support of its motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e).

**INTRODUCTION**

In his First Amended Complaint ("Complaint" or "Cmplt.") Plaintiff Michael Sherman ("Plaintiff" or "Mr. Sherman") seeks statutory damages for his receipt of allegedly unsolicited facsimiles which he alleges were advertisements. He alleges that, on information or belief, the senders or advertisers of these facsimiles violated one or more of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, FCC regulations including 47 C.F.R. §§ 64.1200, 64.1601(e) and 68.318(d), Mass. Telephone Solicitation Law, G.L. 159C and 201 C.M.R. §§ 12.00 *et seq.* (Cmplt., ¶ 16). Plaintiff alleges, again on information or belief, that Vision Lab had substantial involvement in one or more of designing the advertisements, choosing the telephone numbers to which the advertisements were sent, controlling the information in margin

headings, controlling the caller identification information supplied during the transmission, contracting for removal services, and transmitting the advertisements. (Cmplt., ¶ 19). Plaintiff does not disclose any information that leads him to his purported belief. Neither does he identify the specific conduct allegedly engaged in by Vision Lab with respect to any particular facsimile or the reason why it is relevant to his claims.

Vision Lab has moved to dismiss Plaintiff's putative state law and fax identification claims for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Here, Vision Lab also seeks to compel a more definite statement of these claims and Plaintiff's presumed claim pursuant to 47 U.S.C. § 227(b).

## ARGUMENT

**I.     Relief Under Rule 12(e) Is Appropriate Where A Complaint Is So Vague Or Ambiguous That A Defendant Cannot Frame A Response.**

The Federal Rules of Civil Procedure require a Plaintiff to set forth a "short and plain statement of the claim that will give the defendant fair notice of the claim" and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Conley v. Gibson*, 355 U.S. 41, 47 (1957). However, sufficient notice is not provided where the pleading is so "vague or ambiguous that a party cannot reasonably be required to frame a respons[e]," and a court may grant relief pursuant to Federal Rule of Civil Procedure 12(e) by requiring the plaintiff to provide a more definite statement of his claims. Fed. R. Civ. P. 12(e); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002).

The Complaint merely alleges that Vision Lab *might have* engaged in unspecified conduct that *might have* violated one or more statutes or administrative code provisions promulgated by either the federal or state government. This is little more than pleading "I think I may have a cause of action." While Vision Lab might reasonably answer "I think not" as its

response to such allegations, that would not constructively advance resolution of this matter. Federal pleading standards may be liberal, but they still must give the defendant sufficient notice of the basis of the claim to permit the defendant to know what conduct is complained of and why so that an answer may be framed. Mr. Sherman's complaint fails that very low threshold. *See, e.g., Fennell v. Svenska Amerika Linien A/B*, 23 F.R.D. 116, 117 (D. Mass. 1958) ("mere assertion that if a man was injured aboard ship it was due to third-party defendant's negligence and/or breach of contract" is not enough to withstand a motion to make a more definite statement).

In short, a fair reading of the Complaint fails to put Vision Lab on notice as to what claims Mr. Sherman is making against Vision Lab and what conduct by Vision Lab gives rise to these claims. This is insufficient. *See, e.g., Tarabolski v. Town of Sharon*, Civ. A. No. 94-10045-Z, 1995 WL 169120, *1 (D. Mass., Mar. 16, 1995) (where the complaint does "not in any way assist in understanding the claims asserted" the plaintiff should be required to provide a more definite statement or the complaint may be dismissed with prejudice) (attached hereto as Exhibit A).

II. **A Complaint That Does Not Permit A Proper Answer To Be Framed Should Be Dismissed Even If Its Allegations Can Be Read To Allege All The Elements Of A Claim.**

   A. **The Complaint's Allegations Must Permit A Proper Answer**

Although it may be possible for Plaintiff to state a claim for a violation of the TCPA by alleging facts consistent with the present allegations of the Complaint, the Complaint as it presently stands is insufficient. It is so vague that any facts would be consistent with the allegations and, because no specific claim is made, any claim might be considered to be contained within its pages. This is not enough to pass muster in Federal Court. *See Acciavatti v. Prof'l Serv. Group, Inc.*, 982 F. Supp. 69, 78 (D. Mass. 1997) (a motion for a more definite

3

statement is properly granted when the complaint is so vague that the defendant cannot be expected to frame a proper answer "even though the complaint evidences all necessary elements of the claim").

**B.   Where Plaintiff Alleges Statutory Or Code Violations, Plaintiff Must Specify The Statutes Or Code Sections Allegedly Violated.**

In his Complaint, Mr. Sherman lists a series of federal and state statutes and administrative code sections and alleges, on information and belief, that one or more of them may have been violated by Vision Lab. This is insufficient. The Complaint must, at the very least, put Vision Lab on notice of which statute or administrative code section was allegedly violated and pursuant to which Mr. Sherman seeks a remedy. *See Turbosound, Inc. v. Eastern Acoustic Works, Inc.*, 672 F. Supp. 575, 577 (D. Mass. 1987) (holding that Plaintiff must specify which statue on which it bases its claim).

## CONCLUSION

For the reasons set forth above, Mr. Sherman's Complaint should be stricken in its present form and he should be required to provide a more definite statement if he chooses to replead his putative claims.

Dated: August 24, 2005

VISION LAB TELECOMMUNICATIONS, INC.,

By its attorneys,

*Richard M. Zielinski*
Richard M. Zielinski (BBO #540060)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, MA 02110-3333
(617) 482-1776

Of Counsel:
Samuel S. Cohen
Neal Gerber Eisenberg LLC
2 North LaSalle Street, Ste. 2200
Chicago, IL 60602

Westlaw.

Not Reported in F.Supp.                                                                                                  Page 1

Not Reported in F.Supp., 1995 WL 169120 (D.Mass.)

**(Cite as: 1995 WL 169120 (D.Mass.))**

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Massachusetts.
Alex A. TARABOLSKI,
v.
TOWN OF SHARON; Roni Thaler, Henry D. Katz
and Norman Katz, Members of the
Sharon Board of Selectmen; Donald Williams,
Frederick J. Jones, Jr., Bernard
Coffey and Joseph Bernstein, Officers of the Sharon
Police Department; Timothy
Earley, David Martin and James Polito, Officers of
the Sharon Fire Department.
**Civ. A. No. 94-10045-Z.**

March 16, 1995.

*MEMORANDUM OF DECISION*

ZOBEL, District Judge.

*1 Plaintiff Alex A. Tarabolski alleges that on January 18, 1991, Donald Williams, an officer of the Sharon Police Department, in violation of his federal civil rights and various state laws, broke into his home and forced him to enter a hospital for a psychiatric examination. Thereafter, Williams allegedly wrote false reports concerning this incident. Although these allegations constitute the gravamen of his complaint, plaintiff has also sued Chief Bernard Coffey, who has since retired; the present Chief Joseph Bernstein; and Sergeant Frederick J. Jones, Jr. Chief Coffey is said to have been derelict in his supervisory duties; Chief Bernstein "denied the plaintiff a hearing"; and they, together with Sergeant Jones, "were part of a conspiracy to do harm to the plaintiff." A second set of defendants is comprised of the Selectmen of the Town of Sharon, Roni Thaler, Henry D. Katz and Norman Katz. Plaintiff charges that he complained to them in May 1993 about Williams' conduct and that they "denied the defendant [sic] a hearing on this matter and deprived him of his civil rights." The complaint also names two emergency medical technicians and members of the Sharon Fire Department, Timothy Earley and David Martin, and Fire Chief James Polito. Plaintiff claims that the "[d]efendant, Emergency Medical Technician, used excessive force, harassment and intimidation," and that "[t]he defendant James Polito is responsible for the actions of the people working in the Sharon Fire Department." The remainder of the complaint lays out the indignities inflicted upon plaintiff at the two hospitals to which he was taken. The Town appears only in the prayers for relief: plaintiff seeks an order that it "institute adequate hiring, testing, instructing, supervision, training, disciplinary, and termination proceedings to more fully ensure that citizens are not subjected to harassment and intimidation...."

The selectmen and fire department defendants had earlier moved for a more definite statement which, given the conclusory nature of most of the allegations, the Court allowed. In response, plaintiff stated "that he refuse [d] to change the complaint." Although that statement was followed by three pages reiterating the events of January 18, 1991, they do not in any way assist in understanding the claims asserted against these defendants. They have therefore moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(e). Even read generously, the complaint does not appear to state any cognizable claims against these defendants and the Town, and given plaintiff's intransigence and unwillingness to elucidate, the motion to dismiss is allowed, with prejudice.

The police department defendants have moved for summary judgment. These are the facts according to plaintiff. He telephoned the Sharon Police

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1995 WL 169120 (D.Mass.)

**(Cite as: 1995 WL 169120 (D.Mass.))**

Page 2

Department on the evening of January 18, 1991, to complain about his neighbors. In response to the call, Williams entered plaintiff's home and then left to resolve the problem with the neighbors. He returned five minutes later and, using the key left in the lock, let himself in through the back door. Williams then told plaintiff that he was taking plaintiff to the Norwood Hospital, and an ambulance arrived two minutes later. Williams was allegedly motivated by a desire to "teach plaintiff a lesson" for threatening legal action against him on an earlier occasion.

*2 Williams stated, in his affidavit in support of the motion, that he was dispatched to plaintiff's home at 10:00 p.m. When he arrived plaintiff told the officer that his neighbors were harassing him. Upon Williams' request, plaintiff allowed him into the kitchen where plaintiff reiterated that his neighbors had been harassing him for twenty-eight years and he threatened that he was "going to get them." He admitted that he had been drinking vodka; he also became verbally abusive and claimed people "were out to get him." According to the affidavit, plaintiff "said he wanted the Chief of Police 'six feet under.' " Williams was concerned for plaintiff's own safety as well as the safety of his neighbors. He therefore called for an ambulance and placed plaintiff in protective custody while he awaited its arrival.

The records of the Norwood Hospital reveal that when plaintiff arrived at the hospital a few minutes later he was "screaming and combative" such that he was placed in "4-point restraints." The next morning he was transferred to a locked psychiatric unit at Fuller Memorial Hospital and involuntarily admitted for a ten-day psychiatric evaluation.

1. *Standard for Summary Judgment*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). Facts are material if they might affect the outcome of the litigation. *Anderson,* 477 U.S. at 247. A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The facts must be viewed in the light most favorable to the party opposing the motion. *Continental Casualty Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 373 (1st Cir.1991).

2. *Federal claims against Williams*

When a police officer performing a discretionary function, "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" he is protected by the doctrine of qualified immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). That is, he is not liable if he acted in an objectively reasonable manner. *Hoffman v. Reali,* 973 F.2d 980, 985 (1st Cir.1992). In the context of this case then the question is whether another officer confronted with the same situation as Williams, and having the same information available to Williams, would reasonably have come to the conclusion that plaintiff was a danger to himself or others such that he should be placed in protective custody.

Given the constellation of undisputed facts that plaintiff had called the police because of alleged harassment by his neighbors, that he had admittedly been drinking, that he was abusive, and that he made both paranoid and threatening statements, a reasonable officer was fully warranted in concluding that he required protective custody to safeguard both him and his neighbors. Because Williams then followed the prescribed statutory procedures for just such a situation, he is entitled to qualified immunity.

3. *Federal Claims against Jones, Coffey and Bernstein* [FN1]

*3 Plaintiff's claims against the remaining police department defendants fail as a matter of law. His charge that these defendants conspired to deprive him of his federal civil rights in violation of 42 U.S.C. § 1985 (1988) requires at least an allegation

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 3
Not Reported in F.Supp., 1995 WL 169120 (D.Mass.)
**(Cite as: 1995 WL 169120 (D.Mass.))**

of facts sufficient to show an agreement between them to deprive him of his civil rights because of his membership in a protected class. *See United Bhd. of Carpenters & Jointers, Local 610 v. Scott,* 463 U.S. 824, 834-35 (1983). The complaint is utterly devoid of such facts.

To the extent plaintiff complains that Chief Coffey "was responsible for the actions of the people working in the Sharon Police Department," he butts up against the principle that under 42 U.S.C. § 1983, supervisory liability may not rest upon a theory of *respondeat superior. Febus-Rodriguez v. Betancourt-Lebron,* 14 F.3d 87, 91 (1st Cir.1994). Supervisors are only liable for their own acts or omissions. *Id.* at 91-92. Plaintiff states no facts that tie Coffey to the events that evening beyond his position as the Chief of the Sharon Police Department.

The claim against Bernstein is grounded in the allegation that he denied plaintiff a hearing concerning the events in issue and failed to resolve the alleged deprivation of his civil rights. However, plaintiff fails to mention any authority entitling him to a hearing. Moreover, Bernstein did not even assume the position of Chief until well after the incident in October 1992.

4. *State claims*

In view of the allowance of the motion for summary judgment on the federal claims, the state law tort claims of false imprisonment, malicious prosecution, abuse of process, and intentional infliction of emotional distress are subject to dismissal as a matter of discretion under *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966). They also fail on the merits. The complaint is silent as to which defendant is charged with the several violations of state law and as to most of the elements of the claims plaintiff apparently asserts.

The claim of false imprisonment, which appears to target Williams, fails because Williams acted within the scope of his legal authority to restrain plaintiff until the ambulance arrived. Massachusetts law provides:

[i]n an emergency situation, if a physician, qualified psychologist or qualified psychiatric nurse mental health clinical specialist is not available, a police officer, who believes that failure to hospitalize a person would create a likelihood of serious harm by reason of mental illness may restrain such person and apply for the hospitalization of such person for a ten day period....

Mass.Gen.Laws Ann. ch. 123, § 12(a) (West 1986 & Supp.1994). When a police officer follows these statutory procedures, as Williams did, he is not liable for false imprisonment. Mass. Gen. Laws Ann. ch. 123, § 22 (West 1986 & Supp.1994); *cf. Beaumont v. Segal,* 283 N.E.2d 858, 861 (Mass.1972).

The tort of malicious prosecution requires proof that defendant brought a criminal or civil case maliciously and without probable cause which was then terminated in plaintiff's favor. *Antelman v. Lewis,* 480 F.Supp. 180, 186 (D.Mass.1979). Plaintiff here does not even allege the filing of any kind of complaint, malicious or otherwise.

Insofar as the complaint may be read to charge Williams with abuse of process, it again fails to allege any facts to support the necessary elements of this tort. Plaintiff would have to show that " '(1) 'process' was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage.' " *Datacomm Interface v. Computerworld,* 489 N.E.2d 185, 195 (Mass.1986) (quoting *Jones v. Brockton Pub. Markets,* 340 N.E.2d 484, 485 (Mass.1975)). Assuming *arguendo* that Williams' actions constituted "process," the record does not support any assertion that those actions were taken for an illegitimate purpose.

*4 The claim for intentional infliction of emotional distress also lacks a factual basis. Plaintiff would have to produce some evidence to show "(1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress." *Sena v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1995 WL 169120 (D.Mass.)
**(Cite as: 1995 WL 169120 (D.Mass.))**

*Commonwealth,* 629 N.E.2d 986, 994 (Mass.1994). This, too, appears to be directed at Williams, and his conduct cannot be deemed "extreme and outrageous" as a matter of law. Neither calling an ambulance nor detaining plaintiff until it arrived were, under the circumstances, unreasonable.

*Conclusion*

The motion to dismiss of the Town of Sharon, the Selectmen, and the Fire Department defendants (# 28) is allowed. The motion for summary judgment of the Police Department defendants (# 32) is allowed. Judgment may be entered dismissing the complaint, with prejudice, against defendants Roni Thaler, Henry D. Katz, Norman Katz, Timothy Earley, David Martin and James Polito, as well as the Town of Sharon. Judgment may be entered for defendants Donald Williams, Frederick J. Jones, Jr., Bernard Coffey and Joseph Bernstein.

> FN1. Although plaintiff does not specify whether he is suing defendants personally or in their official capacities, or both, plaintiff appears to assert only personal liability. If he were to sue defendants in their official capacities, liability would run against the government entity for whom they worked. *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985). However, plaintiff does not claim that official policy or custom played a part in the alleged violation of federal law. *See Monell v. Department of Social Servs.,* 436 U.S. 658, 694-95 (1978) (holding that official policy or custom is required to hold a municipality liable under § 1983).

Not Reported in F.Supp., 1995 WL 169120 (D.Mass.)

**Motions, Pleadings and Filings (Back to top)**

• 1:94CV10045 (Docket)
(Jan. 11, 1994)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.