UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL SHERMAN,          )         Civil No. 05-11545-NG
    Plaintiff            )
    v.                 )
VISION LAB TELECOMMUNICATIONS, )
    INC., et al.,         )
    Defendants        )

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO VISION LAB'S 12(e)
MOTION FOR A MORE DEFINITE STATEMENT

The Plaintiff respectfully submits this memorandum in opposition to Defendant

Vision Lab's motion pursuant to Fed. R. Civ. P. 12(e) for a more definite statement.

SUMMARY OF ARGUMENT

Under the notice pleading standard stated in *Conley v. Gibson,* 355 U.S. 41 (1957),

and reaffirmed by *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002), and in the special

circumstances posed by a junk fax case where all the perpetrators have taken

extraordinary steps to hide from view, the complaint is sufficiently detailed to permit the

Defendant to frame a responsive pleading. The motion for more definite statement should

therefore be denied.

ARGUMENT

The standard by which a federal court tests a complaint is the one laid out nearly fifty

years ago by the Supreme Court in *Conley v. Gibson,* 355 U.S. 41 (1957). The Court

recently restated the *Conley v. Gibson* formulation in these words:

> Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must include only
> "a short and plain statement of the claim showing that the pleader is entitled to relief."
> Such a statement must simply give the defendant fair notice of what the plaintiff's
> claim is and the grounds upon which it rests. This simplified notice pleading standard
> relies on liberal discovery rules and summary judgment motions to define disputed
> facts and issues and to dispose of unmeritorious claims. The provisions for discovery
> are so flexible and the provisions for pretrial procedure and summary judgment so

> effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court.

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512-513 (2002) (citations and internal quotations omitted). *See also Educadores Puertorriquenos En Accion v. Hernandez,* 367 F.3d 61, 66 (1st Cir. 2004) ("*Swierkiewicz* has sounded the death knell for the imposition of a heightened pleading standard except in cases in which either a federal statute or specific Civil Rule requires that result"). Rule 12(e) aims at "unintelligibility, rather than at lack of detail in the complaint." *Cox v. Maine Maritime Academy,* 122 F.R.D. 115, 116 (D. Me. 1988). The complaint in this case intelligibly sets forth the basic facts giving rise to the Plaintiff's claims and goes beyond the requirements of notice pleading by citing the specific statutes and rules on which he bases those claims. Therefore, there is no need for a more definite statement.

In general, a plaintiff need not specify the legal theories on which he will rely once he establishes his factual allegations. *See, e.g., Pruitt v. Cheney,* 963 F.2d 1160, 1164 (9th Cir. 1992), *cert. denied,* 506 U.S. 1020 (1992). *See also, e.g., Bryson v. Bank of New York,* 584 F. Supp. 1306, 1319 (S.D.N.Y. 1984) ("Rule 12(e) motion should not be used simply to ascertain a plaintiff's legal theories"). Judge Skinner's one-sentence ruling in *Turbosound, Inc. v. Eastern Acoustic Works, Inc.,* 672 F. Supp. 575, 577 (D. Mass. 1987), to the effect that a plaintiff alleging false or misleading promotional statements by a competitor was "ordered to state with more particularity which Massachusetts statutes it refers to in Count II of the complaint," is hardly precedent for a heightened pleading requirement in all cases. In any event, for all that appears from the opinion in *Turbosound,* the complaint might have omitted to cite any state statutes at all. The

Plaintiff in this case cited the federal and statute statutes and regulations pertaining to junk fax advertising and do-not-call rules. Vision Lab's focused motion to dismiss amply demonstrates that it understands what those statutes and regulations are.

Judge Aldrich's decision in *Fennell v. Svenska Amerika Linien AB,* 23 F.R.D. 116 (D. Mass. 1958), which Vision Lab cites on page 3 of its brief, is simply bad law. In that case, the Plaintiff had alleged injuries due to negligence. The defendant impleaded a third-party defendant by a complaint alleging that "if plaintiff therein was injured, 'which is expressly denied,' his injuries were 'due in whole or in part to the negligence and/or failure of [Socony] to properly perform its contract with the defendant-third party plaintiff.'" With all due respect, Judge Aldrich mistook the relative roles of pleading and discovery, which the Supreme Court clarified in *Swierkiewicz. Fennell* has been cited in just three cases of which the Plaintiff is aware. In *Richardson v. St. Charles-St. John The Baptist Bridge & Ferry Authority,* 274 F. Supp. 764, 770 & n.11 (E.D. La. 1967), the court ***denied*** a motion for more definite statement, saying that the complaint at issue "fulfills adequately all the functions of notice pleading". In *Jones v. International Union of Operating Engineers,* 524 F. Supp. 487, 492 (S.D. Ill. 1981), the court cited *Fennell* for the proposition that "[u]nder Rule 8, pleadings should be kept short and brief until pre-trial discovery reveals the details," which (frankly) appears to be the opposite of what Judge Aldrich said. *Mumphrey v. James River Paper Co.,* 777 F. Supp. 1458, 1460 (W.D. Ark. 1991), held only that an *in forma pauperis* application filed by a pro-se litigant did not amount to a Rule 8 complaint.

*Tarabolski v. Town of Sharon,* 1995 U.S. Dist. LEXIS 4284 (D. Mass. 1995), *aff'd* 70 F.3d 110 (1st Cir. 1995), *cert. denied,* 517 U.S. 1142 (1995), cited by Vision Lab on page

3 of its brief, likewise appears to involve the heightened pleading standard once applied in this Circuit in civil rights cases. *Cf. Hernandez, supra.*

In short, the precedent on which Vision Lab relies was wrong when decided and has been superseded by *Swierkiewicz.*

The Court's reference in *Swierkiewicz* to flexible discovery rules is especially poignant in the case at bar. The Plaintiff has informally turned over to Attorney Cohen, who he understands to be Vision Lab's lead counsel in this matter, two CD-ROM discs containing images of the facsimiles he received. The first CD contained approximately 90 images of faxes received from April 30, 2004 until December 31, 2004. The second CD contained those 90 images plus an additional 50 received through August 1, 2005.[1]

The faxes follow two generic patterns. Faxes following the first pattern, exemplified by Exhibit A, promote a vacation, a discount mortgage brokerage, a health plan, or some other product or service. These faxes contain an "interest" number, which is nearly always a toll-free number, that the recipient can call in order to purchase something. The second pattern, exemplified by Exhibit B, touts a penny stock. Stock touts hardly ever contain an interest number. Faxes in both categories nearly always include a so-called "remove" number that the recipient can supposedly call to have his number removed from the sender's database.[2]

---

[1] Depending on what the Plaintiff learns from Vision Lab, he may later seek leave to file an amended complaint concerning some or all of the additional 50 faxes.

[2] The FCC has consistently held that fax recipients have no duty to call the "remove" number, inasmuch as the TCPA forbids sending any fax advertisement without prior express permission. *See In re Fax.com, Inc.,* Notice of Apparent Liability, 17 F.C.C.Rcd. 15927, 15933 ¶ 10 n. 25 (FCC 02-226, Aug. 7, 2002); Memorandum Opinion and Order, 10 F.C.C.Rcd. 12391, 12408 ¶ 37 (FCC 95-310, Aug. 7, 1995) (refusing to create exemption for failure to call a toll-free opt-out number); Report and Order, 18 F.C.C.Rcd. 14014, 14128-29 ¶ 193 (FCC 02-278, July 3, 2003) (same). As Mr. Sherman understands Vision Lab's business practices, each fax advertisement receives a unique remove number, so that opting out is ineffective to stop future faxes. For example, the six faxes that the Plaintiff believes advertise a travel company named SCD Marketing in the Orlando area bear five different remove numbers.

Junk fax advertisers do not want to be found, for the simple and obvious reason that junk fax advertising is against the law—and has been for over a decade. Thus, their ads seldom contain an actual business name or address, a telephone number that can be reverse looked up on the Internet or otherwise, or a web address for which valid WHOIS data exists. The advertisers cloak their identity behind a toll-free number and, in increasingly rare cases, an anonymous web address. Even that much of a clue is too much for the touters of penny stocks, who can expect to attract the wrath of the SEC if they are found.[3] Stock touts contain just a remove number, which the sender may not even have permission to use.

A plaintiff like Mr. Sherman simply cannot find out who sent a typical junk fax without the aid of a court's coercive process. ***If Vision Lab cannot easily identify which of the 90 faxes it sent to Mr. Sherman, it has only itself to blame.*** Mr. Sherman has learned that Vision Lab adds the removal notice and number to the advertising copy it receives from its clients prior to transmitting the ads. It could as easily also add identification information that would allow the recipient to know that Vision Lab sent the fax. In fact, Mr. Sherman argues that Vision Lab is ***required*** to do so by FCC regulation [47 C.F.R. § 68.318(d)] because it is "highly involved" in each fax advertising campaign. It should not be heard to complain that Mr. Sherman has failed to provide a bill of particulars in his complaint.

---

[3] A case in point is the so-called "Dr. Mitchel" tout that, according to the SEC, was sent with the help of a Vision Lab salesman on December 15, 2004. *See* http://www.sec.gov/litigation/litreleases/lr19305.htm. Mr. Sherman received one of those faxes, too. The only identifying information on this fax is a "remove" number (888-820-6298) serviced by one-time defendant Teledata Solutions and subscribed for by now-defaulted defendant The Support Group in Sweden. The Plaintiff expects to develop admissible evidence during discovery showing that Vision Lab has contracted with The Support Group in Sweden to provide the interactive voice response services needed to handle removal requests.

Vision Lab mischaracterizes the complaint on page 2 of its brief when it says, "The Complaint merely alleges that Vision Lab *might have* engaged in unspecified conduct that *might have* violated one or more statutes [etc.]" (emphasis in original). The word "might" appears exactly twice in the complaint, where it is used as part of subjunctive constructions in prayers for injunctive relief that are no longer relevant because the respective defendants have been dismissed. Vision Lab further mischaracterizes the complaint as alleging that Mr. Sherman "[thinks he] may have a cause of action." There is no doubt that Mr. Sherman has a cause of action: he has some multiple of 90 causes of action arising from the 90 anonymous junk fax ads sent to a fax machine located in his residence,[4] connected to a telephone on the state and federal do-not-call lists,[5] at all hours of the day and night,[6] and supposedly coming from bogus calling numbers serviced by non-existent long-distance carriers.[7] The only problem is that the parties responsible for this massive invasion of his privacy are hiding under rocks.

The motion for a more definite statement should be denied because Vision Lab has enough information to frame a responsive pleading.


[The remainder of this page was intentionally left blank.]

---

[4] Complaint ¶¶ 10 & 11.

[5] Complaint ¶ 12.

[6] Complaint ¶ 14.

[7] The ***very first thing*** Mr. Sherman did, in a so-far futile attempt to learn who sent him all these faxes, was to commence this action as a bill of discovery in the state court, with his own telephone carrier as the only named defendant. Three subpoenas later, and after filing the amended complaint of which Vision Lab complains, he finally received call detail records that are sufficiently detailed to show the carrier id codes for the long-distance calls to his fax machine. The carriers so identified were out of business before May of 2004, leading to the inference that whoever sent the faxes also stole the long-distance service used to send them. The calling numbers include such obviously faked numbers as 500-000-0020 (the Exhibit A fax) and 200-000-1125 (the Exhibit B fax). *See* ALLIANCE FOR TELECOMMUNICATIONS INDUSTRY SOLUTIONS, NUMBERING AND DIALING PLAN WITHIN THE UNITED STATES at 9 & 15 (ATIS-0300076, Aug. 19, 2005) (available online at http://www.atis.org/inc/Docs/Finaldocs/US-Numbering-Dialing-Plan-08-19-05.doc).

Dated:

          MICHAEL SHERMAN, by his attorney,

          /s/ Walter Oney
          Walter Oney (BBO # 379795)
          4 Longfellow Place
          Boston, MA 02114
          Tel: 617-227-5620
          Fax: 617-227-5760

## VERIFICATION

The undersigned certifies under the penalties of perjury that each of the exhibits annexed hereto are true and complete copies of what they purport to be and that each fact stated in this motion is true, except that, as to facts stated on information or belief, he believes them to be true.

Dated:

          /s/ Walter Oney

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the following parties by the method indicated:

**By automatic electronic notice:**

Richard M. Zielinski, Esq. Attorney for Vision Lab Telecommunications, Inc.

**By first-class mail, postage prepaid:**

(None)

Dated:

/s/ Walter Oney

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL SHERMAN,                    )                    Civil No. 05-11545-NG
      Plaintiff                      )
      v.                             )
VISION LAB TELECOMMUNICATIONS, )
      INC., et al.,                  )
      Defendants                     )

INDEX OF EXHIBITS TO PLAINTIFF'S OPPOSITION TO MOTION FOR
DEFINITE STATEMENT

A.  Example of fax promoting vacation.
B.  Example of stock tout

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL SHERMAN,                    )                    Civil No. 05-11545-NG
    Plaintiff                           )
    v.                                  )
VISION LAB TELECOMMUNICATIONS, )
    INC., et al.,                       )
    Defendants                          )

INDEX OF EXHIBITS TO PLAINTIFF'S OPPOSITION TO MOTION FOR
DEFINITE STATEMENT

A.  Example of fax promoting vacation.
B.  Example of stock tout

# EXHIBIT A

05/19/04 07:51                                                          Pg 001

To: All Employees
From: Our Corporate Travel Department

Our Corporate Travel Department has asked if you would distribute this memo freely to all employees.

## Come to America's #1 Vacation Destination...

## DISNEY'S ORLANDO

# Only $99 p.p!

*Your Vacation Includes*

*4 Days and 3 Nights in Orlando, FL*

*3 Days and 2 Nights in Daytona Beach, FL*

*and 2 Passes to*

# Disney!!

Every purchase will receive 3 days & 2 nights in your choice of Jamaica, Cancun or Las Vegas, with...

# Round Trip Airfare Included!

## 1st 150 reservations only!

Space is Limited, So Call Today!

# Toll Free 1-800-456-0034

Mon-Fri 9:00am - 9:00pm, Sat 10:30am - 3:00pm EST

To remove your fax number from our database call toll free 1-877-405-4260.

*[handwritten notes:]* Per Dimock — Dx 84 Visicovera (2) 25/04. Remoh. Call can be completed CC Ident. unknown. (May be Travel Comm. Inc)

# EXHIBIT B

12/01/04 6:57 PM

Pg 1 of 1

# DAYTRADER'S ALERT!

*Alerting you to companies that could be some of the Street's best kept secrets, but that may not remain that way for long!*

| **Southwestern Medical Solutions** | **OTC: SWNM** | **Current Price: $0.16** |

---

**December 2, 2004**
Stock Symbol: SWNM    Current Price: $0.16
52 week High: $0.51    52 week Low: $0.05

## Corporate Snapshot

**Investors! There is a little known technology-led company that has been flying under the radar of mainstream Wall Street!** It is targeting the multi-billion dollar medical devices industry with a system that could possibly revolutionize diagnostic testing and specimen collection!

**Southwestern Medical Solutions Inc. (OTC: SWNM)** is a development stage company who had previously acquired the worldwide exclusive rights to Labguard Accucheck™. This on-site collection & diagnostic testing system represents an innovative approach that is expected to provide greater safety and convenience for diagnostic testing administrators at an attractive, market-competitive price. According to an 11/22/04 press release, Labguard Accucheck™ has already attracted expressions of strong interest from several major medical-device distribution companies, both in the U.S. and abroad – **And it is currently in the final prototype stage.**

**Its initial mission:** Threatening to jeopardize the safety of co-workers and customers, SWNM is committed to helping organizations around the world establish effective Drug-Free environments, and opening the doors to <u>the explosive market for on-site testing of employees, job applicants, military personnel, public service workers, prison inmates and parolees, students & athletes.</u> **But be aware-** Based on the current system, numerous applications, such as non-invasive HIV Test Kit, are currently in the design, prototype and/or testing stages.

*As the markets are undergoing extreme fluctuations and turbulence, timing is everything! Some investors are realizing that gains of 100%+ (not likely with well known stocks) are possible with OTC stocks. This stock could be one of the street's best kept secrets, but may not remain that way for long! Our alerts present what may be new opportunities to get in while trading levels are still low and before mainstream investors start paying attention!*

## Investment Highlights

- **Latest News:** SWNM reported that it has entered into an agreement whereby it has been granted the right to earn up to a 35% interest in Glacier Medical LLC, and certain exclusive marketing rights concerning that company's Protect-A-Pal needle safety device, a solution to the universal problem of needle-stick injuries among healthcare workers.

- SWNM announced that it has begun the R&D regarding an economical and accurate HIV urinalysis test kit for safe, rapid on-site testing. **This could be huge!** Consider these chilling facts: <u>The Centers for Disease Control and Prevention (CDC) estimate that 850,000 to 950,000 U.S. residents are living with HIV infection, one-quarter of who are unaware of their infection.</u> **Approximately 40,000 new HIV infections occur each year in the United States!**

- <u>This system could mean solutions for the healthcare industry!</u> **Here are the technical details:** Simultaneous detection of multiple drugs in under 5 minutes; Integrated collection and testing device for every sample; Sterile sample and reagent/fluid-free handling; Room temperature storage; Clear positive/negative results; Non-Leak-Spill-proof container.

- **The demand is huge!** An estimated 14.8 million Americans are currently use drugs. Not considering the 11% of those who are between the age of 12 and 17, there is an estimated 12.3 million adult current illicit drug users. **9.4 million or 77% of them work, making the vast majority of drug users in the U.S. employees.**

- **SWNM's Labgaurd Accucheck™ is currently in the FINAL prototype stage!** Investors, <u>FINAL should mean do your research, find out as much as you can about this company, and be on the look out for future developments!</u> Remember, with OTC Stocks, all it takes is that one piece of great news!

### To be removed from this fax list, call (888) 561-0838

Always consult a professional investment advisor and remember that OTC stocks like SWNM are considered extremely risky, and you could lose your entire investment! This is NOT professional investment advice; this is a paid advertisement! It is not an offer to sell, or a solicitation to buy any security. It is for informational purposes only, and created without regard to any investors' individual needs, or the financial condition or stability of the company it is written about. This advertisement has not been seen or approved by anyone at the company that it is written about and therefore the company does not endorse the content or distribution of the advertisement. Do your own research! Uniway International Trading Ltd (UIT) was paid, thirty eight thousand dollars by a third party who is not affiliated with SWNM and who was paid fifty four thousand dollars for this report on Southwestern Medical Solutions Inc. (OTC: SWNM). Any companies mentioned in this report may, or may not, be experiencing liquidity issues and may require additional capital to continue operations.