**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| MICHAEL SHERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 05-11545-NG |
| VISION LAB TELECOMMUNICATIONS, | ) | |
| INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT VISION LAB'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM**

Defendant Vision Lab Telecommunications, Inc. ("Vision Lab") respectfully submits this

reply brief in further support of its motion to dismiss certain of Plaintiff's claims pursuant to Fed.

R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

**INTRODUCTION**

Plaintiff seeks to recover multiple damages under a panoply of statutory and

administrative provisions for the receipt of allegedly unsolicited advertising faxes.  In short,

though, Plaintiff does not have a private right of action for violations of the Federal fax

identification requirements, may recover only one penalty per fax, and has no claim whatsoever

under Massachusetts' statutes regulating fax transmissions.  Accordingly, all of Plaintiff's

claims, other than the alleged violation of 47 U.S.C. § 227(b), regarding the sending of

unsolicited facsimile advertisements, must be dismissed as a matter of law.

Plaintiff's 31 page Memorandum in Opposition to Vision Lab's 12(b)(6) Motion to

Dismiss for Failure to State a Claim ("Opposition Motion") misconstrues Vision Lab's

arguments and is replete with irrelevant and unavailing content.  This reply brief underscores the

arguments set forth in Vision Lab's Motion to Dismiss, and highlights recent case law that

bolsters these arguments.

## ARGUMENT

**A.     There Is No Private Right of Action for Alleged Violations of the Fax Identification Requirements.**

Congressional intent "is the critical factor" when evaluating whether a federal statute or regulation provides a private right of action. *Conboy v. AT&T Corp.,* 241 F.3d 242, 252 (2nd Cir. 2001)(holding that Congress did not intend to provide a private right of action for violation of certain FCC regulations). Here, as in *Conboy*, the "text of the Telecommunications Act contains no language that explicitly provides a private right of action for damages for violations of the [] FCC regulations at issue." *Conboy*, 241 F. 3d at 252.

The text of TCPA bears out that Congress did not, and did not intend to, create a private right of action for alleged violations of the fax identification regulations set forth in 47 CFR §68.318(d) or 47 CFR § 64.1601(e). As explained in Vision Lab's Motion to Dismiss, section 227(b)(1)(C) of the TCPA makes it unlawful to send unsolicited advertising faxes. Motion to Dismiss at 4. The same subsection provides a private right of action for "a violation of *this subsection* or *the regulations prescribed under this subsection* . . . " §227(b)(3). Conversely, the statutory fax identification requirements are contained in a *different subsection* -- §227(d) -- a subsection that, while it directs the FCC to issue regulations effectuating its purpose, does *not* contain a private right of action. In fact, "Plaintiff agrees that there is no private right of action 'under' §227(d)." Opposition Motion at 6.

Plaintiff further agrees with Vision Lab that the case of *Lary v. Flasch Bus. Consulting*, 878 So.2d 1158, 1164 (Ala. Ct. App. 2003), holds that there is no private right of action under §227(d). Opposition Motion at 7. Plaintiff nevertheless argues, though, that one may seek damages for a violation of the fax identification requirements under §68.318(d), despite the fact that §227(d), which the FCC used as its authority in adopting §68.318(d), contains no private

2

right of action.  *See* Motion to Dismiss, at 7-8.  In support, Plaintiff cites only state trial court opinions from other jurisdictions which are neither published in any official court reporter or on the recognize legal research services available through LEXIS or Westlaw.

Section 227(d) and §68.318(d) both concern exactly the same subject matter: fax identification requirements, which makes clear that §68.318(d) was promulgated under §227(d).  Thus, contrary to Plaintiff's arguments, because §68.318(d) was promulgated under §227(d), there is no private right of action for violations of §68.318(d).  To further illustrate this point, the FCC expressly cited §227(d) in adopting §68.318(d)'s predecessor, and eventually in adopting §68.318(d).  Motion to Dismiss at 7.  Plaintiff cites to unpublished cases appearing in a "TCPA Reporter" in arguing that a violation of §68.318(d) should provide a plaintiff with a private right of action under §68.318(b).

Since Vision Lab filed its Motion to Dismiss, the United States District Court for the Eastern District of New York squarely addressed this specific issue (albeit in an opinion not intended for publication), holding that "[t]he TCPA does not provide a private right of action for a violation of the fax identification requirements of §227(d)."  *Saporito v. Vision Lab Telecommunications, Inc.*, No. 05-CV-1007 at 5 (E.D.N.Y. September 28, 2005) (Memorandum & Order) (attached for the Court's convenience as Exhibit A).  This is "because Congress has not expressed an intent to provide" for a private right of action for violations of fax identification requirements.  *Id.* at 4.  The private right of action "is available for violations of §227(b)," not for violations of §227(d).  *Id.*

Further, as pointed out by Judge Korman in the *Saporito* case: "[I]t is clear from the language of § 227(d) that the FCC must have relied on §227(d) when promulgating 47 C.F.R. 68.318(d).  Indeed, in a 1997 order considering the purpose and intent of §68.318(c)(3), a

predecessor of the current regulation § 68.318(d), the FCC cited § 227(d) as its authority for the implementation of the regulation.  'The purpose of § 68.318(c)(3), which parallels the language of the TCPA, is to ensure that consumers will have the information they need to identify the sender of an unsolicited facsimile message.  <u>See</u> 47  U.S.C. §§ 227(d)(1) and 227(d)(2).'  1997 WL 177258 (FCC) (internal citations omitted)."  *Saporito* at 4.  Current and previous versions of the FCC regulations likewise evidence the same intent.  In a 2003 order addressing the current version of the fax identification regulation, 47 C.F.R. § 68.318(d), the FCC cites 47 U.S.C. § 227(d)(1)(B) as its authority for implementing the fax identification requirements."  <u>Id.</u>

As discussed above and in the Motion to Dismiss, because the statutory language of the TCPA is clear and the statutory authority for the fax identification regulations promulgated by the FCC is equally clear, Plaintiff's claims for violations of the fax identification requirements should be dismissed.

**B.    The plain language of the statute provides for only one penalty per fax.**

The Telephone Communications Protection Act ("TCPA") clearly provides a right of action, solely for violation of "that subsection" (b) and the rules promulgated pursuant to "that subsection" (b).  *See* 47 U.S.C. § 227(b)(3).  The TCPA provides as follows:

> Private right of action. A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> (B) an action to recover for **actual monetary loss** from such a violation, **or to receive $ 500** in damages for each such violation, whichever is greater, or
> (C) both such actions.
>
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to **not more than 3 times the amount available** under subparagraph (B) of this paragraph.

*Id.* (emphasis added).  That subsection makes it a violation of law to send an unsolicited facsimile advertisement.  A plaintiff may recover $500 per fax that violates the above subsection or $1500 if the violation was knowing and willful.  There is no reasonable construction of the statutory language that would allow the sending of a single physical facsimile to incur more than a single penalty.  Plaintiff has cited *no authority* to contradict the plain language of the statute.  Nevertheless, Plaintiff seeks to recover $6,500 for each alleged unsolicited fax he has received. (Cmplt., ¶ 16).

Because a plaintiff has no private right of action whatsoever under any other subsection of the TCPA, or the regulations promulgated thereto, Courts have not needed to squarely address whether a plaintiff may recover multiple damages for multiple alleged fax violations of the TCPA and, accordingly, have not done so.  Courts have considered the issue in the context of telemarketing calls, which rest on different sections of the statue, and have rejected the notion that a plaintiff might obtain damages for multiple violations of the TCPA for a single telephone call.  *See Worsham v. Nationwide Ins. Co.*, 772 A. 2d 868, 876-77 and fn. 5 (Md. Ct. Spec. App. 2000).

Plaintiff includes in his Opposition Motion a list of Vision Lab's alleged multiple violations, arguing that he is entitled to up to $9,000 for *each fax* under the TCPA.  Opposition Motion at 15.  Among these Plaintiff lists a violation of  § 68.318(d), the fax identification regulations.  *Id.*  If this Court finds, as Vision Lab advocates it should, that there is no private right of action under the fax identification regulations, the Court need not decide whether a plaintiff may recover multiple damages for the same fax.

Even if a court were to decide that the private right of action provided by 47 U.S.C. § 227(b) could apply to violations of § 68.318(d), nothing in the language of the statute or its

legislative history suggests that Congress intended to allow a plaintiff to recover multiple damages awards for the same facsimile.  The United States Supreme Court held in *Bell v. United States,* 349 U.S. 81, 84 (1955), that "if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses . . ."  Further, the Second Circuit noted that "Congress should indicate clearly that it contemplated separate violations."  *FAA v. Landy,* 705 F. 2d 624, 636 (2nd Cir. 1983).

Plaintiff's attempts to demonstrate that he may recover multiple damages are unavailing and irrelevant.  Plaintiff cites to a method of interpreting criminal statutes and later argues that there is "good reason to award" multiple damages, specifically for a middle-of-the-night call.  Opposition Motion at 15-17.  While Plaintiff's argument that unwanted faxes are vexatious may be valid, this does not create in the statute a right to recover multiple damages.

**C.    Plaintiff Has No Claim Under Massachusetts' Statutes Governing Facsimile Transmissions.**

The Mass. Telephone Solicitation Law, G.L. 159C and 201 C.M.R. §§ 12.00 *et seq.* ("MTSL") cannot be applied to regulate interstate commerce, such as the interstate communications at issue here.  In this case, all of the faxes at issue are interstate faxes, having been allegedly sent by Vision Lab in Florida to Plaintiff in Massachusetts.  (Cmplt., ¶¶ 1-3, 18).  Because these are interstate faxes, the Massachusetts legislature lacks jurisdiction to regulate them and MTSL does not apply.

Courts have held that the TCPA was designed to fill a gap in the states' regulatory regime.  *See, e.g.*, *Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Services, Ltd.,* 156 F. 3d 432, 437 (2nd Cir. 1998) (stating that state fax laws were of limited effect because "states do not have jurisdiction over interstate calls").  Prior to passage of the TCPA, Congress

found that telemarketers were able to evade state laws simply by using interstate operations.  *See, e.g., International Science & Tech. Inst., Inc. v. Inacom Communications, Inc.*, 106 F. 3d 1146, 1154 (4th Cir. 1997).

Congress recognized that, although many States had passed legislation seeking to regulate unsolicited advertising faxes, those laws failed to reach unsolicited faxes sent from out-of-state for a simple reason -- the States may not regulate interstate commerce.  The TCPA's legislative history reflects the drafters' knowledge of this problem:

> States do not have jurisdiction over interstate calls. Many States have expressed a desire for Federal legislation to regulate interstate telemarketing calls to supplement their restrictions on intrastate calls.
>
> TELEPHONE CONSUMER PROTECTION ACT OF 1991, P.L. 102-243, S. REP. 102-178 at 3 (1991).

Plaintiff argues that "there is plainly no physical impediment to obeying both" the TCPA and MTSL, and that "[b]y leaving room for state regulation of certain kinds of telemarketing, Congress made clear that it was *not* precluding state laws on the same subject: it was encouraging them."  Opposition Motion at 23, 24.  Indeed, the 8th Circuit has observed that "the TCPA was intended not to supplant state law, but to provide interstitial law preventing evasion of state law by calling across state lines."  *Van Bergen v. State of Minnesota*, 59 F.3d 1541, 1548 (8th Cir. 1995).

Thus, Congress drafted the TCPA to fill a need that the States' statutes could not permissibly fill.  Though the MTSL may be a viable statute with regard to *intrastate* faxes, it is ineffective against *interstate* faxes.  The United States Supreme Court has recognized the importance of  this jurisdictional divide, holding, in *Smith v. Illinois Bell Tel. Co.*, that separation of intra and interstate rate setting was "essential to the appropriate recognition of the competent governmental authority in each field of regulation."  282 U.S. 133, 148 (1930).  In this case,

since the faxes were sent from Florida to Massachusetts, the MTSL does not apply.  As a result, Plaintiff's claims against Vision Lab for interstate fax transmissions based upon putative violations of state statutes or regulations must be dismissed.

Aside from Massachusetts' inability to legislate interstate commerce, Plaintiff's claim under the MTSL fails because the private right of action provided by the MTSL does not apply to fax advertisements.  The statute clearly states that "a person who has received more than 1 unsolicited telephonic sales call within a 12-month period…"  has a private right of action.  M.G.L.A. 159C § 8(b) (Westlaw 2005).  The statute further defines an "unsolicited telephonic sales call" as "[a] telephonic sales call other than a call made:

> (d) in which the sale of goods and services is not completed, and payment or authorization of payment is not required, until after a face-to-face sales presentation by the telephone solicitor or a meeting between the telephone solicitor and customer."

201 CMR 12.01 (Westlaw 2005).  The statute makes clear that, because it is impossible to complete a sale by receiving a fax advertisement, and Plaintiff has not alleged that any payment or authorization was required, he has not stated a claim under any Massachusetts statute providing a private right of action.

Plaintiff attempts to argue that his claim under the MTSL should stand because to construe the statutory language literally would render those portions of the statute declaring it illegal to send an unsolicited fax advertisement nugatory.  This is not so.  It simply means that the MTSL did not provide a private right of action for that particular statutory violation, perhaps implicitly recognizing the State's lack of jurisdiction to regulate such transmissions or simply that the TCPA occupies the field of interstate fax transmissions.  In any case, the legislature did not provide such a private right of action.  Nonetheless, that does not mean that statute is without teeth.  The State's Attorney General remains able to enforce that statute at his discretion.

Further, courts "must construe the statutes as they are written." *Pielech v. Massasoit Greyhound, Inc.*, 668 N.E.2d 1298, 1302 (Mass. 1996). The Massachusetts Supreme Judicial Court held that "[t]he scope of the authority of this court to interpret and apply statutes is limited by its constitutional role as a judicial, rather than a legislative, body." *Id.* Plaintiff claims, meanwhile, that the MTSL's language is "the result of a hasty drafting mistake." Opposition Motion at 19. It is not a court's duty to usurp the role of the legislature and interpret an alternate meaning to clear statutory language. Accordingly, Plaintiff has failed to state a claim against Vision Lab for any violation of Massachusetts law for which he has a private right of action.

<u>CONCLUSION</u>

For the reasons set forth above and in Vision Lab's Motion to Dismiss, Plaintiffs' claims relating to the alleged violations of 47 C.F.R. §§ 64.1200, 64.1601(e) and 68.318(d), Mass. Telephone Solicitation Law, G.L. 159C and 201 C.M.R. §§ 12.00 *et seq.*, and the request for an award of attorney's fees should be dismissed with prejudice.

Dated: October 6, 2005

VISION LAB TELECOMMUNICATIONS, INC.,

By its attorneys,

s/s Richard M. Zielinski
Richard M. Zielinski (BBO #540060)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, MA 02110-3333
(617) 482-1776

GSDOCS\1535949.1

C/177

**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
STEVEN A. SAPORITO,                                    :
                                                       :
                              Plaintiff,               :          **MEMORANDUM & ORDER**
                                                       :
                    - against -                        :          No. 05-CV-1007(ERK)
                                                       :
VISION LAB TELECOMMUNICATIONS, INC.,                   :
                                                       :
                              Defendant.               :
-----------------------------------------------------------------X

KORMAN, C.J.:

      Steven A. Saporito is an attorney in New York, whose principal place of business (and,

apparently, residence) is located in Brooklyn. Defendant Vision Lab is a Florida corporation with

its principal place of business in Miami Beach, Florida. Saporito has a fax machine at his place of

business which is connected to phone number (718) 833-3825. He alleges that between June and

November, 2004, Vision Lab faxed him numerous advertisements that he had not requested.

Specifically, Saporito alleges that Vision Lab faxed him 74 separate advertisements, including seven

unsolicited advertisements for travel services and/or vacations; 18 unsolicited advertisements for

mortgages and/or mortgage services; and 49 unsolicited advertisements for stocks and/or stock

investments. Saporito states that all these faxes were wholly unsolicited and were sent to him

without his consent. He also claims that, as part of its business as a "fax broadcaster," Vision Lab

has sent hundreds of thousands of similar unsolicited faxes to fax machines across the country.

      According to Saporito, all of the 74 faxes in question: (1) lacked identification of the business

or individual that sent the faxes; (2) lacked a clear indication of the telephone number of the sending

machine; and (3) lacked an indication of the name under which the sending fax broadcaster was

1

registered to conduct business.

Saporito initiated this action by causing a verified complaint to be served on Vision Lab on February 1, 2005. In the complaint, Saporito alleged violations of New York General Business Law § 396-aa, which prohibits the transmission by fax of unsolicited advertising. Saporito also alleged that Vision Lab's actions violated TCPA, 47 U.S.C. § 227, which prohibits the use any fax machine, computer, or other device to send an unsolicited advertisement to a fax machine. Saporito alleged that each of the 74 faxes caused four individual violations of the TCPA (each fax as one individual violation of § 227(b)(1)(C) of TCPA, and each fax also causing three additional and separate violations of the fax identification requirements) for a total of 296 violations of that statute. Based on the statutory amount of $500 for each violation, Saporito claimed statutory damages of $148,000. Moreover, claiming that Vision Lab acted willfully and knowingly, Saporito sought treble damages pursuant to 47 U.S.C. § 227(b)(3)(B), for a total of $444,000. Finally, Saporito sought an additional $5,500 for violations of New York General Business Law § 396-aa, as well as attorney's fees and costs, and injunctive relief ordering the defendant to cease sending unsolicited faxes.

Vision Lab removed the case pursuant to 28 U.S.C. § 1332. Saporito moved to remand, arguing that state courts have exclusive jurisdiction over private causes of action under the TCPA. I denied Saporito's motion to remand. Saporito then sought reconsideration or, in the alternative, for certification of the case for an interlocutory appeal. Saporito's motion for reconsideration was denied, although I granted his request for leave to file an interlocutory appeal. Saporito did not file an interlocutory appeal.

Vision Lab has now filed a Rule 12(b)(6) motion seeking dismissal of Saporito's claims (1) relating to the alleged violations of the fax identification requirements, (2) under New York General

2

Business Law § 396-aa, and (3) requesting an award for attorney's fees.

<u>Discussion</u>

Section 227(b)(1)(C) of TCPA prohibits the "use [of] any telephone facsimile machine,

computer, or other device to send an unsolicited advertisement to a telephone facsimile machine."

47 U.S.C. § 227(b)(1)(C). The TCPA provides for a private right of action to enforce the ban on

unsolicited advertising in § 227(b)(3), which provides as follows:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State,
> bring in an appropriate court of that State:
>
>> (A) an action based on a violation of this subsection or the regulations
>> prescribed under this subsection to enjoin such violation,
>> (B) an action to recover for actual monetary loss from such a
>> violation, or to receive $500 in damages for each such violation,
>> whichever is greater, or
>> (C) both such actions.
>
> If the court finds that the defendant willfully or knowingly violated this subsection
> or the regulations prescribed under this subsection, the court may, in its discretion,
> increase the amount of the award to an amount equal to not more than 3 times the
> amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

The fax identification requirements on which plaintiff's TCPA causes of action derive are

TCPA § 227(d)(2) and 47 C.F.R. § 68.318(d). Section 227(d)(2), provides that "[t]he Commission

shall revise the regulations setting technical and procedural standards for telephone facsimile

machines to require that any such machine . . . clearly marks . . . the date and time sent, an

identification of the business, other entity, or individual sending the message, and the telephone

number of the sending machine or of such business, other entity, or individual." 47. U.S.C. §

227(d)(2). The FCC, subsequently promulgated 47 C.F.R. § 68.318(d), which provides that "[i]t

3

shall be unlawful for any person within the United States to use a computer or other electronic device to send any message via telephone facsimile machine unless such person clearly marks . . . the date and time it is sent and an identification of the business, other entity, or individual sending the message and the telephone number of the sending machine or of such business, other entity, or individual." 47 C.F.R. § 68.318(d).

While a private right of action is available for violations of § 227(b), there is no private right of action available for violations of the fax identification requirements because Congress has not expressed an intent to provide for one. Specifically, § 227(b)(3)(A) provides that the private right of action is available for "a violation of this subsection or the regulations prescribed under this subsection." 47 U.S.C. § 227(b)(3)(A). The statutory fax identification requirements are contained in a different subsection, namely TCPA subsection (d) of section 227.

Moreover, it is clear from the language of § 227(d) that the FCC must have relied on § 227(d) when promulgating 47 C.F.R. § 68.318(d). Indeed, in a 1997 order considering the purpose and intent of § 68.318(c)(3), a predecessor of the current regulation § 68.318(d), the FCC cited § 227(d) as its authority for the implementation of the regulation. "The purpose of § 68.318(c)(3), which parallels the language of the TCPA, is to ensure that consumers will have the information they need to identify the sender of an unsolicited facsimile message. See 47 U.S.C. §§ 227(d)(1) and 227(d)(2)." 1997 WL 177258 (F.C.C.) (internal citations omitted). Current and previous versions of the FCC regulations likewise evidence the same intent. In a 2003 order addressing the current version of the fax identification regulation, 47 C.F.R. § 68.318(d), the FCC cites § 227(d)(1)(B) as its authority for implementing the fax identification requirements. "4. Identification Requirements - 203. The TCPA and Commission rules require that any message sent via a telephone facsimile

4

machine contain the date and time it is sent and an identification of the business, or other entity, or individual sending the message and the telephone number of the sending machine or of such business, other entity, or individual. 47 U.S.C. §227(d)(1)(B)." 68 FR 44144 (2003) (internal citations omitted).

Vision Lab's motion to dismiss Saporito's claims for relief based upon alleged violations of the fax identification requirements contained in the TCPA and FCC regulations is granted. The TCPA does not provide a private right of action for a violation of the fax identification requirements of § 227(d). The plain language of subsection (b)'s private right of action restricts the right of action to violations of subsection (b) and may not be extended to violations of subsection (d). Similarly, because the FCC fax identification regulations were promulgated under the authority of § 227(d), there is no private right of action for alleged violations of the FCC fax identification regulations.

Additionally, Vision Lab contends that Saporito's claims under New York General Business Law § 396-aa should be dismissed because the TCPA preempts the application of § 396-aa. Vision Lab argues that the statutory intent, purpose, and legislative history demonstrate the requisite preemptive intent of Congress in enacting the TCPA. Because all the facsimile advertisements in this case were all interstate facsimile messages and no intrastate facsimile advertisements have been alleged, Vision Lab contends that the TCPA is the only statute that should apply in this case. Def.'s Mem. at 13-14.

Vision Lab does not suggest any conflict between § 396-aa of the New York General Business Law and the comparable provision of TCPA. Indeed, if anything, § 396-aa is less restrictive than TCPA because it exempts from its ban unsolicited facsimile transmissions "not exceeding five pages received between the hours of 9:00 P.M. and 6:00 A.M. local time." N.Y. Gen.

5

Bus. Law § 396-aa. Moreover, § 396-aa provides for liquidated damages of $100 per violation, in contrast to TCPA, which provides for $500 per violation. However, unlike TCPA, it does not provide for treble damages in case of a wilful violation.

I tend to agree with the Court of Appeals for the Eighth Circuit that "TCPA was intended not to supplant state law but to provide interstitial law preventing evasion of state law by calling across state lines," Van Bergen v. State of Minnesota, 59. F.3d 1541 (8th Cir. 1995). While the FCC has concluded correctly that "any state regulation of interstate telemarketing calls that would conflict with and frustrate the federal scheme and [would] almost certainly be preempted," 68 FR 44144 (2003), that does not appear to be the case here. Nevertheless, I need not finally resolve the issue of whether the New York General Business Law causes of action here at issue have been preempted. If one of a number of integrally related causes of action have to be tried, it makes little sense to grant a motion to dismiss as to one or more of them, as it may prove necessary to hold yet another trial in the event that it is determined on appeal that the motion to dismiss was improperly granted. As observed by Judge Clark in an analogous context: "[T]here seems no question that in the long run fragmentary disposal of what is essentially one matter is unfortunate not merely for the waste of time and expense caused the parties and the courts, but because of the mischance of differing dispositions of what is essentially a single controlling issue." Audi Vision Inc. v. RCA Mfg. Co., 136 F.2d 621, 625 (2d Cir.1943).

Similarly, for practical reasons, it is unnecessary for me to address the issue of the availability of counsel's fees. If plaintiff prevails on his TCPA claim, there will be time to address the issue of whether a party who provides a service by using a common carrier, normally a telephone carrier, to transmit messages is itself a common carrier.

6

## Conclusion

I grant the defendant Vision Lab's motion to dismiss Saporito's causes of action for violation of the fax identification requirements. I deny without prejudice the defendant's motion to dismiss the cause of action based on New York General Business Law § 396-aa and to dismiss the claim for counsel's fees.

**SO ORDERED:**

Brooklyn, New York
September 28, 2005

 

Edward R. Korman
United States Chief District Judge

7